UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| POLYSCIENCES, INC., <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH T. MASRUD, <br><br> Defendant. | Case No. 20-cv-03649-PBT |

**PLAINTIFF POLYSCIENCES, INC.'S REPLY IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**FOX ROTHSCHILD LLP**

Eric E. Reed
2000 Market Street, 20th Floor
Philadelphia, PA 19103
(215) 299-2741 – direct
(215) 299-2150 – fax
EReed@foxrothschild.com

*Attorneys for Plaintiff*
*Polysciences, Inc.*

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................................ 1

II.    REPLY ARGUMENT ........................................................................................................ 2

       A.     Polysciences Will Prevail on the Merits ................................................................ 2

              1.     Masrud is using Polysciences' Confidential Information to Produce
                     Serochem Products..................................................................................... 2

              2.     Masrud Has Indisputably Breached the Confidentiality and
                     Proprietary Agreement ............................................................................... 3

              3.     Polysciences Faces Irreparable Harm Absent Injunctive Relief................. 5

              4.     The Balance of Equities and Public Policy Strongly Favor
                     Polysciences ............................................................................................... 6

III.   CONCLUSION ................................................................................................................... 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Air Prod. & Chemicals, Inc. v. Johnson*,
    442 A.2d 1114 (Pa. Super. Ct. 1982) ....................................................................................... 5

*Bimbo Bakeries USA, Inc. v. Botticella*,
    613 F.3d 102 (3d Cir. 2010) .......................................................................................... 5, 6, 7

*Bio-Technology General Corp. v. Genentech*,
    80 F.3d 1553 (Fed. Cir. 1996) ................................................................................................ 6

*BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*,
    229 F.3d 254 (3d Cir. 2000) ................................................................................................... 5

*Cont'l Data Sys., Inc. v. Exxon Corp.*,
    638 F. Supp. 432 (E.D. Pa. 1986) .......................................................................................... 3

*Den-Tal-Ez, Inc. v. Siemens Capital Corp.*,
    566 A.2d 1214 (Pa. Super. Ct. 1989) ..................................................................................... 5

*Ecolaire, Inc. v. Crissman*,
    542 F. Supp. 196 (E.D. Pa. 1982) .......................................................................................... 6

**I.      INTRODUCTION**

Masrud's opposition ignores pertinent facts, while asserting false and/or unsubstantiated and/or irrelevant factual allegations about the production of Serochem's copies of Polysciences' PEI products.  Perhaps most strikingly, Masrud asserts that "Polysciences fails to inform the Court that the information needed to make Serochem's products is publicly available and anyone could find the information needed from a number of sources, including Polysciences' own website." ECF No. 14, at p. 1.  That statement is false.  Notably, Serochem designated its "information needed to make Serochem's products" as highly confidential, which undercuts the suggestion that such information is publicly available.  More importantly, Masrud's disclosures and investigation (to date) indicate that Masrud and Serochem are not producing their PEI products using any of the public articles and patents Masrud cites, and certainly Polysciences does not either.  Masrud's argument in this regard is a red herring.

Masrud also ignores many other pertinent facts; such as Masrud's obligations under his confidentiality agreement with Polysciences, that he hired former Polysciences employee Mathew Griffin as his chief technical officer at Serochem, and that Griffin worked for Masrud at Polysciences and (like Masrud) signed a confidentiality agreement with Polysciences and is intimately familiar with Polysciences' confidential PEI production techniques and details.  Both Masrud and Griffin knew nothing about PEI until they joined Polysciences.  Masrud also ignores that, while Polysciences does publish a "list" price for a single small purchase of its PEI Max and Transporter 5 products, the vast majority of sales occur under customer specific arrangements where quantities and prices are confidential.  Moreover, Masrud has admitted that he has specifically sought to undercut Polysciences' pricing, all of which is confidential other than for standard single unit quantities.

As will be more fully demonstrated at the hearing, Polysciences is entitled to a preliminary injunction because Masrud misappropriated Polysciences' secret PEI production methods to launch copycat products priced to undercut Polysciences and to destroy Polysciences' customer relationships. In short, in contravention of his contractual, statutory, and common law obligations, Masrud is attempting to pirate Polysciences' business.

