# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| POLYSCIENCES, INC., | : | Civil Action |
| | : | |
| Plaintiff, | : | DOCKET NO.: 20-cv-03649-PBT |
| | : | |
| v. | : | |
| | : | |
| JOSEPH T. MASRUD, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT JOSEPH MASRUD'S ANSWER, DEFENSES, AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT

Defendant Joseph Masrud ("Masrud"), by his undersigned attorneys, hereby answers the Complaint of Plaintiff Polysciences, Inc. ("Polysciences").

### Nature of Action[1]

1.     The allegations in Paragraph 1 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

2.     The allegations in Paragraph 2 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

3.     Masrud lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint and therefore denies such allegations.

---

[1] Masrud restates herein the headings from Plaintiff's Complaint for the Court's convenience, but he does not admit the content of any of the headings.

4.      Defendant admits that he held the roles of Business Development Manager, Business Manager and Director of Laboratory Products at Polysciences.  The remaining allegations in Paragraph 4 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the remaining allegations are denied.

5.      Defendant admits that his first experience with PEI products was during his tenure with Polysciences, that during his tenure with Polysciences he worked on the launch of Polysciences' Transporter 5 and GMP transfection PEI products, and that over 9 months after the termination of his relationship with Polysciences, Serochem LLC launched two non-GMP PEI products.  Serochem's website and Masrud's attorney's letter dated July 16, 2020, and attached to the Complaint at Exhibit 1 are written documents the terms of which speak for themselves.  The remaining allegations constitute conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the remaining allegations are denied.

6.      Masrud's attorney's letter dated July 16, 202, and attached to the Complaint at Exhibit 1 is a written document the terms of which speak for itself.  The remaining allegations constitute conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the remaining allegations are denied.

7.      The allegations in Paragraph 7 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

8.      Masrud denies that Plaintiff is entitled to any relief.

**Parties**

9.      Masrud lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 9 of the Complaint and therefore denies such

allegations.

10.     Masrud admits that he is an adult individual and resides in Minnesota.  The

remaining allegations are conclusions of law to which no response is required.

11.     Masrud admits that he is the President of Serochem LLC, formed under

Minnesota law on June 5, 2019, and that it has a principal place of business located in

Woodbury, Minnesota.  The remaining allegations are denied.

**JURISDICTION AND VENUE**

12.     The allegations in Paragraph 12 of the Complaint are conclusions of law to which

no response is required.  To the extent that further response is deemed necessary, the allegations

are denied.

13.     The allegations in Paragraph 13 of the Complaint are conclusions of law to which

no response is required.  To the extent that further response is deemed necessary, the allegations

are denied.

14.     The allegations in Paragraph 14 of the Complaint are conclusions of law to which

no response is required.  To the extent that further response is deemed necessary, the allegations

are denied.

**FACTUAL BACKGROUND**

**POLYSCIENCES BUSINESS AND PRODUCTS**

15.     Masrud admits that Polysciences manufactures a broad array of products,

including PEI transfection reagents, and that transfection reagents are used for scientific

applications, including the development and manufacturing of viral vectors for cell and gene-based therapies.  Masrud lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 15 of the Complaint and therefore denies such allegations.

16.     Admitted.

17.     Masrud lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and therefore denies such allegations.

18.     Masrud admits that during his tenure Polysciences' quality control and assurance program included ISO 13485:2016 certification, Food and Drug Administration registration, and certification to Society of Chemical Manufacturers and Affiliates ("SOCMA's) ChemStewards Management System.  Masrud lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 18 of the Complaint and therefore denies such allegations.

19.     Masrud admits that during his tenure Polysciences' manufacturing facilities included multi-step synthesis, distillation and drying, recrystallization and filtration & clean room operations.  Masrud lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 18 of the Complaint and therefore denies such allegations.

20.     FDA regulations are documents that speak for themselves.  The allegations in Paragraph 20 of the Complaint also contain conclusions of law to which no response is required. To the extent that further response is deemed necessary, the allegations are denied.

