## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| POLYSCIENCES, INC. | : |
| Plaintiff/Counter-Defendant, | : Civil Action No. 2:20-cv-03649-PBT |
| v. | : |
| JOSEPH T. MASRUD, | : |
| Defendant/Counter-Plaintiff | : |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT/COUNTER-PLAINTIFF JOSEPH T. MASRUD TO <u>COMPEL TRADE SECRET DISCOVERY</u>**

**Table of Contents**

*I.   INTRODUCTION ................................................................................................... 1*

*II.  PROCEDURAL HISTORY ................................................................................... 2*

*III. BACKGROUND ..................................................................................................... 3*

*IV.  LEGAL REASONING .......................................................................................... 6*

    A.    **POLYSCIENCES SHOULD BE COMPELLED TO SUPPLEMENT ITS RESPONSE TO INTERROGATORY NO. 5. ................................................................................................. 7**

    B.    **POLYSCIENCES SHOULD BE COMPELLED TO SUPPLEMENT ITS RESPONSES TO INTERROGATORY NOS. 2 AND 3 AND DOCUMENT REQUEST NOS. 13 AND 14. ............. 9**

*V.   CONCLUSION ..................................................................................................... 13*

# Table of Authorities

**CASES**

*Dow Chem. Canada, Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 346 (D. Del. 2012) ...................... 8
*Herley Industries, Inc. v. R. Cubed Engineering*, LLC, 2020 WL 6504588, *5 (E.D. Pa. Nov. 11, 2020) ............................................................................................................................... 7
*Sit-Up Ltd. v. IA/InterActiveCorp.,* No. 05-9292, 2008 WL 463884, at * 11 (S.D.N.Y. Feb. 20, 2008) ............................................................................................................................... 8
*Synygy, Inc. v. ZS Associates, Inc. et al.*, 2013 WL 3716518, *2 (July 15, 2013) .......................... 8
*Xerox Corp. v. IBM*, 64 F.R.D. 367, 371-2 (S.D.N.Y. 1974) ......................................................... 9

**STATUTES**

12 Pa. Stat. § 5303 .......................................................................................................................... 7
18 U.S.C. 1836(b)(1) ...................................................................................................................... 7

**RULES**

Fed. R. Civ. 37(a)(4) ....................................................................................................................... 7
Fed. R. Civ. P. 26(b)(1) .................................................................................................................. 6
Fed. R. Civ. P. 33(a)(2) .................................................................................................................. 6
Fed. R. Civ. P. 33(b)(1)(B) ............................................................................................................. 6

## I.    INTRODUCTION

Polysciences' entire case is premised on its theory that Masrud – *who is not subject to any non-competition or customer non-solicitation covenant* – should be prevented from operating a competing business because Polysciences posits "on information and belief" that Masrud relied on its confidential information in creating Serochem's competing products. It brings this claim despite the fact that the information needed to make the products at issue is publicly available from a number of sources, including Polysciences' own website. Moreover, despite this fact, it alleges that every aspect of its products is a trade secret and that Masrud has copied them all. Masrud has filed a counterclaim against Polysciences for abuse of process given that this case represents a prime example of a predatory trade secret claim brought for the improper purpose (among other things) of quashing legitimate and fair competition and financially driving Masrud out of business.

In the meantime, after almost three months of discovery and the production by Masrud of detailed interrogatory responses and extensive documents that provide Polysciences with the public information upon which it relied, details on how Serochem independently developed its products, its manufacturing instructions, and its prices, Polysciences continues to refuse to identify with specificity the alleged trade secrets at issue. Instead, it continues to cite all alleged trade secrets to which Masrud had access during his tenure and to refer Masrud to the majority of its document production (including to documents that have nothing to do with this case and/or relate to products that are not relevant to this litigation). It also refuses to identify witnesses or to produce documents that may bely its trade secrets allegations.

For the reasons set forth herein, Masrud respectfully seeks an Order compelling Polysciences to produce full and complete responses to Interrogatory Nos 2, 3 and 5, and to

Document Request Nos. 13 and 14, including, in response to Interrogatory No. 5, that Polysciences identify the specific trade secrets it alleges Masrud misappropriated now that it has received Masrud's production. Absent such specificity, Masrud cannot appropriately focus on Polysciences' remaining discovery deficiencies or adequately prepare for depositions and/or a hearing.

