**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| POLYSCIENCES, INC. | : | |
| | : | |
| Plaintiff/Counter-Defendant, | : | Civil Action No. 2:20-cv-03649-PBT |
| | : | |
| v. | : | |
| | : | |
| JOSEPH T. MASRUD, | : | |
| | : | |
| Defendant/Counter-Plaintiff | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>POLYSCIENCES' MOTION TO COMPEL</u>**

On the Brief:

December 9, 2020:                    Julianne L. Peck, Esq.
                                     HOMANS PECK, LLC
                                     *Attorney for Defendant*
                                     *Joseph T. Masrud*

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT ........................................................................................................4

    A.   THERE IS NO BASIS TO COMPEL INFORMATION THAT HAS ALREADY BEEN PRODUCED.......4

    B.   THERE IS NO BASIS TO COMPEL INFORMATION THAT DOES NOT EXIST. .............................9

    C.   POLYSCIENCES HAS ALREADY HAD ACCESS TO 3 SAMPLES EACH OF SEROCHEM'S PEI PRODUCTS, AND MASRUD DID NOT REFUSE POLYSCIENCES' REQUEST FOR ADDITIONAL SAMPLES. ............................................................................................................................10

    D.   DOCUMENT REQUEST NO. 2 LACKS SUFFICIENT PARTICULARITY FOR RESPONSE. .............11

    E.   NO BASIS EXISTS TO COMPEL A PRIVILEGED LOG ..............................................12

III.  CONCLUSION ................................................................................................13

# TABLE OF AUTHORITIES

## CASES

Cont'l Access Control Systems, Inc. v. Racal-Vikonics, Inc.,
101 F.R.D. 418, 419 (E.D. Pa. 1983) ...........................................................................11

Frye v. Dan Ryan Builders, Inc., Civ. A. No. 2011 WL 666326,
2011 WL 666326, at *7 (N.D.W. Va. Feb. 11, 2011 ...........................................13

McGovern, Jr. v. Triad Systems Corp., Civ. A. No. 86-4798,
1987 WL 6890, * 2 (Feb. 20, 1987) .....................................................................11

Ryan Inv. Corp. v. Pedregal de Cabo San Lucas, No. C 06-3219,
2009 WL 5114077, * (N.D. Cal. Dec. 18, 2009) .................................................12

Staff Builders of Philadelphia, Inc. et al. v. Koschitzki, et al., Civ. A.
No. 88-6103, 1989 WL 71294 *6 (June 26, 1989) (aff'd as modified 1989
WL 97419 (Aug. 17, 1989)) .................................................................................11

Towner v. County of Tioga, Civ. A. No. 3:15-CV-0963, 2018 WL 1089738,
*6 (N.D.N.Y. Feb. 27, 2018).................................................................................12

UnitedHealthcare of Florida, Inc. v. Am. Renal Assocs. LLC, Civ. A. No.
16-CV-81180, 2017 WL 6210835, at *1  (S.D. Fla. Dec. 7, 2017.........................13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POLYSCIENCES, INC. | : |
| | : |
| Plaintiff/Counter-Defendant, | :          Civil Action No. 2:20-cv-03649-PBT |
| | : |
| v. | : |
| | : |
| JOSEPH T. MASRUD, | : |
| | : |
| Defendant/Counter-Plaintiff | : |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**POLYSCIENCES' MOTION TO COMPEL**

## I.      INTRODUCTION

Contrary to Polysciences' contention in support of its Motion that Masrud has "resisted" discovery, Masrud has timely complied, in full, with all relevant discovery requests in an effort to demonstrate that he did not disclose or use any of Polysciences' proprietary information.

Polysciences filed its Complaint and Motion for a Temporary Restraining Order and Preliminary Injunction on July 28, 2020 (ECF 1 and 3).  Masrud immediately negotiated a Stipulated Consent TRO with Polysciences, which was entered by the Court on August 18, 2020, pursuant to which he agreed to expedited discovery, including the immediate preservation of his electronic devices.  (ECF 9).  He also immediately had his laptop and cloud storage sites imaged and given to a neutral forensic expert for analysis pursuant to a joint Forensic Protocol. Unfortunately, because the protocol search terms are too broad (at Polysciences' insistence) the analysis has stalled, and Polysciences has made no effort since October to remedy the situation or move forward with the forensic review in any way.  Masrud's last email to Polysciences dated October 26, 2020, sent in an effort to discuss the status of the forensic review and potential avenues to move things along, went ignored.

