IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| POLYSCIENCES, INC., : | |
| : | |
| Plaintiff/Counter-Defendant, : | Civil Action No. 2:20-cv-03649-PBT |
| : | |
| v. : | |
| : | |
| JOSEPH T. MASRUD, : | |
| : | |
| Defendant/Counter-Plaintiff. : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
DEFENDANT/COUNTER-PLAINTIFF JOSEPH T. MASRUD TO
COMPEL PLAINTIFF/COUNTER-DEFNDANT POLYSCIENCES, INC. TO DE-
DESIGNATE ITS ATTORNEYS' EYES ONLY PRODUCTION AND FOR SANCTIONS**

Dated: January 6, 2020

Julianne L. Peck, Esq.
HOMANS PECK, LLC
43 Paoli Plaza #426
Paoli, PA 19301

*Attorney for Defendant/Counter-Plaintiff
Joseph T. Masrud*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................... 1
II. NATURE OF THIS CASE ..................................................................................... 2
III. PROCEDURAL HISTORY .................................................................................... 3
IV. LEGAL REASONING............................................................................................ 8
    A. LEGAL STANDARD ................................................................................. 8
    B. POLYSCIENCS LACKS "GOOD CAUSE" FOR ITS AEO DESIGNATIONS ....... 9
    C. SANCTIONS ARE WARRANTED.......................................................... 14
V. CONCLUSION..................................................................................................... 15

# TABLE OF AUTHORITIES

<u>Cases</u>

*2 Hounds Design, Inc. v. Brezinski*, Civil Action No. 13-101, 2013 WL 5938073, at * 3 (W.D.N.C. Nov. 5, 2013) ................................................................................................... 11

*Alarmax Distributors, Inc. v. Honeywell Int'l Inc.*, Civ. Act. No. 14-1527, 2015 WL 11112432 (W.D. Pa. Oct. 28, 2015) ............................................................................. 11

*Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986) ............................................. 9

*Core Laboratories v. Amspec*, Civ. A. No. 16-0526-CG-N, 2017 WL 3585420 (S.D. Alabama Aug. 18.2017) ...................................................................................... 13

*Election Sys. & Software, LLC v. RBM Consulting, LLC*, No. 8:11CV438, 2015 WL 1321440, at *5 (D. Neb. Mar. 24, 2015) .......................................................................... 10

*Fears v. Wilhelmina*, 56 Fed. R. Serv. 3d 426 (S.D.N.Y. 2003) ..................................................... 9

*Frees, Inc. v. McMillian*, Civil Action No. 05-1979, 2007 WL 184889, at * 5 (W.D. La. Jan 22, 2007) ............................................................................................... 12

*Jeddo Coal Co.*, No. 3:16-CV-621, 2018 WL 1635153, at *3 (M.D. Pa. Apr. 5, 2018) .............. 10

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint. Inc.*, 863 F. Supp. 2d 1066, 1091 (D. Colo. 2012) ................................................................................................................ 11

*Martinez v. City of Ogden*, No. 1:08-CV-87, 2009 WL 424785, at *3 (D. Utah Feb. 18, 2009) ................................................................................................. 11

*Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373, 2002 WL 33003691, at *4 (W.D. Tenn. Jan. 30, 2002) ................................................................................... 12

*Merit v. Feuer et al.*, 201 F.R.D. 382, 385 (E.D. Pa. 2001) .................................................... 11, 14

*Mitchell Int'l, Inc. v. Healthlift Pharmacy Services, LLC*, Case No. 2:19-cv-000637-RJS-DAO, 2020 WL 2736094 at * 2-3 (D. Utah May 26, 2020) ........................................... 13

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3rd Cir. 1994) ......................................... 8, 10

*Standard Space Platforms Corp. v. U.S.*, 35 Fed. Cl. 505, 509 (Fed. Cl. 1996) ........................... 12

*THK Am., Inc. v. NSK Co.*, 157 F.R.D. 637, 640 (N.D. Ill. 1993) ........................................... 9, 12

*United States v. Garrett,* 571 F.2d 1323, 1326, n. 3 (5th Cir.1978) ............................................... 9