## II.      REPLY ARGUMENT

### A.      Polysciences Will Prevail on the Merits

#### 1.      Masrud is using Polysciences' Confidential Information to Produce Serochem Products.

Masrud argues that no confidential information is necessary to make PEI products. He misses the point. The issue is not whether someone can make <u>any</u> PEI based on public information, but rather whether Polysciences' PEI products are or can be made based on publicly available information. They cannot. In purporting to dispute the confidentiality of Polysciences' methods, Masrud describes generic PEI production steps. He then concedes that:

> Time, temperature, and concentration of water and acid **can be tweaked until you reach the desired results**. In the chemical field, making PEI transfection reagent is akin to baking a simple cake made with only a few ingredients, and tweaking the process (temperature, cook time, wetness) **until you achieve the texture and taste of your preference.**

ECF No. 14, at p. 3 (emphasis added). The texture and taste, of course, are the key to successful sales of cakes, and therein lies the bakers' secrets that differentiate them from the competition. Time, temperature and concentrations are among the critical manufacturing details that differentiate PEI products. These details are part of the critical Polysciences' confidential information and trade secrets that Masrud and Griffin used to develop the Serochem product. Indeed, it is inevitable that they have used their intimate knowledge of these critical confidential

2

details in producing the Serochem products they claim to be equal or better than Polysciences' PEI products.

None of the references cited by Masrud disclose Polysciences' trade secrets or confidential information. Masrud's cited publications discussing PEI, uses of PEI, and even how to make other companies' PEI, but those references do not disclose or even lead one to understand how to make Polysciences' PEI. Indeed, the sheer volume of alternative methods and processes disclosed by the dozen "public" references cited by Masrud (ECF 14, at pp. 12-13) underscores the importance of the specific, confidential production details used by Polysciences to produce its PEI products that affords Polysciences a "competitive advantage" in its industry. *See Cont'l Data Sys., Inc. v. Exxon Corp.*, 638 F. Supp. 432, 433 (E.D. Pa. 1986) ("compilations of public information does not preclude a finding that the combination of the included elements affords a plaintiff competitive advantage and is not itself in the public domain. . . . The combination of information contained in the sales materials reflected market research performed by plaintiff and decisions to include and exclude elements from a larger pool of data. It is this, rather than the data contained in the individual forms known generally among personal injury lawyers, which may contain a sufficient degree of novelty, however slight, to be excluded from general knowledge, and may qualify the sales manual as a trade secret."). As Masrud has demonstrated, many different and competing PEI production techniques exist in the marketplace, making Polysciences' specific and confidential production details that distinguish its product all the more valuable.

2. **Masrud Has Indisputably Breached the Confidentiality and Proprietary Agreement**

Masrud admits that he emailed to himself the Polysciences PEI Quality Guide ("the Guide") on August 20, 2019 (ECF 14-1, at ¶ 27), which he also admits he never returned (*id*. at ¶ 30). This is a breach of the Confidentiality and Proprietary Agreement he executed with

Polysciences, which requires the return of all property, Confidential and Proprietary Information upon termination from Polysciences, without a request to do so. ECF 1-5. The Guide includes compilations of information to be used as part of a sophisticated market strategy developed to sell PEI transfection products. Masrud all but ignores the contractual obligation he had under the Confidentiality and Proprietary Agreement, which he undeniably breached. In addition, an initial digital computer forensic examination of Masrud's laptop, performed by KLDiscovery Ontrack, LLC ("KLD") revealed that Masrud accessed numerous files, word documents and directories on September 10, 2019, four days after he was terminated, when he had no reason or right to access any of Polysciences' documents. Declaration of David Collins ("Collins Decl."), at ¶¶ 2, 4-7. While this analysis is ongoing, some of the names of the folders and documents accessed reveals he accessed Confidential and Proprietary information. Those files included: "Questions.docx.LNK," "leads.xlsx.LNK," "Sale18.xlsx.LNK," "PERSONAL.XLSB.LNK," "Questions.docx," "Projects.docs," "Transition Plan.docx", "transporter5protocol.docx," "Transfectol.doc," "PEI Questions.docx," and "File locations.docx." *Id*. Masrud also appears to have accessed and modified some files and also notably, on September 13, 2019 actually deleted at least one file as well as Masrud's Chrome settings, data and history. *Id*. at ¶¶ 8-10. There is also evidence that Masrud utilized at least five (5) external storage devices, including external hard drives and USB flash drives, with the laptop. *Id*. at ¶ 3.

Additionally, as revealed in Masrud's Initial Disclosures, his former co-employee, Matthew Griffin also works for Serochem and like Masrud, breached his agreement with Polysciences by failing to return Polysciences' information upon his departure. In fact, Polysciences recently discovered that Griffin shared a folder named "salesdata" via Dropbox with Masrud on or about September 10, 2018. Declaration of Andrew Ott ("Ott Decl."), at ¶ 3. Even

worse, on July 10, 2019, Griffin emailed to himself all of Polysciences' sales data transactions from 2013 through July 9, 2019. *Id.* at ¶ 4. Polysciences is continuing to investigate and analyze this seemingly damning evidence of wrongdoing.