21.     Masrud admits that Polysciences sells products through affiliates and distributors, at national and international trade shows and events, and through its catalogs and website. Masrud lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 21 of the Complaint and therefore denies such allegations.

22.     Masrud admits that he learned about PEI transfection reagents during his tenure with Polysciences.  Masrud denies that he learned about the application of PEI transfection reagents through Polysciences' trade secrets and confidential information.  Masrud lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 22 of the Complaint and therefore denies such allegations.

23.     Masrud admits that transfection is the process of introducing nucleic acid into cells.  Masrud lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 23 of the Complaint and therefore denies such allegations.

24.     Masrud admits that PEI can exist in solid and liquid form, can include branched or linear structures, and can have varying molecular weights.  Masrud lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 24 of the Complaint and therefore denies such allegations.

25.     Masrud admits that Polysciences manufactures various PEI products made from polymers with different molecular weights, forms (powder and liquid), and had both GMP and non-GMP versions.  The allegations that Polysciences uses Trade Secrets to manufacture these products is a conclusion of law to which no response is required.  To the extent further response

is deemed necessary with respect this allegation, it is denied.  Masrud also denies that during his

tenure Polysciences manufactured PEI products of difference structures (branched and linear).

26.     Masrud lacks knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 26 of the Complaint and therefore denies such allegations.

27.     Masrud admits that Polysciences' transfection PEI products have high scalability.

Masrud lacks knowledge or information sufficient to form a belief as to the allegations contained

in Paragraph 27 of the Complaint and therefore denies such allegations.

28.     Denied.

29.     Masrud admits that Polysciences provides industrial, non-GMP transfection

reagents, including Transporter 5 and PEI MAX that can be used in biomedical research and

development and were available before Polysciences launched its medical grade GMP products.

Masrud lacks knowledge or information sufficient to form a belief as to the remaining allegations

contained in Paragraph 29 of the Complaint and therefore denies such allegations.

30.     Masrud admits that during his tenure Polysciences manufactured PEI products in

an ISO certified facility under an ISO 13485 Quality System.  Masrud lacks knowledge or

information sufficient to form a belief as to the remaining allegations contained in Paragraph 30

of the Complaint and therefore denies such allegations.

31.     Denied.  Masrud was initially responsible for the development of GMP PEI

transfection products.  However, when he was unable to get sufficient resources to drive the

project forward, the oversight responsibility was assigned to Michael Wagaman, a senior

manager within Polysciences Research and Development group, who worked with Gary

Willman, a Project Manager within that group.

32.     Masrud admits that he executed the  Confidentiality and Proprietary Agreement attached to the Complaint at Exhibit 2, that he signed Exhibit 4 attached to the Complaint, and that during his tenure Polysciences' entered into confidentiality agreements with customers when appropriate.  Exhibits 2, 4 and 3 (Polysciences Workplace Handbook), as well as any customer confidentiality agreements, are written documents that terms of which speak for themselves. Defendant specifically denies that during his tenure Polysciences limited access to its trade secrets to on a few senior employees.  Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 32 of the Complaint which are therefore denied.

33.     The Confidentiality & Proprietary Agreement is a written document that speaks for itself.  Any characterization thereof is denied.

34.     Masrud admits that he signed the Confidentiality Agreement and that he received the letter attached to the Complaint at Exhibit 5.  Both of these documents are written documents that speak for themselves.

**POLYSCIENCES PEI PRODUCT SUCCESS**

35.     Masrud admits that the most common application for Polysciences' PEI products is transient transfection for viral vector and antibody production.  Masrud lacks knowledge or information sufficient to form a belief as to the allegation that Polysciences has offered these products for more than 15 years, the allegation that it first released Linear PEI MW 25,000 (PN 23966), or that PEI MW 25,000 (PN 23966) was followed by PEI Max.  These allegations are therefore denied.  The remaining allegations are admitted.

36.     Masrud admits that PEI has been used by academics for decades, that PEI can be used in a range of applications, and that Polysciences recently developed GMP PEI products for

use in later stage development, clinical trials, and precommercial activities. Masrud lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Polysciences' PEI products were not marketed as transfection reagents until 2015, and that the most valuable and profitable application at PEI products is use in transient transfection for viral vector and antibody production.