## II.    PROCEDURAL HISTORY

Polysciences filed its Complaint and Motion for a Temporary Restraining Order and Preliminary Injunction on July 28, 2020 (ECF 1 and 3). On August 18, 2020, the Court executed the parties' Stipulated Consent TRO, pursuant to which the parties agreed to expedited discovery, including the preservation of Masrud's electronic devices. (ECF 9). The parties exchanged written discovery requests and initial disclosures, respectively, on August 18, 2020, and August 21, 2020. On August 24, 2020, Masrud served Polysciences with his First Set of Interrogatories and Request for Production. On August 27, 2020, Masrud filed his Opposition to Polysciences' Motion (ECF 14).

On September 17, 2020, the parties exchange their respective discovery responses and initial document productions. Polysciences' Answer to Masrud's First Set of Interrogatories and First Request for Production are attached hereto as **Exhibits "A" and "B."** Notably, Masrud produced 2,161 pages of documents despite Serochem having developed its competing products less than eight months ago. Polysciences, produced little more -- 2,296 pages, most of which have little to no relevance to this case. For example, 182 pages relate to personnel files, 1063 pages to Polysciences' Good Manufacturing Products ("GMP") PEI products with which Serochem does not compete, and 392 pages consist of Polysciences' catalog, which contains hundreds of products that are not relevant to this action. Only 162 pages (i.e. 7%) of

Polysciences' production relate directly to the primary products at issue in this case: PEI Max (Product No. 24765) and Transporter 5.  Of these 162 pages, only a small number contain manufacturing information, and none contain information on the research and development of the products.

On October 12, 2020, Masrud served Polysciences with a letter outlining its discovery deficiencies.  **Exhibit "D."**  The parties held a meet and confer telephone conference on October 23, 2020, and by letter dated October 30, 2020, Polysciences responded to Masrud's deficiency letter in writing.  **Exhibit "E."**  Polysciences did very little to cure its deficiencies, continuing to leave Masrud guessing as to the specific basis for its trade secret claims, and refusing to produce information that are relevant to Masrud's defense of these claims.

### III.    BACKGROUND

Polysciences alleges that Masrud (through his company Serochem LLC) copycatted its PEI Max (PN 24765) (referred to herein, in short as "PEI Max") and Transporter 5 transfection reagent products.  Notably, according to its pleadings, Polysciences has been selling its PEI Max product for at least 15 years.  PEI Max is sold in powder form and has many industrial purposes. It can also be used as a "transfection reagent," a biomedical application that facilitates insertion of DNA into cells to study the function of genes or gene products and is used to develop new drugs and gene therapies for life-saving medical procedures.  Polysciences began marketing its PEI products as a transfection reagent in 2015 when a competitor's use-patent expired, at which time Polysciences offered its customers the option of buying it in powder form or a "ready to use" liquid form sold under the trademark Transporter 5 (Transporter 5 Transfection Reagent 5 ml (PN 26008-5) and Transporter 5 Transfection Reagent 50 ml (PN 26008-50)).

As set forth in Masrud's Opposition to Polysciences Motion for Temporary Restraining Order and Preliminary Injunction (ECF 14), Serochem did not need (or use) any of Polysciences' confidential or trade secret information in the manufacture of its competing products (PEI Prime Powder and PEI Prime AQ (its liquid form)) as all of the information that it needed to develop these products was available in the public domain. Masrud has produced the public information upon which Serochem relied as well as all information necessary for Polysciences to identify with specificity the trade secrets it alleges Masrud/Serochem used in connection with the development and manufacture of its competing products.