On August 27, 2020 – ***before Polysciences even served its discovery requests*** – Masrud produced to Polysciences, Serochem's "Details of PEI Prime Manufacturing" in an effort to facilitate settlement discussions.  This document explains in detail Serochem's manufacturing process (including equipment, ingredients, weights, methods etc.), and is also attached as an Exhibit to Masrud's Answers to Interrogatories (which are attached to Polysciences' Motion at Exhibit "C").

On September 17, 2020, Masrud timely responded to Polysciences' discovery requests (Exhibits "C" and "D" to Polysciences' Motion to Compel), and on that very same day produced 2,161 pages of documents.  Masrud's discovery responses and production include, without limitation:

- Answers to Interrogatories in which Masrud described in detail and with specificity Serochem's R&D process, manufacturing methods and details, production protocols, equipment parameters, product specifications, and the testing labs it used when and for what purposes;

- The public documents upon which Serochem relied to develop its products, many of which were attached as Exhibits to Masrud's August 27, 2020 Opposition to Polysciences' Motion for Temporary Restraining Order And Preliminary Injunction (ECF 14);

- Serochem's lab notebooks and internal communications regarding the development of its products;

- Additional documents and communications relating to the methods, specifications, materials and processes Serochem used to develop its products, including its equipment list for R&D and manufacturing, the selection and setup for its laboratory facility, communications with vendors of the key raw material, batch records for the manufacturing of Serochem's commercial PEI products, communications, protocols, and results from the third-party performance testing laboratory, communications with third-party analytical testing facilities and associated data showing the molecular weight of raw materials and successful production of the final material, and specifications and test methods for Serochem products; and

- Relevant sales and marketing information.

Contrary to Polysciences contention otherwise, Masrud's production demonstrates that Serochem independently developed its competing PEI products.

On October 16, 2020 (4 days after Masrud served Polysciences with a deficiency letter), Polysciences served Masrud with a "me too" deficiency letter.  Polysciences Motion at Exhibit "E."  Masrud responded by letter dated October 22, 2020, *id.* at Exhibit "F," and the parties held a telephone conference to discuss respective deficiencies on October 26, 2020.   Notably, Masrud requested the conference to discuss Polysciences deficiencies, not the other way around. Moreover, at the conclusion of the conference Mr. Reed gave no indication that documents Polysciences now seeks to compel, remained an issue.   There was no "month-long letter writing campaign."  Masrud addressed Polysciences concerns in 10 days!  Also, contrary to Polysciences' assertion that Masrud prevented Polysciences access to highly confidential information through redactions, the only relevant information that Masrud redacted was the source of the key raw material (PEOx) that Serochem used, and he later produced this information in unredacted form on November 19, 2020 in a supplemental "Attorney's Eyes Only" production of the pages that contained these redactions.  *See* **Exhibit "A"** attached hereto (November 19, 2020 email from Ms. Peck to Mr. Reed attaching a link to "unredacted AEO pages").

Polysciences filed this motion – the day after Masrud filed his Motion to Compel Trade Secret discovery from Polysciences – in an effort to create the false impression that Masrud – like Polysciences – is evading discovery, which is not the case.  Indeed, Polysciences filed this Motion despite the fact that Masrud had confirmed that: (a) all information responsive to Interrogatory No. 7, Interrogatory No. 10, and Document Request No. 4 has already been produced; (b) no documents exist in response to Document Request Nos. 5, 15, and 19; (c) in response to Document Request No. 13, Masrud agreed to provide Polysciences additional

3

samples of its PEI products if Polysciences would admit in writing that it was behind the sole

purchases of Serochem's PEI products made prior to the filing of the Complaint, or in the

alternative, Polysciences could purchase such samples from Serochem's website; (d) Request

No. 2 (for all "documents and things concerning this action" lacks sufficient particularity for

response; and (e) the parties agreed during the meet and confer process that privileged

documents from the commencement of this litigation need not be logged.[1]

      For the reasons set forth herein, Polysciences' Motion should be denied in its entirety.