*Util. Sys. Servs., Inc. v. Careguard Warranty Servs., Inc.*, No. CV 16-505-SDD-EWD, 2017 WL 3713472, at *9 (M.D. La. Aug. 14, 2017) ................................................................. 11

## I.     INTRODUCTION

Masrud brings this motion following Polysciences' refusal to de-designate 77 documents consisting of over 1,500 pages that it designated "Attorney's Eyes Only" ("AEO"), despite the fact that these documents contain the very information that Masrud needs to fairly litigate this case. The documents at issue contain the proprietary information that Polysciences alleges Masrud misappropriated, information that Polysciences alleges Masrud had access to during his tenure with Polysciences, communications to/from Masrud, and other information reviewed and/or authored by Masrud during his tenure. Despite Masrud's objections to the AEO designations, Polysciences has made no effort to establish the "good cause" required by Rule 23, which requires Polysciences to articulate the "significant harm" that is "highly likely" to occur in the event that any of the documents at issue are disclosed to Masrud on a "Confidential" as opposed to AEO basis – on a document by document basis. Courts generally reject AEO designations where, as here, a party needs information to either defend himself or prove his case. It is axiomatic that Masrud needs access to the very information Polysciences alleges he stole, particularly when the information at issue is technical, and Masrud is uniquely positioned to interpret the information produced.[1]

In response to Masrud's meet and confer efforts, Polysciences has repeatedly taken the position that it has the right under the parties' stipulated Protective Order (which has yet to be entered by the Court) to designate alleged trade secrets as AEO. The Order, however, does not

---

[1] Currently pending before this Court is Masrud's Motion to Compel Trade Secret Discovery (ECF 22) because to date, Polysciences has failed to identify the specific trade secrets it alleges Masrud misappropriated. Instead, it refers Masrud to the information in its AEO document production. In other words, it expects Masrud to defend this action without letting him know what this action is really about.

in any way alleviate Rule 23's "good cause" requirement.[2]  As such, for the reasons set forth herein, Masrud respectfully requests that his motion be granted.  Also for the reasons set forth herein, Masrud seeks sanctions in the form of attorney's fees for having to bring this Motion.

## II.   NATURE OF THIS CASE

Masrud incorporates by reference the Factual Background in his Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (ECF 14).  In short, despite the fact that instructions and other information to make a PEI transfection reagent have been available in the public domain for decades, and despite the fact that many of the specifications and other information regarding Polysciences' PEI transfection reagents are and/or were (prior to this litigation) available on its website, Polysciences seeks to stop Masrud (a former employee and consultant of Polysciences) from selling competing products through his company Serochem LLC.  Because Masrud never signed a non-compete, Polysciences seeks to quash competition by alleging that "upon information and belief" Masrud "copycatted" its products by using Polysciences' alleged trade secrets.

Currently pending before the Court is Polysciences' Motion to Amend the Complaint to add as additional defendants Serochem and Mathew Griffin, another former Polysciences employee who helped Serochem develop its competing products.  Polysciences alleges that both Masrud and Griffin had access to all of its relevant trade secrets with respect to the products at issue, and that they misappropriated them all.

---

[2] To the extent that Polysciences argues that it does, the Protective Order should be modified to expressly state that AEO designations require "Good Cause," and that "Good Cause" for an AEO designation does not exist for trade secrets or other information that is alleged to have been misappropriated by defendant(s).

Masrud and Griffin have disclosed through discovery, and even prior to discovery, detailed information about Serochem's independent research, development, and manufacture of its competing products. Despite having this information, Polysciences has refused, to date, to identify with specificity the trade secrets Masrud is alleged to have misappropriated. Masrud's Motion to Compel this information is currently pending. (ECF 22; ECF 36). In response to interrogatories seeking this information, Polysciences refers Masrud to its AEO document production, which includes 77 documents (most of which are technical in nature) consisting of over 1,500 pages.