Based on this evidence, a preliminary injunction should enter as requested and, pursuant to the inevitable disclosure doctrine, neither Masrud nor Griffin should be allowed to work at Serochem if it remains a competitor of Polysciences. As recognized and applied in Pennsylvania, where a former employee's job duties at a new, competing employer will cause that employee to draw upon his knowledge of his former employer's confidential information, Pennsylvania courts may enjoin such employment. *Air Prod. & Chemicals, Inc. v. Johnson*, 442 A.2d 1114, 1122 (Pa. Super. 1982). The inevitable disclosure doctrine provides an equitable remedy to protect an employer's trade secrets even in the absence of a restrictive covenant. *Id*. at 1120. Furthermore, the party seeking to protect its trade secrets need not demonstrate inevitability. Rather, "'[t]he proper inquiry' in determining whether to grant an injunction to prevent the threatened disclosure of trade secrets is 'whether there is sufficient likelihood or substantial threat' of a defendant disclosing trade secrets."' *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 114 (3d Cir. 2010) (citing *Den-Tal-Ez, Inc. v. Siemens Capital Corp*., 566 A.2d 1214, 1232 (Pa. Super. Ct. 1989)). Since Masrud and Griffin have already disclosed trade secrets as evidenced by the sale of Serochem's copycat products, such remedy is applicable here.

### 3. Polysciences Faces Irreparable Harm Absent Injunctive Relief

Masrud's release of a competing, nearly identical product would cause Polysciences to suffer: (1) difficult-to-quantify decreases in future sales of Polysciences' product and loss of its customer base and relationships, and (2) harm to Polysciences' reputation. *See BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp*., 229 F.3d 254, 263 (3d Cir. 2000) (stating "injuries to reputation" like those identified here "are difficult to calculate, and thus money damages are an inadequate

5

remedy"). Polysciences has spent more than a decade carving out its niche in the PEI market only to have Masrud steal its painstakingly developed production details to launch a copycat product at a cut-rate price (made possible by skipping the costs of research and development). This gives Masrud the ability to gut Polysciences' customer base by knocking off the product and thus irreparably harming Polysciences. *See* ECF No. 1-1, at ¶ 1. Irreparable harm to Polysciences will result from the loss of customers, revenues and goodwill, which would negatively impact its ability to continue its innovative research and development in PEI transfection research. *See Bio-Technology General Corp. v. Genentech*, 80 F.3d 1553, 1566 (Fed. Cir. 1996) (affirming the district court's finding of irreparable harm and determination that Genentech would be harmed by competitor BTG if not enjoined from entering the U.S. market "because Genentech would lose revenues and goodwill, and would be required to reduce its research and development activities."). *See also Ecolaire, Inc. v. Crissman*, 542 F. Supp. 196, 205 (E.D. Pa. 1982) ("There is no doubt but that [plaintiff] will suffer significant, irreparable injury to its business if defendants are permitted to continue their program of unfair competition and use of [plaintiff's] proprietary information. Irresistibly lured by the prospect of huge profits (without the need of [plaintiff's] investment), … [defendants'] pirating of [plaintiff's] products ... can only result in the depletion of [plaintiff's] reservoir of good will, long nurtured through tremendous investment in time, money, research, and customer service.")

    **4. The Balance of Equities and Public Policy Strongly Favor Polysciences**

  The balance of equities favors Polysciences, whose investments in its products far outweighs Masrud's. In *Bimbo Bakeries USA, Inc. v. Botticella*, for example, the Third Circuit upheld a preliminary injunction where the defendant, a former executive-level employee, had "acquired a broad range of confidential information about Bimbo, its products, and its business

strategy." 613 F.3d at 105.  Had Masrud simply abided by his self-described plans for Serochem, he would not have placed himself in this totally avoidable predicament.  Equitable relief would not result if the Court were to deny injunctive relief, and reward Masrud breach of contract and misappropriation of Polysciences' trade secrets.

The public interest favors entry of injunctive relief, which will support the enforcement of contracts, uphold important duties owed by managers and employees to companies while employed by them and in compliance with agreements that survive such employment, and protect critical trade secrets and confidential business information from being passed to a competitor.  The public interest is not served if the Court permits two former employees to conspire to set up a competing company selling the most profitable products that they were hired to develop, market and sell, and using those trade secret formulas and processes to manufacture products using nearly identical formulas and recipes that were not publicly known.

### III.     CONCLUSION

For all these reasons, and those set forth in Polysciences' Complaint and Motion (ECF Nos. 1 and 3) Polysciences respectfully requests that this Court grant its Motion for a Temporary Restraining Order during the pendency of granted expedited discovery.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

Dated: September 3, 2020            /s/ Eric E. Reed
                                    Eric E. Reed
                                    2000 Market Street, 20th Floor
                                    Philadelphia, PA 19103
                                    (215) 299-2741 – direct
                                    (215) 299-2150 – fax
                                    EReed@foxrothschild.com

                                    *Attorneys for Plaintiff*
                                    *Polysciences, Inc.*