37.    Masrud lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 of the Complaint and therefore denies such allegations.

38.    Admitted.

39.    Masrud admits that Polysciences developed GMP PEI Products for use in clinical trials and commercialization that required the use of medical grade products. Masrud denies that Polysciences spent four years developing GMP PEI Products and lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Polysciences launched its GMP PEI Products in the middle of 2019.

40.    Masrud lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 of the Complaint and therefore denies such allegations.

41.    Masrud lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 of the Complaint and therefore denies such allegations.

42.    The allegations in Paragraph 42 of the Complaint are conclusions of law to which no response is required. To the extent that further response is deemed necessary, the allegations are denied.

43.     Masrud admits the he was aware of the unique and substantial opportunity created for Polysciences by developing GMP PEI products.  The remaining allegations are denied as stated.

### MR. MASRUD'S EMPLOYMENT AT POLYSCIENCES

44.     Admitted.

45.     Masrud admits that he held the following positions in the Lab Products Group: Business Development Manager, Business Manager, and Director.  Defendant cannot recall with specificity the respective dates he held these positions.  As such the remainder of the allegations in this Paragraph are denied.

46.     Masrud admits that after his employment with Polysciences terminated he consulted for Polysciences' Lab Products Division through his newly formed company, Serochem, until Polysciences terminated the consulting arrangement.  Masrud further admits that as a consultant he focused on the PEI line and launch of the new GMP PEI products.  The remaining allegations are denied.

47.     Masrud admits the he signed the Confidentiality & Proprietary Agreement, which is a written document the terms of which speak for themselves.

48.     The Agreement is a written document the terms of which speak for themselves.

49.     The Agreement is a written document the terms of which speak for themselves.

50.     Exhibits 2, 3, and 4 to the Complaint are written documents, the terms of which speak for themselves.

51.     Mr. Masrud's resume is a written document the terms of which speak for themselves.  Any characterization thereof is denied.

52.     Admitted.

53.     Masrud admits that during his employment he was responsible for the research, development and oversight of PEI products.  He specifically denies, however, that he oversaw the development of the GMP PEI products.

54.     Masrud lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54 of the Complaint and therefore denies such allegations.

55.     The allegations in Paragraph 55 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

56.      Masrud admits that he had access to a password protected database during his tenure with Polysciences.  Masrud lacks knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph and therefore denies such allegations.

57.     The allegations in Paragraph 57 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

58.     Masrud lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 58 of the Complaint and therefore denies such allegations.

59.     Masrud lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 58 of the Complaint and therefore denies such allegations.

60.     Denied as stated.  Upon information and belief, in January 2019, Masrud told Scott Knorr, Polysciences' then Vice President Sales and Business Development, that he intended to relocate to Minnesota where his wife had accepted a job.

61.     Denied as stated.  In or about May/June 2019, Mr. Ott stopped by Masrud's office to speak about Masrud's departure as an employee and potential retention by Polysciences as a consultant.  As he was leaving Masrud's office, Mr. Ott asked if Masrud was going to compete with Polysciences.  Masrud responded "not as long as you empower me to do this [i.e. remotely consult for Polysciences] for you."  By way of further response, Masrud informed Mr. Knorr in February 2019 (and upon information and belief also informed Mr. Ott) that he was forming a company to both consult for Polysciences and to create bioprocessing products and services related to PEI.  Masrud admits that he had no intention of competing with Polysciences at that time.  All remaining allegations are denied.

62.     Masrud admits that Polysciences engaged him through Serochem as an independent contractor from July 1, 2016, to September 6, 2019.  Masrud lacks knowledge or information sufficient to form a belief as to the truth of the allegation that this engagement was "based on Mr. Masrud's assurances."  The email attached to the Complaint as Exhibit 7 is a written document that speaks for itself.  The remainder of the allegations in Paragraph 62 of the Complaint are denied.