Indeed, in response to Polysciences' discovery requests, Masrud produced (without limitation) the following:

- Detailed Answers to Interrogatories dated September 17, 2020, in which Masrud described in detail and with specificity Serochem's R&D process, manufacturing methods and details, production protocols, equipment parameters, product specifications, and the testing labs it used when and for what purposes;[1]

- The public documents upon which Serochem relied to develop its products, many of which were attached as Exhibits to Masrud's August 27, 2020 Opposition to Polysciences' Motion for Temporary Restraining Order And Preliminary Injunction (ECF 14);

- Serochem's lab notebooks and internal communications regarding the development of its products;

- Additional documents and communications relating to the methods, specifications, materials and processes Serochem used to develop its products, including its equipment list for R&D and manufacturing, the selection and setup for its laboratory facility, communications with vendors of the key raw material, batch records for the manufacturing of Serochem's commercial PEI products, communications, protocols, and results from the third-party performance testing laboratory, communications with third-party analytical testing facilities and associated data showing the molecular weight of raw materials and successful production of the final material, and specifications and test methods for Serochem products; and

---

[1] Masrud previously provided the "Details of PEI Prime Manufacturing" to Polysciences on August 27, 2020, in an effort to facilitate settlement discussions.

4

- Relevant sales and marketing information.

In addition to Masrud's interrogatory responses and document production, Polysciences has admitted that it obtained two samples each of Serochem's products in July 2020 through a purchase by an individual from Rutgers University.

Despite now being in possession of all that it needs to specifically identify the trade secrets Serochem allegedly "copycatted," Polysciences continues to rely on rhetoric (e.g. Mr. Reed's "secret sauce" claim during the September 10, 2020 Status Conference with Judge Tucker), broad references to 22 categories of trade secret information to which it alleges Masrud had access during his tenure and *all* documents in its production that it designated as Attorneys' Eyes Only ("AEO").  See, Compl. ¶ 4; Exhibit "A" (Polysciences' Answer to Interrogatory No. 5, which incorporates by references its responses to Interrogatory No. 4).  Notably, Polysciences "AEO" production totals 1,689 pages, represents over 73% of its entire production, and includes personnel files and other documents that have nothing to do with information that could have been misappropriated.

In both Masrud's October 12, 2020 deficiency letter (Exhibit "C") and the parties' October 23, 2020 discovery conference, Masrud asked that Polysciences identify with specificity the alleged misappropriated trade secrets now that Masrud has produced everything that Polysciences needs to know regarding Serochem's competing products.  By letter dated October 30, 2020 (Exhibit "D") Polysciences supplemented its response to Interrogatory No. 5 by citing by bates number 1,582 pages in its production (which still represents over 68% of its production).  These citations do not help identify with any specificity whatsoever the trade secrets that Polysciences alleges Masrud misappropriated.  Indeed, many of the documents that Polysciences cited contain no trade secrets at all.  These include (without limitation):

- Polysciences Website Pages (Polysciences 239-241)

- Mathew Griffin's Personnel File, including employment forms and performance reviews (Polysciences 242-302, 311-344, 353)

- A letter from Fox Rothschild to Mathew Griffin regarding his post-employment obligations (Polysciences 303-307)

The remaining documents cited by Polysciences include formula descriptions for various PEI products with little to no relevance to this case, the Development Report and Design File for its GMP MAXgene product (a product with which Serochem does not compete), email correspondence, sales presentations, business plans, a competitor chart, QC Specification Worksheets for various PEI products (including those that are not at issue in this litigation), and sales and shipping information.

At this stage, after Masrud has disclosed all relevant information to Polysciences regarding the development, manufacture, and sale of Serochem's products, Polysciences should no longer be permitted to evade this question.  Nor should Masrud have to file a motion to compel information and documents that are highly germane to both the parties' claims and defenses.

## IV.   LEGAL REASONING

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1).  A party may serve interrogatories that relate to any matter within the scope of Rule 26(b).  Fed. R. Civ. P. 33(a)(2).  A party answering interrogatories "must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B).  "Each interrogatory must, to the extent it is not objected to, be answered separately ***and fully*** in writing under oath.  Fed. R. Civ. P. 33(b)(3)

(emphasis added).  Where a party has received discovery responses that are incomplete or evasive, Rule 37 of the Federal Rules of Civil Procedure permits that party to request a court order compelling additional disclosure or discovery.  Fed. R. Civ. 37(a)(4).