## II.   ARGUMENT

### A.   There is No Basis to Compel Information that Has Already Been Produced.

      Masrud complied with his discovery obligations in response to Interrogatory No. 7,

Interrogatory No. 10, and Document Request No. 4.  As such, there is no basis to compel

supplemental responses.

      **Interrogatory No. 7** asks Masrud to

"[i]dentify and describe all facts, documents, test reports or other support for the statement on page 2 of Jeffery Oberman's July 16, 2020 letter to Bret Puls that Serochem's PEI Prime Powder and PEI Prime AQ "are materially different from the products that Polysciences sells and provide a significant performance benefit over Polysciences' products at a lower price point."

      The statement in Mr. Oberman's letter that Serochem's products are "materially

different" was based on SEAP performance testing by Kemp Proteins that demonstrate that

Serochem's products perform significantly better than Polysciences' products in a key

application (HEK 293 cells).  As such, in response to this Interrogatory, Masrud directed

Polysciences to the testing results.  As to other differences between the parties' respective

---

[1] It should also be noted that Polysciences complains in the introduction to its Memorandum of Law in support of its Motion that Masrud "refuses to . . . produce emails and communications relating to his departure from Polysciences."  Yet, Polysciences did not request any such documents and did not raise this alleged deficiency at any time during the meet and confer process.

products, Masrud directed Polysciences to: (a) detailed Interrogatory responses specifically identifying how it researched, developed, and manufactures its products, and (b) Masrud's document production which supports Masrud's detailed interrogatory responses and provides additional information.

During the meet and confer process Masrud reiterated that the basis for the statement in the Oberman letter that Serochem is materially different and provides a significant performance benefit over Polysciences products was the SEAP testing that Masrud produced.  While Rule 33(d) permits a party to produce business records in response to an interrogatory where (a) the information sought may be determined by examining or summarizing these records; and (b) the burden to either party in so doing would by the same, Masrud did not merely direct Polysciences to his production!  He directed Polysciences to his response to Interrogatory No. 4 – in which he spelled out in detail and in chronological order Serochem's research and development process – and to Interrogatory No. 5 – to which Masrud attached a document summarizing in detail Serochem's manufacturing process.  In other words, Masrud summarized his document production for Polysciences.  As such, there is no basis to compel anything further.

Polysciences does not explain why Masrud's response does not meet the requirements of Rule 33(d), particularly when Masrud went well beyond referring Polysciences to his document production.  However, it must be noted that while Masrud's interrogatory responses have made it very easy for Polysciences to identify any similarities and/or differences between Serochem's and Polysciences respective products, the burden for Masrud to make any such comparison is much harder given that Polysciences designated the majority of its document production (including the documents relevant to any such comparison) as "Attorneys Eyes Only."  This designation effectively prevents Masrud from making the comparisons that Polysciences apparently seeks to compel and from otherwise preparing his defense to this action.

Finally, it should be noted that Masrud should not be compelled to make this analysis for Polysciences when the similarities and/or differences between the products are largely irrelevant. The issue before this Court is whether Serochem used Polysciences' confidential information and/or trade secrets, not the degree of similarities and/or differences between the parties' respective products, particularly when instructions and information for making a PEI transfection reagent is available in the public domain. Moreover, Polysciences has failed to identify its alleged trade secrets with the required specificity – which is the subject of Masrud's Motion to Compel. Polysciences should not be permitted to flip this burden on its head by compelling Masrud to somehow review Polysciences' "Attorneys Eyes Only" production and identify for it all differences between the respective products so that Polysciences can narrow its alleged trade secret claims. That burden belongs to Polysciences.