### III.  PROCEDURAL HISTORY

Polysciences filed its Complaint and Motion for a Temporary Restraining Order and Preliminary Injunction on July 28, 2020 (ECF 1 and 3). The parties exchanged written discovery requests, respectively, on August 18, 2020, and August 21, 2020. On September 2, 2020, the parties entered into a stipulated Protective Order that was submitted to the Court for approval, and has yet to be entered. (**Exhibit "A"**). The Order provides that either party may designate information as "Confidential" if it contains trade secrets, competitively sensitive technical, marketing, financial, sales or other confidential business information, or that contains private or personal confidential information. *Id.* ¶ 1. It further permits an "Attorneys' Eyes Only" (AEO) designation of any portion of a document that contains "highly sensitive business or personal information, the disclosure of which is highly likely to cause significant harm to an individual or to the busines or competitive position of the designating party." *Id.* ¶ 2.

On September 17, 2020, Polysciences produced its first set of documents (POLYSCIENCES 1 – POLYSCIENCES 2296). Over half of the documents were designated AEO in their entirety (1,689 pages), including without limitation: (a) the information

3

Polysciences alleges Masrud misappropriated; (b) documents authored by and/or reviewed by Masrud; (c) communications with Masrud and/or Mathew Griffin, (d) Masrud's and Griffin's respective personnel files, which included resumes, HR forms and policies, and other HR documents that contain no personal information (other than social security numbers, bank account information and other irrelevant information that can be redacted) that could remotely cause harm to either party, and (e) stale pricing/sales information dating back to 2013.

On October 23, 2020, the parties held a telephone conference to discuss discovery deficiencies.  During this call, Masrud raised his concern that Polysciences had blanketly designated the majority of its production AEO, thereby preventing Masrud from defending this action.  Eric Reed, Esq. (counsel for Polysciences) indicated that he would review the designations.  However, despite this promise, Polysciences did not redesignate any of its documents.

By letter dated November 16, 2020, Masrud again objected to the AEO designations, noting again for Polysciences that its blanket AEO production prevented Masrud from defending this action and that the documents that Polysciences designated AEO did not meet the threshold requirements for such a designation.  **Exhibit "B."**  Masrud explicitly objected in the letter to AEO designations of: (a) Masrud's personnel file/employment records and any other documents that pertain to Masrud; (b) Mathew Griffin's personnel file/employment records; (c) documents that did not disclose any information highly likely to cause significant harm (Masrud provided many examples); (d) documents authored/prepared by, exchanged by, or reviewed by Masrud during his tenure with Polysciences (Masrud provided many examples); (e) documents that disclosed customer names already provided by Polysciences to Masrud in this litigation and/or that contained stale sales or pricing information; (f) documents containing information that is or

formerly was available on Polysciences' website; and (g) documents that disclose the very trade secrets Polysciences alleges Masrud stole – which Masrud must be able to review to defend this action.

By letter dated December 4, 2020, Polysciences responded by ***refusing to redesignate a single document***. **Exhibit "C."** In addition, on that same day it produced over 7,000 additional pages of documents (POLYSCIENCES 2297 – POLYSCIENCES 9343). The vast majority of this production consisted of emails, *all* of which were designated AEO, including emails to/from Masrud, *blank pages*, and other documents that did not even warrant a designation of "Confidential." In his December 4, 2020 letter, Mr. Reed took the position that any document containing a trade secret warranted an AEO designation, and that personnel records warrant an AEO designation as they contain "personal information." He provided no reason for the remainder of the documents Polysciences designated AEO. While Polysciences refused to redesignate a single document, it gave Masrud's counsel permission to show a handful of documents to Masrud and/or Griffin (mainly their respective personnel files).

On December 8, 2020, the Court held a Rule 16 Conference. During the conference, Masrud raised the issue of the blanket AEO designations, noting that Polysciences had designated over 95% of its almost 10,000-page production AEO, that many of the designations were facially sanctionable including blank pages, public information, basic HR documents, and communications with Masrud. Masrud also noted that under the relevant case law, Polysciences cannot designate as AEO the very trade secrets that it alleges Masrud had access to and/or misappropriated.

Despite the fact that Judge Tucker confirmed during the December 8 conference that Masrud had authority to immediately move to compel the redesignation of Polysciences' AEO

production, including the documents Polysciences had produced only days before the conference, Masrud followed up for a fourth time with Polysciences by email that very day, reiterating -- for the reasons he stated during the court conference, and in his November 16, 2020 letter – that he objected to all of Polysciences' AEO designations, including the AEO designations produced on December 4, 2020, and that absent redesignation, he would be filing a motion to compel and for sanctions.  **Exhibit "E"** pp. 3-4 (December 8-16, 2020 email exchange between Ms. Peck and Jonathan Lagarenne).