63.     Mr. Masrud admits that he did not delete the email containing the Polysciences PEI Quality Guide prior to the filing of the Complaint.  The remainder of the allegations in this Paragraph are denied.

11

64.     Masrud lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64 of the Complaint and therefore denies such allegations.

65.     Denied as stated.  Serochem posted PEI Prime Powder$^{TM}$, Transfection Grade Linear Polyethyleneimine and PEI Prime$^{TM}$ AQ 1 mg/mL Liquid Transfection Reagent for sale on its website in early June 2020.

66.     The allegations in Paragraph 57 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

67.     The written documents attached to the Complaint at Exhibits 8 and 9 speak for themselves.  Any characterization thereof is denied.

68.     Defendant admits that Serochem removed the Delafosse article, which is attached to the Complaint as Exhibit 9, from its website on or about July 20, 2020.  By way of further response, Exhibit 9 and the Serochem website are written documents that speaks for themselves. Any characterization thereof is denied.

69.     The letter attached to the Complaint as Exhibit 10 is a written document that speaks for itself.  Any characterization thereof is denied.

70.     The letter attached to the Complaint as Exhibit 1 is a written document that speaks for itself.  Any characterization thereof is denied.

71.     The letter attached to the Complaint as Exhibit 1 is a written document that speaks for itself.  Any characterization thereof is denied.

72.     Masrud admits Serochem developed for sale two linear hydrochloride transfection grade PEI products.  The remainder of the allegations are denied.

73.     Masrud lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 73 of the Complaint and therefore denies such allegations.

74.     Masrud admits that prior to his tenure with Polysciences, he had no experience with PEI polymers.  The remainder of the allegations in this paragraph are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

75.     The allegations in Paragraph 75 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

76.     The allegations in Paragraph 76 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

### Count 1
### Injunction

77.     Masrud incorporates by reference all of his previous responses to the Complaint as though fully set forth herein.

78.     The allegations in Paragraph 77 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

79.     The written documents attached to the Complaint at Exhibits 2, 3, and 4 speak for themselves.  Any characterization thereof is denied.  All remaining allegations in this paragraph are denied.

80.     Denied.

81.     Denied.

82.     The allegations in Paragraph 82 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

83.     The allegations in Paragraph 83 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

84.     The allegations in Paragraph 84 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

85.     The allegations in Paragraph 85 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

86.     The allegations in Paragraph 86 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

**Count II**
**Misappropriation of Polysciences Trade Secrets in**
**Violation of Pennsylvania Uniform Trade Secrets Act**

87.     Masrud incorporates by reference all of his previous responses to the Complaint as though fully set forth herein.

88.     The allegations in Paragraph 88 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

14

89.     The allegations in Paragraph 89 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

90.     Masrud admits that Polysciences developed protocols, business development plans, and customer lists.  The remainder of the allegations in this paragraph are denied.

91.     The allegations in Paragraph 91 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

92.     The allegations in Paragraph 92 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

93.     The allegations in Paragraph 93 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

94.     The allegations in Paragraph 94 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

95.     The allegations in Paragraph 95 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

96.     Masrud lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 96 of the Complaint and therefore denies such allegations.

97.     The allegations in Paragraph 97 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

98.     The allegations in Paragraph 98 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

<u>**Count III**</u>
**Misappropriation of Trade Secrets in Violation of Defend Trade Secrets Act**

99.     Masrud incorporates by reference all of his previous responses to the Complaint as though fully set forth herein.

100.     The allegations in Paragraph 100 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

101.     The allegations in Paragraph 101 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

102.     Masrud admits that Polysciences developed protocols, business development plans, and customer lists.

103.     The allegations in Paragraph 103 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

104.     The allegations in Paragraph 104 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

16

105.     The allegations in Paragraph 105 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

106.     The allegations in Paragraph 106 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

107.     The allegations in Paragraph 107 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

108.     Masrud lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 108 of the Complaint and therefore denies such allegations.

109.     The allegations in Paragraph 109 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

110.     The allegations in Paragraph 110 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

**Count IV**
**Breach of Contract**

111.     Masrud incorporates by reference all of his previous responses to the Complaint as though fully set forth herein.