> A. **POLYSCIENCES SHOULD BE COMPELLED TO SUPPLEMENT ITS RESPONSE TO INTERROGATORY NO. 5.**

Interrogatory No. 5 asks Polysciences to "[d]escribe Plaintiff's alleged confidential information, including trade secrets . . . that Plaintiff contends Defendant used in the manufacture and/or sale of Serochem's [products]."  See, Exhibit B.  In response, and despite the meet and confer process, Polysciences has failed to be specific.  Rather, it cites to its laundry list of *all* of its alleged 22 categories of "Trade Secrets," to which it alleges Masrud had access during his tenure and cites to the majority of the documents it produced.  At this stage in the litigation, however, Polysciences' alleged misappropriation claims cannot remain a pure fishing expedition.

The Defend Trade Secrets Act ("DTSA") requires that Polysciences prove it owns a trade secret and that Masrud misappropriated it.  18 U.S.C. 1836(b)(1).  Similarly, the Pennsylvania Uniform Trade Secrets Act ("PUTSA") allows injunctive relief for the "actual or threatened misappropriation" of trade secrets.  12 Pa. Stat. § 5303.  Both require the evaluation of four factors, whether: (1) the owner used "reasonable means" to keep the information secret; (2) the information derives actual or potential "independent economic value" from being secret, (3) the information is not "readily ascertainable by proper means," and (4) others, who cannot access the information, would derive "economic value from is disclosure or use."  *Herley Industries, Inc. v. R. Cubed Engineering*, LLC, 2020 WL 6504588, *5 (E.D. Pa. Nov. 11, 2020).

As such, a plaintiff must identify the trade secret with enough particularity "as to separate the trade secret from matters of general knowledge in the trade or special knowledge of persons

7

skilled in the trade." *Id.* (quoting *Dow Chem. Canada, Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 346 (D. Del. 2012)). *See also*, *Synygy, Inc. v. ZS Associates, Inc. et al.*, 2013 WL 3716518, *2 (July 15, 2013) (quoting same). General allegations and generic references to products or information is insufficient to satisfy the reasonable particularity standard. *Id.* (citing *Hill v. Best Medical Int'l, Inc.*, Nos. 07-1709, 08-1404, 2010 WL 2546023, at *4 (W.D. Pa. June 24, 2010) and *AutMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001). Moreover, it is not enough to claim that defendants will be able to learn the details through additional discovery. Plaintiff must prove them now so that the court can evaluate the relevance of plaintiff's discovery and address any objections. *Id.*

In *Synygy* plaintiff failed to specifically identify the alleged misappropriated trade secrets even after the close of discovery. The court granted defendants' motion to compel plaintiff to supplement its interrogatory responses to be sufficiently specific so as to allow defendants to identify the allegedly misappropriated trade secrets. *Id.* *5. "Plaintiff must identify the specific characteristics of each trade secret, such as a particular drawing, process, procedure or cost/pricing data." *Id.* (quotations omitted). Such "specificity is required so that defendant can defend himself adequately against claims of trade secret misappropriation, and can divine the line between secret and non-secret information, and so that the jury can render a verdict based on a *discriminating* analysis of the evidence of disclosure and misappropriation." *Id. (*quoting *Sit-Up Ltd. v. IA/InterActiveCorp.,* No. 05-9292, 2008 WL 463884, at * 11 (S.D.N.Y. Feb. 20, 2008)).

As noted by the court in *Synygy* when it rejected plaintiff's position that it had sufficiently identified its trade secrets:

> At the very least, a defendant is entitled to know the bases for plaintiff's charges against it. The burden is upon the plaintiff to specify those charges, not upon the defendant to

8

guess at what they are. [After pre-trial discovery] . . . [Plaintiff] should be able to identify ***in detail*** the trade secrets and confidential information alleged to have been misappropriated by [Defendant]. Clearly until this is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not, and it is doubtful whether [Plaintiff] can undertake a meaningful discovery program, which includes its attempt to trace the flow of secrets and confidential information through [Defendant], without first identifying which trade secrets and what confidential information [Defendant] has misappropriated.