**Interrogatory No. 10:** asks Masrud to:

> **Identify all documents concerning Polysciences' PEI products that Masrud transferred to any non-Polysciences email account, personal computer, external hard drive, or cloud storage from January 2019 to October 2019.**

From January 2019 through September 6, 2019, Masrud worked for Polysciences and used a Polysciences email address. Any information shared from his Polysciences email is in Polysciences possession, custody, and control. Moreover, following the termination of his association with Polysciences Masrud returned to Polysciences his work computer and deleted from his personal computers any Polysciences' information that he found. He cannot possibly be tasked with recalling over one year later, the information that was contained therein and how it got there. Nevertheless, to ensure that Polysciences has all information in Masrud's possession that is responsive to this Interrogatory, Masrud:

- Produced any emails in his possession with information responsive to this request (e.g. emails to or from his Serochem or personal email addresses);

- Preserved for Polysciences all electronic devices (including cloud storage devices) for review by a forensic expert for the existence of (and associated metadata for) any such information;

- Confirmed that he he did not use any external devices (e.g. thumb drives) to transfer Polysciences information other than during his tenure with Polysciences and for Polysciences benefit (e.g. presentations for clients/Polysciences while traveling);

- Confirmed that he does not have any thumb drives or other external devices he may have used during his tenure with Polysciences.  Such devices either remain with Polysciences or relevant customers;

- Produced for Polysciences a list of documents by file name that he discovered and deleted from a google-drive account following receipt of Polysciences' cease and desist letter.  See Masrud's Answer to Interrogatory No. 8 attaching list of documents.

Masrud has not been able to locate any additional Polysciences information on his personal computers, and cannot identify any potential additional Polysciences information on cloud storage sites without accessing these storage sites, opening documents, and altering relevant metadata.  The preservation of the metadata (including when Masrud accessed the cloud storage sites in general and any responsive documents specifically) is important, and is one of the reasons that Masrud agreed to the forensic protocol.  Moreover, the Forensic Protocol is intended to identify any Polysciences information on Masrud's devices/cloud storage sites.   Until the filing by Polysciences of this Motion, Masrud believed Polysciences to be in agreement with the use of the Forensic Protocol for this purpose.

If Polysciences in fact seeks a Court Order that Masrud review the cloud storage sites that he used during his tenure with Polysciences – with Polysciences knowledge and consent – for responsive information, it should first be required to waive any argument that due to the destruction of metadata it should be assumed that Masrud improperly accessed any information contained therein either during or following his tenure with Polysciences.  In fact, the opposite inference should be made.  Additionally, Masrud should not be required to spend any additional legal fees associated with a forensic review of those sites.  Otherwise, Polysciences' Motion to

Compel additional information responsive to Interrogatory No. 10 should be dismissed as

Masrud has produced all that he was reasonably able to find that it is his possession, custody, and

control, including turning over an image of his personal computers and the credentials for the

cloud storage sites at issue for forensic review.

**Document Request No. 4** seeks:

> All documents and things, including communications and agreements, exchanged
> between Defendant and/or Serochem and any customers (current or former) concerning
> Serochem's PEI Products.

In response to this Request Masrud produced all documents relating to its actual sales

and/or customer contracts, including communications with its current and former customers, and

will update his production with any additional sales.[2]  See Exhibit "F" to Polysciences Motion at

p. 1 ("Masrud produced all documents relating to its actual sales and/or customer contracts.

Masrud did not limit his production [in response to this request] to communications that contain

proprietary Polysciences information.").  Moreover, while this request does not seek

communications with potential/prospective customers, Masrud also agreed to produced (in

response to other requests) communications (if any): (a) with potential customers that Masrud

had reason to believe were PEI customers of Polysciences during his tenure and/or that were

identified on Polysciences' "Customer List" (provided by Polysciences to Masrud at the outset of

this litigation); or (b) in which Masrud shared or disclosed Polysciences confidential

information.  *See* Exhibits "D" and "F," to Polysciences Motion.

Polysciences moves to compel documents responsive to this request despite the fact that

Masrud clarified for Polysciences during the meet and confer process that he produced all

---

[2] Polysciences complains in the Introduction to its Memorandum of Law that Serochem is still selling its products despite the fact that "Masrud's [unidentified] interrogatory answer [states] that Serochem is not currently selling its PEI products."  Not only has Masrud never made any such representation (in any Interrogatory response or elsewhere), the parties' stipulated TRO does not prevent him from doing so.

customer communications, and despite the fact that Request No. 4 does not seek communications with prospective customers.  Even so, any such communications that do not involve the potential use or disclosure of confidential information and/or relate to an actual sale, are not relevant to any of the present claims or defenses in this action.  Indeed, Polysciences failed to articulate the relevance of the communications it now seeks either during the meet and confer process or in its Motion to Compel.  Polysciences' effort to compel "potential" customer communications regardless of relevance is a transparent attempt to fish for additional claims and/or gain access to Serochem's customer leads for competitive purposes, and should be denied.