On December 15, 2020 -- and only after Masrud informed the Court that he intended to file a motion to compel and for sanctions -- Polysciences redesignated 2,260 documents (the vast majority of which were emails), with the excuse that the previous designations were the result of an "error" by the reviewing attorney.  **Exhibit "E"** at p. 3[3]   Nevertheless, it continues to designate at least 77 documents (approximately 1,500 pages) – in their entirety -- as AEO, summarily stating that they contain trade secrets and/or pricing/profit information.  **Exhibit "F"** (AEO Log forwarded by Lagarenne on December 15, 2020).

Polysciences continues to misuse AEO designations to frustrate Masrud's ability to defend this action.  Indeed, in support of its designations, Polysciences summarily states that its trade secrets contain highly sensitive business information, the disclosure of which is highly

---

[3] That the designations were an inadvertent "error" is belied by Mr. Reed's December 4, 2020 letter attached hereto as Exhibit "C." Notably, as of December 4, Polysciences was unwilling to re-designate a single document, and produced over 7,000 additional pages blanketly designated AEO that very same day – when it was fully aware of Masrud's objections to the existing AEO designations.  Moreover, 128 of the documents that Polysciences redesignated were from Polysciences' initial production and thus were documents that Polysciences had previously refused to redesignate despite the October 23, 2020 meet and confer conference and Masrud's follow-up letter dated November 16, 2020.  They were redesignated only after the December 8, 2020 court conference and Masrud's counsel's follow up email dated December 8, 2020 threatening to immediately move for sanctions.

likely to cause it significant harm. Exhibit "C" p. 1. It did not make any effort whatsoever with respect to any of the documents to identify the "significant harm" that was "likely to occur" if the information was shown to Masrud. Instead, it defined the trade secret information that it designed AEO to include:

> Step-by-step, detailed manufacturing instruction outlining raw materials, process parameters, and other procedures to synthesize the PEI products, prepare the solution, and package the materials; design of the PEI chemistry, including molecular weight, molecular structure, product form, and process and compounds used to create the desired pH of the solution; key raw material supplier data and specifications; sourcing of novel and rare supply materials; internal test procedures and methods to determine key material characteristics; identification and selection of third party laboratories for testing of sterility, mycoplasma, heavy metals and endotoxin; identification and selection of third party testing partners to determine transfection efficiency, expression, and cell viability; selection of specific sterile filtering process parameters to avoid techniques that could adversely impact polymer properties; strategy to pursue development for improved solubility; the neutralization process and compounds used to produce the desired pH; customer lists including customer specific pricing and product specifications, customer contacts, product pricing and cost details and strategy, margins, competitive strategy and product position, and sales history for the top PEI products and future forecasts; and receipt of confidential information from customers for specific product-related projects.

*Id.* pp. 1-2. This is the exact definition of the "Polysciences Trade Secrets" to which Polysciences alleges Masrud had access during his tenure at Polysciences and that Masrud misappropriated when launching Serochem's competing PEI products. See Compl. ¶¶ 4, 5, 22, 55-57, 66, 91, 103 (ECF 1) (relevant paragraphs attached hereto as **Exhibit "D"** referencing Masrud's alleged knowledge of, access to, and use of the "Polysciences Trade Secrets."). Polysciences makes these very same allegations in its Proposed Amended Complaint against Griffin (ECF 24).

Not only does Polysciences' AEO production include the very information Masrud needs to defend this action, it also includes documents that on their face were authored and/or reviewed by Masrud/Griffin, correspondence to and/or from Masrud/Griffin, and stale sales information. By email dated December 16, 2020, Masrud immediately requested that these 77 documents

consisting of over 1,500 pages be redesignated as they do not meet the requisite threshold for an AEO designation for all of the reasons previously stated. Exhibit "E" at p. 2. In response, Polysciences complained that Masrud did not identify with specificity the documents to which he objected, and reiterated its mantra that under the Protective Order it has the right to designate alleged trade secrets as AEO. Polysciences offered further discussion only in the event that Masrud referenced specific documents – despite the fact that Masrud objected to *all* of the 77 documents that Polysciences continues to designate as AEO for the specific reasons identified in his multiple correspondence and conferences, and despite the fact that Polysciences has not met its burden of specifying with particularity on a document specific basis the "significant harm" that is "highly likely" to occur if Masrud is shown the information at issue.