112.     The Confidentiality & Proprietary Agreement is a written document that speaks for itself.  Any characterization thereof is denied.

113.    The allegations in Paragraph 113 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

114.    Masrud admits that he formed Serochem LLC while still employed by Polysciences.  The remaining allegations are denied.

115.    The allegations in Paragraph 115 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

116.    Any confidentiality agreement with Polysciences' customers are written documents that speak for themselves.  Any characterization thereof is denied.  The allegations in Paragraph 116 of the Complaint are also conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied

117.    The allegations in Paragraph 117 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

118.    The allegations in Paragraph 118 of the Complaint are conclusions of law to which no response is required.  To the extent that further response is deemed necessary, the allegations are denied.

**Wherefore**, Masrud denies the allegations in the unnumbered prayer for relief, as well as all subparts, and further and specifically denies that Plaintiff is entitled to any relief.

## <u>GENERAL DENIAL</u>

To the extent that Masrud has not specifically admitted above any allegations of the Complaint, they are denied.

## <u>DEFENSES</u>

Having not fully answered the Complaint, Masrud asserts the following defenses:

1.      Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

2.      Masrud is entitled to attorneys' fees under the Pennsylvania Uniform Trade Secrets Act and Defend Trade Secrets Act based on Plaintiff's bad faith in bringing this action.

3.      Some or all of Plaintiff's claims, and/or the relief sought under those claims, are barred, in whole or in part, by the equitable doctrines of waiver, estoppel, unclean hands and/or violation of public policy.

4.      Some or all of Plaintiff's claims, and/or the relief sought under those claims, are barred, in whole or in part, because Plaintiff failed to mitigate damages or otherwise avoid harm.

5.      Some or all of Plaintiff's claims, and/or the relief sought under those claims, are barred, in whole or in part, because Plaintiff has sustained no damages.

6.      Plaintiff is not entitled to equitable relief on any of Plaintiff's claims, in whole or in part, insofar as Plaintiff has an adequate remedy at law if liability could be established (which is denied).

7.      Some or all of Plaintiff's claims, and/or the relief sought under those claims, are barred, in whole or in part, by any and all applicable breach of contract defenses, including, but not limited to, the statute of frauds, non-performance and/or substantial non-performance on the part of Plaintiff, mistake of fact, fraud, and material misrepresentations.

## RESERVATION OF RIGHT TO AMEND

Masrud reserves the right to amend his Answer and Defenses to the Complaint and to assert such additional defenses that may appear and prove applicable during discovery proceedings and his continuing fact investigation, or otherwise, in this case.

**Wherefore**, Masrud demands judgment dismissing Plaintiff's Complaint, and awarding Masrud his attorneys' fees, costs of suit, and such other relief as the Court may deem proper.

## COUNTERCLAIM

Counterclaimant Joseph Masrud ("Masrud"), by and through his undersigned attorneys, brings the following counterclaim against Counter-Defendant Polysciences, Inc. ("Polysciences") for abuse of process.  Polysciences filed this action seeking to prevent Masrud, through his start-up company Serochem, from competing with Polysciences in connection with the manufacture and sale of PEI transfection reagents despite the fact that neither Masrud nor Serochem have any legal obligation to refrain from competing with Polysciences.  To achieve this goal, Polysciences deliberately misused the litigation process by filing sham trade secret/breach of confidentiality claims based on intentional misrepresentations about the nature and existence of its alleged proprietary information and intentionally misleading representations about Masrud's alleged misconduct.  Upon information and belief, Polysciences has also deliberately misused the litigation process for the purpose of discovering and appropriating Serochem's proprietary information to give Polysciences an unfair competitive advantage and to drive Serochem out of business before it can even get off the ground by forcing it to use its limited resources to defend this litigation.

## PARTIES

1.      Masrud is an individual and citizen of the State of Minnesota who resides in

Minnesota.

2.      Upon information and belief Polysciences is a Pennsylvania company with a

principal place of business in Pennsylvania.