*Id.* at *5 (*quoting* special master instructions in *Xerox Corp. v. IBM*, 64 F.R.D. 367, 371-2 (S.D.N.Y. 1974) (emphasis added).

Given Masrud's production, this case should no longer be a fishing expedition based on allegations that "upon information and belief" Masrud misappropriated all of Polysciences' alleged trade secrets. Unless Polysciences supplements its response to Interrogatory No. 5 with sufficient particularity based on the evidence that it now has, Masrud can only guess at what he is specifically being accused of misappropriating. Not only does this prevent Masrud from adequately preparing his defense, it prohibits efficient discovery.[2] Polysciences should be prohibited from continuing to prosecute this case and run up Masrud's legal defense costs unless and until it adequately specifies the trade secrets at issue.

      **B.**    **POLYSCIENCES SHOULD BE COMPELLED TO SUPPLEMENT ITS RESPONSES TO INTERROGATORY NOS. 2 AND 3 AND DOCUMENT REQUEST NOS. 13 AND 14.**

**Interrogatory No. 2** asks Polysciences to:

Identify each person with knowledge of Polysciences' research and development of its PEI Max . . . and Transporter 5 products."

---

[2] For example, Masrud turned over his laptop and credentials to electronic storage sites so that Polysciences could identify and remove any of its alleged confidential information and discover whether Masrud used or disclosed any such information. The process has failed to date, however, because Polysciences has not limited its search for confidential information in any meaningful way. It used general and overbroad search terms (and requested that the forensic expert search for over 46,500 MD5 hash values (each one representing a unique file) that resulted in thousands upon thousands of irrelevant hits, after which Polysciences has made no effort to move forward with this unfocused fishing expedition.

9

**Interrogatory No. 3** asks Polysciences to:

"Identify each person with knowledge of the method, specifications, materials and processes Polysciences has used from its initial development through September 2019, of its PEI Max . . . and Transporter 5 products.

Exhibit "B" at pp. 5-6. Individuals with first-hand knowledge as to how these products were initially developed by Polysciences may have knowledge of relevant information such as whether and to what extent these products were developed from public information (helping to identify what is or it not a trade secret) and whether and to what extent – as alleged by Polysciences – it perfected or altered its formula/processes over the years – if at all. These facts are certainly relevant, at a minimum, to Masrud's defense of Polysciences' trade secret claims, including whether: (1) Polysciences' formula/process for these products derives actual or potential "independent economic value" from being secret, and (2) the formula/process is not "readily ascertainable by proper means."

In its initial disclosures (attached hereto as **Exhibit "E"**), Polysciences disclosed four individuals with knowledge about Polysciences PEI products: Andrew Ott (current Chief Operating Officer), Scott Knorr (current VP of Sales and Business), Leena Thuruthippallil (current Director of Lab Products who replaced Masrud), and Michael Wagaman (VP of Research and Development). Notably none of them were with Polysciences prior to 2010, none were directly involved in the development of the products at issue, and Polysciences appears to admit that none of them have first-hand knowledge of Polysciences' initial development of PEI Max (the primary product at issue in this case). In its Answers to Interrogatories, Polysciences added Samir Zaveri (Principal Chemist) and Jeff Depinto (Director of Sales for Polysciences subsidiary Bangs Laboratories) (Exhibit B, pp. 5-6) and clarified in response to Masrud's deficiency letter that these are "responsive individuals" who were the "primary contributors" for

10

the "present formulations of the referenced products." Exhibit "D" pp. 2-3.

Notably, Mr. Zaveri was only identified by Polysciences as a potential witness after Masrud noticed his deposition because, based on Mr. Zaveri's role and tenure, Masrud believed he may have relevant information regarding the initial development and manufacture of PEI Max. *See*, **Exhibit "F"** (August 24, 2020 Notice of Deposition of Samir Zaveri). It is doubtful that Polysciences would have disclosed Mr. Zaveri absent the Notice of Deposition, and it is entirely unclear who else has (or may have) relevant information regarding the development of PEI Max.[3] What is clear is that Polysciences has no intention of disclosing any such individuals absent a Court order. These individuals should include previous managers in the Lab Products division and Chemists, other than Mr. Zaveri, who have first-hand knowledge regarding the development of PEI Max (Product No. 24765) and Transporter 5. As such, Polysciences should be compelled to supplement its responses to provide a full response to the information requested in Interrogatory Nos. 2 and 3.