**B.      There is No Basis to Compel Information that Does Not Exist.**

Polysciences moves to compel information responsive to **Request Nos. 5. 15, and 19**, despite the fact that Masrud confirmed in his discovery responses, in his October 22, 2020 letter response to Polysciences' deficiency letter, and during the parties' October 26 discovery conference that no responsive documents exists.  Exhibits "D" and "F" to Polysciences Motion to Compel.  Masrud cannot produce documents that do not exist.  Masrud confirmed for Polysciences during the meet and confer process that Serochem does not use a product supplier or third-party manufacturer for its PEI products  (**Request No. 5**), has no documents that project sales, or forecast revenue or profits (**Request No. 15**), and has no documents that relate to an attempt to "design around" Polysciences' PEI Products (**Request No. 19**).[3]  Even though "design around" is an ambiguous term, Masrud has confirmed for Polysciences during the meet and confirm process that it has already produced all documents that relate to the research and development, design and manufacture of Serochem's PEI products.  In response to other

---

[3] See Exhibit "F" at p. 2 ("Request No. 5 . . . .  This confirm that Serochem is not using any third-party supplier(s) or manufacturer(s) and that no responsive documents exist. . . . Request No. 15 . . . . This confirms, consistent with Masrud's initial response to this request, that no responsive documents exist. . . . Request No. 19 . . . .  This confirms that all documents and communications relating to the design of Serochem's PEI products have been produced.  No documents exists that concern 'designing around' Polysciences' PEI products."

requests, Masrud has also produced all communications regarding his decision to develop PEI

productions, including without limitation any such communications with Mathew Griffin and the

contract chemist that Serochem used.  There is nothing more to produce on this subject.

### C. Polysciences Has Already Had Access to 3 Samples Each of Serochem's PEI Products, and Masrud Did Not Refuse Polysciences' Request for Additional Samples.

**Document Request No. 13** seeks two physical samples of each of Serochem's PEI

products.  Masrud responded to this Request by noting that "upon information and belief"

Polysciences was already in possession of 3 samples each of Serochem's products and

confirming that to the extent Polysciences sought additional samples, Serochem's products

remained available for purchase on Serochem's website.  In his October 22, 2020 letter response

to Polysciences' deficiency letter, Masrud stated that if Polysciences confirmed in writing that it

had already obtained samples from Mr. Honnen and/or Rutgers University, that Serochem would

provide (free of charge) additional samples.  Exhibit "D" to Polysciences' Motion at p. 2, ¶ 2.

During the parties' October 26, 2020 discovery conference, Mr. Reed admitted that Polysciences

had already obtained samples Serochem's PEI products (3 of each) and could not specify the

reason it needed additional samples.  Moreover, rather than making this admission in writing,

responding to outstanding discovery on this issue, or purchasing additional samples (at a total

cost of $360 plus shipping), Polysciences moved to compel and falsely accused Masrud of

refusing "in bad faith" to produce samples.  He is not.  Instead, Polysciences refused to admit in

writing (and has to date delayed discovery that will show) that it was behind the only purchase of

Serochem's products as of Masrud's discovery responses, and that it was likely in possession of

3 samples each of Serochem's products before it even filed the Complaint.

Equally important, Masrud should not be compelled to produce samples when

Polysciences has not articulated the relevance of the samples it seeks, it already had three

samples of each product in its possession, and Masrud's discovery responses explicitly detail

how Serochem made the competing products.  No further samples are necessary for Polysciences

to discover whether Serochem used any of Polysciences' alleged proprietary recipes, methods, or

processes.

### D.    Document Request No. 2 Lacks Sufficient Particularity for Response.

**Request No. 2** seeks:

Documents and things concerning this Action, including communications to any third-parties.