The undersigned counsel certifies that after reasonable effort, the parties were unable to resolve this dispute. For the reasons set for herein, Masrud requests that Polysciences be ordered to re-designate all AEO-designated documents and that it be sanctioned for its bad faith misuse of AEO designations to date.

## IV. LEGAL REASONING

### A. LEGAL STANDARD

Fed. R. Civ. P. 26(c)(1) permits the issuance of a protective order "for good cause" to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense" by "requiring that a trade secret or other confidential research, development or commercial information be revealed only in a specified way." "Good Cause" is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking protection, and the injury must be shown with specificity. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3rd Cir. 1994). Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing, and the burden of justifying the confidentiality

8

of each and every document sought to be covered by a protective order remains on the party seeking protection. *Id*. Any other conclusion would turn Rule 26(c) on its head. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986). See also, *United States v. Garrett,* 571 F.2d 1323, 1326, n. 3 (5th Cir.1978) (requiring "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."). The Protective Order stipulated by the parties and attached hereto as Exhibit "A" does not vitiate the need for this good cause showing.[4]

### B.   POLYSCIENCS LACKS "GOOD CAUSE" FOR ITS AEO DESIGNATIONS

Polysciences' initial AEO designation of over 95% of its 9,343 page production (including blank pages, benign HR documents, calendar invites, Masrud's correspondence etc.), together with its initial refusal to de-designate any of its initial production, is evidence of its bad faith.[5] *See, e.g.*, *THK Am., Inc. v. NSK Co.*, 157 F.R.D. 637, 640 (N.D. Ill. 1993) (rebuking defendants by eliminating the privilege of using an AEO designation for the remainder of the litigation where defendants designated 79% of its production as AEO); *Fears v. Wilhelmina*, 56 Fed. R. Serv. 3d 426 (S.D.N.Y. 2003) (designating all document produced as AEO suggests bad faith).

Although Polysciences reduced its AEO designations to 1,500 pages after Masrud threated to file a motion to compel and for sanctions – it still does not identify on a document specific basis the "significant harm" that is "highly likely to occur" in the event that the AEO

---

[4] Again, to the extent that Polysciences argues that it does, the stipulated Protective Order should be modified by the Court before it is entered.

[5] It should also be noted that when it redesignated its documents, Polysciences merely blanket designated almost its entire production "Confidential," regardless of any basis for a such a designation.

designations are downgraded to "Confidential." Instead it relies on the conclusory and insufficient statements set forth in the log of AEO designations attached at Exhibit "C," that its AEO designations consist of "Trade Secrets" and "cost" "profit" and/or "pricing information" and that the parties are direct competitors. *Jeddo Coal Co.*, No. 3:16-CV-621, 2018 WL 1635153, at *3 (M.D. Pa. Apr. 5, 2018) (good cause must be demonstrated by 'articulating concrete and specific harms that would result from de-designation'"). Polysciences cannot in good faith argue that concrete harm is "highly likely" to occur in the event that Masrud is provided access to the trade secrets that he is alleged to have misappropriated, or to documents that he authored and/or received during his employment with Polysciences, documents to which he otherwise had access during his employment, and stale business information (such as pricing, profits, and sales information dating back to 2013). A "Confidential" designation would suffice in all of these circumstances

It is well-recognized that the "attorneys' eyes only" designation is "an appropriate method of protecting information in ***very limited situations***" and "***must be used sparingly and only when truly necessary*** because it limits the ability of the receiving party to view the relevant evidence, fully discuss it with counsel, and make intelligent litigation decisions." *Election Sys. & Software, LLC v. RBM Consulting, LLC*, No. 8:11CV438, 2015 WL 1321440, at *5 (D. Neb. Mar. 24, 2015) (emphasis added).