3.      At all times material hereto, Polysciences acted by and through its authorized

agents, servants, workmen, and/or employees acting within the course and scope of their

employment with Polysciences and in furtherance of Polysciences' business.

## JURISDICTION & VENUE

4.      The District Court has jurisdiction over the present action pursuant to 28 U.S.C. §

1331 (Federal Question), 18 U.S.C. § 1836(b) (Subject Matter), and 28 U.S.C. § 1367

(Supplemental).

5.      Venue is proper pursuant to 28 U.S.C. § 1391 (b) as Polysciences does business

within the Commonwealth of Pennsylvania and a substantial part of the events upon which the

allegations in this action are based occurred within this district.

## FACTUAL ALLEGATIONS

6.      Polysciences is a chemical manufacturing company that produces and sells a

broad array of products for both industrial and scientific uses.  One of their products is

Polyethyleneimine ("PEI"), which is a chemical that has been used for decades for many

industrial uses (e.g. in detergents, adhesives, as a water treatment agent, and in cosmetics) and in

bioprocessing as a chemical transfection reagent.

7.      Instructions to make PEI have been publicly available since at least 1983, which

is years before Polysciences began manufacturing and selling PEI.

8.      From July 7, 1995 through July 7, 2015, Polyplus-transfection SA ("Polyplus"), a French company, held a "use patent" for the use of PEI as a transfection agent.

9.      When used as a transfection reagent, PEI facilitates inserting DNA into cells to study the function of genes or gene products, and is used to develop new drugs and gene therapies for life-saving medical procedures.

10.     Prior to Polyplus' use patent expiring, numerous articles were published about how to prepare PEI specifically as a transfection reagent.

11.     Upon information and belief, Polysciences relied upon public sources to research and develop its initial non-GMP PEI products, which include: (1) Linear PEI MW 25,000 (PN23966) and (2) PEI MAX®, MW 40,000 HCl salt (PN 24765) ("PEI Max"), both of which are a powder, and both of which could be used for industrial or transfection purposes.

12.     It was only beginning in 2015 that companies could specifically market PEI for use as a transfection reagent without permission from Polyplus.  Nevertheless, upon information and belief, Polysciences knowingly sold its industrial grade PEI products to customers that used them as a transfection reagent for research and development of drug and gene therapies.

13.     Masrud has a Bachelor of Science degree in Chemistry from the University of Minnesota and a Master of Business Administration degree from Case Western Reserve University.

14.     Polysciences hired Masrud in January 2014, as a Business Development Manager in its Lab Products Group.  It subsequently promoted him to Business Manager and then to Director.  In these roles Counterclaimant was responsible for sales and marketing of Polysciences' laboratory products, including its PEI products.

15.     Because transfection requires PEI to be in liquid form, PEI Max was more suitable as a transfection reagent because it dissolves easier in water.

16.     Once Polysciences was able to market its PEI for transfection, it offered its customers the option to buy it in powder form (PEI Max/Linear PEI) or a "ready to use" liquid form.  The liquid "ready to use" versions were sold under the "Transporter" mark ((1) Transporter 5™ Transfection Reagent 5 ml (PN 26008-5) and (2) Transporter 5™ Transfection Reagent 50 ml (PN 26008-50)), both of which were based on Polysciences' PEI Max.

17.     In or about January 2019, Masrud informed Polysciences that he intended to move from Philadelphia (where Polysciences is based) to Minnesota, and requested to work for Polysciences remotely.  His last date of employment with Polysciences was June 26, 2019.

18.     Polysciences hired Masrud as a consultant on or about July 1, 2019, through Serochem LLC, a company that Masrud formed in June 2019, to both consult for Polysciences and to create bioprocessing products and services related to PEI.

19.     On September 6, 2019, Polysciences terminated Serochem's services.

20.     Shortly after Polysciences terminated its consulting agreement with Serochem, Serochem began the process of researching and developing its own non-GMP non-medical grade PEI transfection products in powder (PEI Prime Powder) and liquid form (PEI Prime AQ) to be used in research and development applications.

21.     Serochem used only publicly available information and general chemistry and biology knowledge to develop its products.