> **Document Request No. 13** seeks:
>
> All documents (including without limitation batch records) sufficient to demonstrate the original recipe, methods, processes, materials and specifications for Polysciences' non-cGMP PEI Products [which includes PEI Max (Product No. 24765) and Transporter 5] and any changes made thereto from product inception through September 2019.
>
> **Document Request No. 14** seeks:
>
> All documents that relate to or refer to the design, engineering and/or manufacturing of Polysciences' PEI products [which includes, without limitation PEI Max and Transporter 5].

---

[3] Polysciences states in response to Interrogatory No. 2 that PEI Max and Transporter 5 are products based on earlier PEI products developed by "Drs. Parasaren and Halpern" at Polysciences. Both of these gentlemen are deceased. There certainly must be individuals still alive and/or at Polysciences that have firsthand knowledge of the initial development of PEI Max (Product No. 24765) and Transporter 5.

Polysciences did not produce any documents relating to the initial development of its products, including its PEI Max (Product No. 24765), or any changes made to its products over the years. In response to Masrud's deficiency letter, Polysciences states that it disagrees with the assertion that it "did not produce requested documents," but does not confirm that it has produced all requested documents or that no additional responsive documents exist. Exhibit "D" at p. 1. Nor did it address the above concerns raised by Masrud during the parties' discovery conference. As an alleged "demonstration of good faith" Polysciences referred Masrud to 11 of the documents it produced. *Id*. p. 2. Five of these documents relate to Polysciences' MAXgene GMP product, which post-dates PEI Max and with which Serochem does not compete. The remaining six are "QC Specification Worksheets," only two of which relate to PEI Max and Transporter 5. While QC Specification Worksheets may give some information on the properties of the products, they do not provide information on how to manufacture the products or any information on the development of the products.

Indeed, with respect to PEI Max (Product No. 24765) -- the primary product at issue in this litigation -- Polysciences produced the current formula description identified as "Rev. 2" (Polysciences 80 – Polysciences 87). It did not produce Rev. 1, or any versions that predated Rev. 1 (which, upon information and belief was so named after Polysciences replaced its computer system in April 2018) or any other industry standard documents that relate to the initial development of the product, such as lab notebooks, development plans, batch records, and literature citations. These records are relevant to the parties' claims and defenses for the reasons stated above and should be produced. Indeed, the lab notebooks likely identify the relevant individuals involved in the initial development of the products at issue. In addition, the history of the development will help demonstrate to what extent information was derived from the public

domain, and to what extent, if at all, Polysciences perfected these products over the years – all of which are relevant to Masrud's defenses to Polysciences' claims and to his counterclaim against Polysciences for Abuse of Process.

## V. CONCLUSION

For the reasons set forth herein, Defendant Joseph T. Masrud respectfully requests that the Court grant his motion to compel and enter an order in the form attached hereto.

Dated:  November 24, 2020                HOMANS PECK LLC

/s/ Julianne L. Peck
Julianne L. Peck, Esquire
43 Paoli Plaza #426
Paoli, PA 19301
Telephone: (215) 868-6214
jpeck@homanspeck.com

*Attorney for Defendant*
*Joseph T. Masrud*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| POLYSCIENCES, INC. | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:20-cv-03649-PBT |
| | : | |
| v. | : | |
| | : | |
| JOSEPH T. MASRUD, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**CERTIFICATE OF SERVICE**

I, Julianne L. Peck, hereby certify that on this 24th day of November 2020, a true and correct copy of the within Motion of Defendant/Counter-Plaintiff Joseph T. Masrud to Compel Trade Secret Discovery, and all supporting documentation, was filed using the Court's electronic filing system and served upon all counsel of record via ECF notification.

                                                   */s/ Julianne L. Peck*
                                                  Julianne L. Peck, Esq.