Masrud appropriately objected to this request as vague and ambiguous and lacking

sufficient particularity, and also objected to the extent that it seeks information that is not

relevant to the claims or defenses in this action.

Rule 34(b) requires that document requests "describe with reasonably particularity each

item or category of items to be inspected," and courts should exercise their power to restrict

discovery where justice requires, including denying motions to compel responses to requests that

are broad and vague as to subject matter.  *Cont'l Access Control Systems, Inc. v. Racal-Vikonics,*

*Inc.*, 101 F.R.D. 418, 419 (E.D. Pa. 1983).  *See also*, *Staff Builders of Philadelphia, Inc. et al. v.*

*Koschitzki, et al.*, Civ. A. No. 88-6103, 1989 WL 71294 *6 (June 26, 1989) (aff'd as modified

1989 WL 97419 (Aug. 17, 1989)) (noting in denying motion to compel an overbroad request that

"items sought must be described and categorized with reasonable particularity" as "[i]t is

impossible to determine the relevancy of [an] overly broad request."); *McGovern, Jr. v. Triad*

*Systems Corp.*, Civ. A. No. 86-4798, 1987 WL 6890, * 2 (Feb. 20, 1987) (denying motion to

compel an overbroad request because "[a]lthough [the requested] documents are clearly relevant,

Defendants' request is not specific enough.  Defendants have not given the [producing party] any

way to determine which documents the defendants would consider supportive of their

[request]").

Similarly, here, Polysciences' request it far too overbroad for a meaningful response. Masrud has no way to determine what Polysciences would consider responsive to a request for "all documents concerning this action," and such a broad request is not proportional to the needs of this case.  As such, Polysciences' motion to compel a response to Document Request No. 2 should be denied.

E.     NO BASIS EXISTS TO COMPEL A PRIVILEGED LOG

During the meet and confer process the parties agreed that a privilege log would not be required for either party for communications that occurred after the institution of this litigation. **Exhibit "B"** attached hereto (Mr. Reed's letter to Ms. Peck dated October 30, 2020 at p. 1, para. 3 stating "Neither party has produced a privilege log.  We agree that responsive attorney-client communications from the commencement of litigation forward are presumptively privileged and need not be logged.").  Polysciences appears to have changed its mind as it makes no reference to this agreement in its motion.

Nevertheless, even absent the parties' agreement, courts recognize that parties should not be required to log privileged communications after a lawsuit has commenced.  *See, e.g., Towner v. County of Tioga*, Civ. A. No. 3:15-CV-0963, 2018 WL 1089738, *6 (N.D.N.Y. Feb. 27, 2018) ("It is the position of this court that parties should not be required to list on a privilege log, on an ongoing basis, communications between attorney and client once litigation has commenced."); *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas,* No. C 06-3219, 2009 WL 5114077, * (N.D. Cal. Dec. 18, 2009) (denying motion to compel a privilege log because "counsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log."); *UnitedHealthcare of Florida, Inc. v. Am. Renal Assocs*. LLC, Civ. A. No. 16-CV-81180, 2017 WL 6210835, at *1

(S.D. Fla. Dec. 7, 2017 (noting that parties do not typically seek post-litigation communications

of opposing counsel as such materials are normally privileged); *Frye v. Dan Ryan Builders, Inc.*,

Civ. A. No. 2011 WL 666326, 2011 WL 666326, at *7 (N.D.W. Va. Feb. 11, 2011 (reasoning

that party did not have to produce a privilege log for its litigation file).

      While Masrud objects to the unnecessary burden and expense of a post-litigation

privilege log, any Order compelling such a log should be directed to both parties.

### III.    <u>CONCLUSION</u>

      For the reasons set forth herein, Defendant Joseph T. Masrud respectfully requests that the

Court deny Polysciences' Motion to Compel in its entirety.


Dated:  December 9, 2020        HOMANS PECK LLC

          /s/ Julianne L. Peck
          Julianne L. Peck, Esquire
          43 Paoli Plaza #426
          Paoli, PA 19301
          Telephone: (215) 868-6214
          jpeck@homanspeck.com

          *Attorney for Defendant*
          *Joseph T. Masrud*