In determining "good cause" the Third Circuit balances the requesting party's need for information against the injury that might result if disclosure is compelled. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3rd Cir. 1994). Several factors may be considered when evaluating whether "good cause" for a designation has been shown. *Id.* at 787-8. Factors that weigh against confidentiality include: (1) whether the information is being sought for a

legitimate purpose; and (2) whether the sharing of information among litigants will promote fairness and efficiency. *Id.* at 787.

Courts routinely reject AEO designations where, as here, a party needs information to either defend himself or prove his case. *See, e.g.*, *Alarmax Distributors, Inc. v. Honeywell Int'l Inc.*, Civ. Act. No. 14-1527, 2015 WL 11112432 (W.D. Pa. Oct. 28, 2015) (finding no "good cause" to designate defendant's competitive information AEO where defendant failed to clearly define the injury that befall it, the success of the litigation turned on the information at issue, and plaintiff's President was uniquely qualified to evaluate the documents); *Merit v. Feuer et al.*, 201 F.R.D. 382, 385 (E.D. Pa. 2001) (finding that defendants are entitled to participate in their own defense and that allowing them access to the documents at issue subject to a "Confidential" designation rather than AEO would serve the interests of fairness and efficiency); *Util. Sys. Servs., Inc. v. Careguard Warranty Servs., Inc.*, No. CV 16-505-SDD-EWD, 2017 WL 3713472, at *9 (M.D. La. Aug. 14, 2017) (rejecting defendant's attempt to designate AEO documents that contained trade secrets because it would hinder the opposing party from litigating the case); *2 Hounds Design, Inc. v. Brezinski*, Civil Action No. 13-101, 2013 WL 5938073, at * 3 (W.D.N.C. Nov. 5, 2013) (granting defendant's motion to compel production of AEO documents and rebuking plaintiff for its "inappropriate" attempt to exclude defendant from review of documents necessary to crafting his defense); *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint. Inc.*, 863 F. Supp. 2d 1066, 1091 (D. Colo. 2012) (allowing in-house technical advisor access to Attorney's Eyes Only Material, including pre-suit pricing information where access was "essential to the ability of the plaintiff to prove their case"); *Martinez v. City of Ogden*, No. 1:08-CV-87, 2009 WL 424785, at *3 (D. Utah Feb. 18, 2009) (permitting the designation of alleged highly confidential material as "confidential" as opposed to "AEO" because restricting defendant's

11

access to information necessary to assist in litigation borders on denial of the due process right to a full and fair opportunity to litigation); *Frees, Inc. v. McMillian*, Civil Action No. 05-1979, 2007 WL 184889, at * 5 (W.D. La. Jan 22, 2007) (granting motion to compel and rejecting defendant's use of the AEO designation, reasoning that plaintiff's counsel likely lacked field expertise to recognize particular instances of misappropriation of information and "would be forced to hire an outside consultant" to review the documents in order to litigate the case); *Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373, 2002 WL 33003691, at *4 (W.D. Tenn. Jan. 30, 2002) (finding that the impact of prohibiting defendant's access to confidential documents at the heart of the lawsuit issue would greatly impair his ability to defend himself); *Standard Space Platforms Corp. v. U.S.*, 35 Fed. Cl. 505, 509 (Fed. Cl. 1996) ("to deny plaintiff the right to have its own President assist in its litigation could well border on a denial of due process.") *THK Am., Inc. v. NSK Co.*, 157 F.R.D. 637, 640 (N.D. Ill. 1993) (rejecting defendant's proposal to prevent disclosure to the plaintiff's president and purported patent inventor, who was the most knowledgeable person about the issues in the case, as it would unduly 'hamstring' the plaintiff's litigation efforts).

     Polysciences seeks to deny Masrud access to the very documents that contain the information that it alleges he stole, and it is axiomatic that absent the de-designation of the AEO production, Masrud will be denied a fair opportunity to litigate this case, particularly when he is far better positioned than his counsel to interpret the information produced. Equally, and even more important, in response to Interrogatories seeking the identity of the specific confidential and/or trade secret information that Masrud allegedly misappropriated, Polysciences directs Masrud to its AEO production, thereby evading a substantive response and suggesting that Masrud's counsel muddle through the documents without assistance from Masrud or anyone else

with the requisite knowledge and expertise to decipher the information at issue.  *See* **Exhibit "G"** (Polysciences' Sept. 17, 2020 Answer to Interrogatory No. 5).  Masrud's right to a fair opportunity to defend this action far outweighs any potential concerns about harm that Polysciences might have under the circumstances of this case.