22.     Serochem launched its PEI Prime Powder for sale on its website on June 7, 2020, and launched PEI Prime AQ sometime between June 8, 2020 and June 12, 2020.

23.     Serochem advertises its products for sale for less than the prices published by

Polysciences for its competing PEI Max and Transporter 5 products.

24.     By letter dated July 8, 2020, Polysciences demanded that Masrud and Serochem immediately cease and desist from the sale of Serochem's recently launched PEI Prime Powder and PEI Prime AQ.  A true and correct copy of the cease and desist letter is attached hereto as Exhibit "A."

25.     Upon information and belief Polysciences also developed its PEI Max and Transporter 5 products from information available in the public domain.

26.     At the time that Polysciences wrote the cease and desist it was fully aware that anyone with the right skillset could manufacture competing PEI transfection reagents, and that instructions for doing so are available in the public domain.

27.     By letter dated July 16, 2020, Masrud confirmed that Serochem did not use, and did not need to use, Polysciences confidential information in connection with its research and development of its PEI Prime Powder and Prime AQ solutions.  A true and correct copy of the cease and desist letter is attached to Polysciences Complaint (ECF 1) at Exhibit "1."

28.     On July 29, 2020, with the primary, if not sole, motive of preventing fair competition, Polysciences filed this action against Masrud seeking to restrain him from selling Serochem's PEI products and require him to discard Serochem's inventory.  Polysciences' entire claim is based on the conclusory assumption that Masrud disclosed and used alleged trade secrets and/or confidential information.

29.     In an effort to prevent competition, Polysciences intentionally misrepresented to this Court that absent using Polysciences' trade secrets there was no way that Serochem could have developed its competing products.

30.     Polysciences deliberately and falsely represented to this Court that information available in the public domain, including on its own website, is proprietary.

31.     General information about PEI transfection reagents available in the public domain that Polysciences deliberately and falsely represents is proprietary to it includes, without limitation: instructions to make a PEI transfection reagent (i.e. "procedures to synthesize PEI products"); the identity of raw materials to make a PEI transfection reagent; sources for these raw materials; the molecular weight and structure of PEI transfection reagents; instructions to transform PEI powder into a liquid (including the process and compounds used to do so); instructions to use a sterile filtering process and pH levels used, and the identity of third-party performance testing facilities.

32.     Information specific to Polysciences' PEI products available in the public domain and on its website that that Polysciences deliberately and falsely represents is proprietary to it includes without limitation: the molecular weight and structure of Polysciences PEI Max and Transporter 5 products, the specific forms (i.e. linear v. branched/liquid or solid) of Polysciences' PEI Max and Transporter 5 products, instructions to transform Polysciences' PEI Max to a liquid form, PEI Max product specifications, storage conditions for PEI Max and Transporter 5 (e.g. do not to freeze), the fact that Transporter 5 is "sterile filtered" and "pH neutralized," the pH levels recommended and used by Polysciences, the prices for PEI Max and Transporter 5, the comparative performance of PEI Max against other transfection reagents (i.e. "transfection efficiency"), and the qualitative molecular weight distribution of PEI Max.

33.     Polysciences deliberately and falsely suggests that standard industry practices are proprietary to it.  For example, sterile-filtering and pH neutralization are common technique taught in undergraduate biology courses and are common industry practice in the transfection

field, and freezing aqueous solutions of polymers is known to be a bad practice because it can damage the polymer and permanently modify the molecular weight.

34.     Leading up to and shortly after the filing of its Complaint, Polysciences de-linked and/or removed information from its website that it deliberately and falsely alleges is proprietary. This information includes, without limitation: instructions to make a liquid transfection reagent from PEI Max, a PEI Max example certification of analysis containing specifications, and a MAXgene GMP marketing flyer that contains specifications, including those for heavy metals and pH that Polysciences now claims is confidential.

35.     Polysciences deliberately and falsely represents that it limited access to its trade secrets to only a few senior employees.  Compl. ¶ 32(d).  By way of example only no "design files" existed during Masrud's tenure for Polysciences' PEI Max or Transporter 5 products, and the manufacturing instructions for these products were made available in electric and hard copy to production employees, with hard copies accessible to anyone in manufacturing areas.