      Indeed, in *Core Laboratories v. Amspec*, Civ. A. No. 16-0526-CG-N, 2017 WL 3585420 (S.D. Alabama Aug. 18.2017), the magistrate compelled Plaintiffs in a trade secret misappropriation case to remove its AEO designations, reasoning that "[t]he Plaintiffs are the parties who have put trade secrets and otherwise sensitive financial information at issue through the claims in their complaint.  Having done so, they may not then prejudice the Defendants' ability to defend against those claims by insisting that the Defendants not be able to examine and consult with their counsel about such key evidence that is being presented against them."  *Id.* * 1.  Plaintiffs challenged the magistrate's order arguing that defendants intended to shut them down by taking over their business.  The Court affirmed the Magistrate's Order, also noting that by bringing misappropriation claims, Plaintiffs had put their trade secrets directly at issue, and that Plaintiffs had alleged that Defendants had already viewed and stolen the information.  *Id.* at * 3.  "Plaintiff's essentially accuse Defendants of having taken the information but do not want Defendants to be able to see the information Plaintiffs claim Defendants stole."  *Id.  See also*, *Mitchell Int'l, Inc. v. Healthlift Pharmacy Services, LLC*, Case No. 2:19-cv-000637-RJS-DAO, 2020 WL 2736094 at * 2-3 (D. Utah May 26, 2020) (rejecting plaintiff's motion in a trade secret misappropriation case to designate interrogatory responses regarding the identity of the misappropriated trade secrets as AEO, noting that plaintiff failed to demonstrate a business harm when it alleged defendants had already learned about and misappropriated the trade secrets at

issue and when maintaining the AEO designation would prevent defendants from defending against the misappropriation claim).

This case is no different. Polysciences has accused Masrud of misappropriating its proprietary information but does not want Masrud to see the information it alleges he stole. Polysciences directly placed its trade secrets at issue in this litigation, and denying Masrud access to this information would both unduly prejudice his ability to defend against Polysciences' claims and inhibit his ability to prove his abuse of process counterclaim. As such, Polysciences should be ordered to de-designate its AEO production to "Confidential." Such a designation both limits the use of the trade secrets to this litigation and prohibits disclosure of the information outside of this litigation. The redesignation should include not only the information it alleges Masrud misappropriated, but also any documents authored by, directed to, or reviewed by Masrud, and any other information for which Polysciences lacks "good cause." *See, e.g.*, *Merit Industries, Inc.*, 201 F.R.D. at 385 (noting that plaintiff cannot meet its burden of justifying an AEO designation of documents directed to or authored by defendant, and/or generated in the course of business).[6] Based on the allegations in the Complaint and Polysciences' Answers to Interrogatories, all 77 documents designated by Polysciences as AEO appear to fall under one or more of these categories and should therefore be de-designated to "Confidential."

### C.     SANCTIONS ARE WARRANTED

Rule 26(c)(2) provides that expenses may be awarded in accordance with Rule 37(a)(5) which states that if a motion is granted, or if requested discovery is provided after a motion is

---

[6] Likewise, given that Griffin will be a key witness in defending Serochem's independent development of the products at issue, and that Polysciences seeks to name him as an additional defendant in this action, no documents authored by, directed to, or reviewed by Griffin should be designated AEO.

filed, the court may require the party who necessitated the motion to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees. Such a sanction is warranted here where Polysciences' bad faith misuse of AEO designations in an effort to frustrate Masrud's defense of this action forced Masrud to have to file yet another motion to compel.

## V. CONCLUSION

For the reasons set forth herein, Defendant Joseph T. Masrud respectfully requests that the Court grant his motion to compel and enter an order in the form attached hereto.

Dated: January 6, 2021

HOMANS PECK, LLC

/s/ Julianne L. Peck
Julianne L. Peck, Esquire
43 Paoli Plaza #426
Paoli, PA 19301
Telephone: (215) 868-6214
jpeck@homanspeck.com

*Attorney for Defendant/Counter-Plaintiff,
Joseph T. Masrud*