36.     Polysciences intentionally misrepresents that Masrud and his business partner, Mathew Griffin, who is also a former Polysciences employee, misused Polysciences information during their respective tenures with Polysciences when it knew or should have known that the information at issue was accessed, shared, and/or used on behalf of Polysciences.

37.     The vast majority of the allegations in Polysciences' Complaint relate to its Good Manufacturing Practice ("GMP") PEI products that have nothing to do with this case given that neither Masrud nor Serochem is manufacturing or selling a GMP product.  Polysciences deliberately conflates it allegations regarding its GMP v. non -GMP products to falsely suggest that it spent years and hundreds of thousands of dollars developing the products at issue in this litigation, when it did not, and to provide a false basis for its alleged harm.

38.     Serochem's PEI Prime performs better than Polysciences' PEI Max in HEK293 cells.  Polysciences was aware of third-party testing that demonstrated its comparative performance when it filed this action, and upon information and belief seeks to discovery why Serochem's product performs better.

39.     Polysciences has directed extensive and overbroad discovery requests upon Masrud, and has issued an extensive and overbroad third-party subpoena upon Mr. Griffin, seeking information relating to Serochem's activities, including Serochem's development efforts, manufacturing processes and procedures, testing information, sales and marketing information, and other confidential information that could provide Polysciences with an unfair competitive advantage.

## COUNT 1

### (Abuse of Process)

40.     Masrud realleges the preceding Paragraphs as if set forth fully herein.

41.     The action filed by Polysciences is objectively unreasonable, unjustified, and was instigated as a sham to prevent Masrud and/or Serochem from engaging in proper competition against Polysciences in the PEI transfection reagent field.

42.     The action filed by Polysciences constitutes an abuse of the litigative process in which Polysciences engaged in misrepresentations and falsehoods in the adjudicative process for the purpose of preventing Masrud and/or Serochem from engaging in proper competition against Polysciences in the PEI transfection reagent field.

43.     The action filed by Polysciences constitutes an abuse of the litigative process in which Polysciences is misusing the discovery process to gain access to Serochem's confidential and/or proprietary information to gain an unfair competitive advantage.

44.     The action filed by Polysciences constitutes an abuse of the litigative process in which Polysciences is misusing the litigation process to drive Masrud and/or Serochem out of business.

45.     As a result of the filing of this action, Masrud has been required to spend a large sum of money to defend himself and may suffer additional losses.

WHEREFORE, Masrud respectfully requests that this Court enter judgment in his favor and against Polysciences:

(a)     Awarding Masrud attorneys' fees and costs in connection with defending this action;

(b)     Awarding Masrud attorneys' fees and costs in connection with the filing of his counterclaim;

(c)     Awarding all other damages to Masrud to make him whole for Polysciences' abuse of process;

(d)     Granting such other and further relief as this Court deems appropriate.


## DEMAND FOR TRIAL BY JURY

Defendant hereby demands a trial by jury as to all triable issues in this case.

Dated:  September 28, 2020                    Respectfully submitted,

                                              HOMANS PECK LLC

                                              By: /s/ Julianne Peck
                                              Julianne Peck (I.D. No. 79966)
                                              43 Paoli Plaza #426
                                              Paoli, PA 19301
                                              (215) 868-6214
                                              jpeck@homanspeck.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Julianne Peck, hereby certify that on September 28, 2020, I caused an electronic copy of Joseph Masrud's Answer, Defenses, and Counterclaim to the Complaint to be served on all parties registered through the Court's ECF Filing System.

> HOMANS PECK LLC
>
> <u>By: /s/ Julianne Peck</u>
> Julianne Peck (I.D. No. 79966)
> 43 Paoli Plaza #426
> Paoli, PA 19301
> (215) 868-6214
> jpeck@homanspeck.com
>
> *Attorneys for Defendant Joseph Masrud*
>
> Dated:  September 28, 2020