**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| POLYSCIENCES, INC. | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 2:20-cv-03649-PBT |
| | : |
| JOSEPH T. MASRUD, | : |
| | : |
| Defendant. | : |
| | : |
| | : |

**OPPOSITION TO DEFENDANT/COUNTER-PLAINTIFF'S MOTION TO COMPEL
PLAINTIFF/COUNTER-DEFENDANT TO DE-DESIGNATE ITS
<u>ATTORNEYS' EYES ONLY PRODUCTION AND FOR SANCTIONS</u>**

**TABLE OF CONTENTS**

I.      FACTUAL BACKGROUND.................................................................................... 2

    A.      The Proposed Stipulated Protective Order............................................... 2

    B.      Relevant Conduct and Correspondence Between the Parties .................. 3

II.     ARGUMENT ...................................................................................................... 7

    A.      Legal Standard ........................................................................................ 7

    B.      Polysciences has Provided Good Cause for its "Attorneys' Eyes Only"
        Designations............................................................................................ 9

    C.      Polysciences' AEO Designations do not Prevent Masrud from Defending
        Himself in this Action ........................................................................... 13

    D.      Sanctions are Unwarranted .................................................................. 16

III.    CONCLUSION................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*BIEC Int'l, Inc. v. Glob. Steel Servs., Ltd.*,
 791 F. Supp. 489 (E.D. Pa. 1992) ....................................................................8, 10

*Bobrick Washroom Equip., Inc. v. Scranton Prod., Inc.*,
 No. 3:14-CV-00853, 2017 WL 841286 (M.D. Pa. Mar. 3, 2017) ...........................12

*Brand Energy & Infrastructure Servs., Inc. v. Irex Corp.*,
 No. CV 16-2499, 2017 WL 9512135 (E.D. Pa. May 4, 2017), *report and
 recommendation adopted sub nom. Brand Energy & Infrastructure Servs.,
 Inc. v. Irex Contracting Grp.*, No. CV 16-2499, 2017 WL 2889066 (E.D. Pa.
 July 7, 2017).....................................................................................................12, 14, 15

*C.A. Muer Corp. v. Big River Fish Co.*,
 No. CIV. A. 97-5402, 1998 WL 488007 (E.D. Pa. Aug. 10, 1998) ........................8

*Council for Educ. Travel, USA v. Czopek*,
 2011 WL 3882474 (M.D. Pa. Sept. 2, 2011) ............................................................8

*Deman Data Sys., LLC v. Schessel*,
 No. 4:13-MC-00520, 2014 WL 204248 (M.D. Pa. Jan. 16, 2014)....................8, 13

*DeRubeis v. Witten Techs., Inc.*,
 244 F.R.D. 676 (N.D. Ga. 2007)............................................................................14

*Gentex Corp. v. Sutter*,
 No. 3:CV-1269, 2009 WL 959832 (M.D. Pa. Apr. 6, 2009) ................................14

*India v. Deccan Foods LLC*,
 2017 WL 11476220 (D.N.J. July 26, 2017)...........................................................13

*MSC.Software Corp. v. Altair Eng'g, Inc.*,
 2009 WL 275722 (E.D. Mich. Feb. 5, 2009) ........................................................11

*Pansy v. Borough of Stroudsburg*,
 23 F.3d 772 (3d Cir. 1994).......................................................................................9

*Paradigm All., Inc. v. Celeritas Techs., LLC*,
 248 F.R.D. 598 (D. Kan. 2008)...............................................................................11

*Rotex Glob., LLC v. Gerard Daniel Worldwide, Inc.*,
 No. 1:17-CV-2118, 2019 WL 5102165 (M.D. Pa. Oct. 11, 2019) ....................11, 12

ii

*Scranton Prod., Inc. v. Bobrick Washroom Equip., Inc.*,
    190 F. Supp. 3d 419 (M.D. Pa. 2016) .....................................................................10

*Westbrook v. Charlie Sciara & Son Produce Co., Inc.*,
    2008 WL 839745 (W.D. Tenn. Mar. 27, 2008) .......................................................12

*Youtie v. Macy's Retail Holding, Inc.*,
    653 F. Supp. 2d 612 (E.D. Pa. 2009) ................................................................8, 10

**Statutes**

Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ........................................................8

Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S. § 5301 *et seq.* ...............................8

**Other Authorities**

Fed. R. Civ. P. 26 ...............................................................................................................8

In what seems to be an exhausting cycle, Defendant Joseph T. Masrud ("Masrud" or "Defendant") has filed, yet again, another unnecessary and premature discovery motion: this instant Motion to Compel Plaintiff, Polysciences, Inc. ("Polysciences" or "Plaintiff") to De-Designate its Attorneys Eyes Only ("AEO") Production and for Sanctions (ECF No. 38) ("the Motion").  Masrud's Motion again seeks to confuse the issues at hand, skewing the picture with unrepresentative statistics in an attempt to paint Polysciences as the party with unclean hands and Masrud as a helpless victim.  This is wrong.

Contrary to the Defendant's Motion, Plaintiff's AEO designations are proper.  As detailed further below, following the Rule 16 Conference with the Court on December 8, 2020, Polysciences re-examined its previous confidentiality designations and identified an unintentional error.  Polysciences in good faith promptly provided an updated production exactly **one week later**, after a significant review effort.  Following this effort, out of the almost 4,400 documents produced, ***only*** 77 documents remained designated as AEO.[1]  And despite repeatedly providing counsel for Masrud its precise reasoning as to why these documents are highly confidential, Polysciences even took the added step of providing an excel sheet with its production that identified the specific reasoning for each of the 77 documents.  On the other hand, Masrud **has not** provided his specific reasoning as to why each of these documents do not qualify for AEO designation.  Instead, Masrud offers bald, unsupported over-generalizations, while at the same time implying that no documents in this trade secret misappropriation case can be designated AEO

---

[1] Polysciences refers to the number of documents produced as that metric better represents the production, rather than the number of pages, since many of these documents relate to research and development and are lengthy by their very nature.  However, for the Court's reference, Polysciences has produced nearly 13,000 pages of documents to date.  Masrud complains of the around 1,500 pages that remain designated as "Attorneys' Eyes Only."

under the parties' agreed confidentiality order.  This is squarely contrary to the decisions of this Court.

At best, the Motion is brought in error based upon apparent confusion, which is not Polysciences' fault, and which Polysciences has repeatedly tried in good faith to rectify.  But it is beginning to seem more and more like Masrud is the one attempting to harass Polysciences with unnecessary motion practice, while feigning victimhood to the Court.

I.      **FACTUAL BACKGROUND**

Polysciences initially filed this action to stop its former employee, Masrud, from misappropriating Polysciences' trade secrets and confidential information.  *See* ECF No. 1. Masrud now directly competes with Polysciences through his new venture, Serochem, LLC ("Serochem").   Through the course of discovery, Polysciences learned that Mathew Griffin ("Griffin"), another former employee of Polysciences, was a shareholder of Serochem and that he had misappropriated Polysciences' trade secrets and other proprietary confidential information to assist with the launch of Serochem's copycat PEI products.  Polysciences therefore filed a Motion for Leave to File a First Amended Complaint, to join both Griffin and Serochem as additional defendants.  ECF No. 24.  That motion is pending.

A.      **The Proposed Stipulated Protective Order**

On September 2, 2020, the parties jointly submitted a Stipulated Protective Order to the Court for approval, attached hereto as **Exhibit A** (the "Protective Order").  Although the Court has not yet entered the Protective Order, the parties have agreed to abide by the terms of the Protective Order in the interim.  The Protective Order provides a two-tiered system for the designation of confidential information.  As seen in Paragraphs 1 and 2 of the Protective Order, a party may designate any information, document, or thing as "Confidential" or "Attorneys' Eyes Only."  The AEO designation is reserved for "any information, document, or thing, or portion of any document

or thing that contains **highly sensitive business** or personal **information**, the disclosure of which is **highly likely to cause significant harm** to an individual **or to the business or competitive position** of the designating party." Protective Order at ¶ 2 (emphasis added). The Protective Order explicitly authorizes material produced and marked as AEO to "Any person who authored or received the Confidential material sought to be disclosed to that person; or is mentioned, discussed or referred to in the material, but only as to the specific material in which such person is mentioned, discussed or referred to, provided that they have signed a non-disclosure agreement in the form attached hereto as Exhibit 'A.'" Protective Order at ¶¶ 4, 7. The Protective Order further states that if a party objects to the confidentiality designation of any documents or information:

> Counsel for the **objecting party** shall serve on the designating party or third party a **written objection** to such designation, **which shall describe with particularity the documents or information in question and shall state the grounds for objection**. Counsel for the designating party or third party shall respond in writing to such objection within 14 days, and shall state with particularity the grounds for asserting that the document or information is Confidential or Attorneys' Eyes Only. If no timely written response is made to the objection, the challenged designation will be deemed to be void. If the designating party or nonparty makes a timely response to such objection asserting the propriety of the designation, counsel shall then confer in good faith in an effort to resolve the dispute.

Protective Order at ¶ 8a (emphasis added). According to Paragraph 8 of the Protective Order, the initial burden is on the party challenging the designation to "describe with particularity the documents or information in question and shall state the grounds for objection." Further, the Protective Order also requires counsel to "confer in good faith in an effort to resolve the dispute." Protective Order at ¶ 8a.

### B. Relevant Conduct and Correspondence Between the Parties

Polysciences made its first production of documents on September 17, 2020. The parties met and conferred on October 23, 2020, to address multiple outstanding discovery disputes. On this call, counsel for Masrud generally stated that she believed Polysciences over-designated its

3

production.  Counsel for Polysciences stated that it would take such under advisement.  On November 16, 2020, Polysciences received Masrud's first formal objections to Polysciences' AEO designations, attached hereto as **Exhibit B** (the "November 16th Letter").  Ignoring the plain letter directives of the Protective Order, counsel failed to state with particularity the grounds for objections to the confidentiality designations.  Instead, the November 16th Letter broadly stated that the "vast majority of the documents that Polysciences designated as AEO do not meet the Protective Order threshold of 'highly likely to cause significant harm to an individual or to the business or competitive position of [Polysciences],' directly pertain to Masrud, were authored or otherwise communicated to Masrud, were accessible to Masrud during his tenure with Polysciences, and/or contain information that is stale and no longer competitive."  November 16th Letter at p. 2.  This language found in the November 16th Letter also completely ignored the explicit language contained in the Protective Order that allows counsel to show AEO information and documents to those individuals "who authored or received the Confidential material sought to be disclosed to that person; or [are] mentioned, discussed or referred to in the material."  Protective Order at ¶¶ 4, 7.  The November 16th Letter then provided a list of documents that counsel felt did not meet the AEO designation requirement, and again, provided no specific reasoning for its belief.  Rather, the November 16th Letter repeatedly states only generally that the information and documents "do not meet the threshold."  *See* November 16th Letter at pp. 2-5.

Counsel for Polysciences replied to the November 16th Letter on December 4, 2020 (attached hereto as **Exhibit C**) (the "December 4th Letter"), in which Polysciences detailed (1) specific reasons why its trade secret documents are properly designated as AEO; (2) the type of information it believes is considered trade secret and linking that information to specific documents containing said trade secret information; (3) addressing Masrud's complaints; and (4)

giving Masrud and/or Griffin permission to view certain documents. Counsel for Polysciences specifically reminded counsel for Masrud that Paragraph 7 of the Protective Order allows counsel to show Masrud and/or Griffin these documents under certain conditions. *See* December 4th Letter at p. 4. Polysciences remained open to discussing this dispute further.

Polysciences produced a supplemental production on December 4, 2020. Counsel for Masrud never responded to the December 4th Letter, nor did Polysciences receive written objections to its confidential designations contained in its supplemental production. Instead, counsel orally raised this issue at the Rule 16 Conference held before the Court on December 8, 2020. After the Rule 16 Conference, counsel for Polysciences received an email confirming that Masrud objects to **all** of Polysciences' AEO designations and requesting re-designation within seven days, to which counsel for Polysciences promptly agreed to respond within seven days. *See* Email Correspondence between J. Lagarenne and J. Peck dated December 8, 2020, attached hereto as **Exhibit D**.

On December 15, 2020, Polysciences reproduced its entire document production, removing the AEO designations from all but 77 documents. Counsel for Polysciences apologized to counsel for Masrud for its initial over-designation, which the review determined to have been in error. Polysciences provided a log that identified, document by document, the specific basis for why Polysciences believed the remaining 77 documents (out of almost 2,200 documents) should be designated as AEO.

Importantly, counsel for Masrud only previously identified 24 documents of the remaining 77 AEO documents in the November 16th Letter; Polysciences resolved all conflicts regarding the remainder of the disputed documents. Further, Polysciences never received any true identification of Masrud's issues with the remaining 77 AEO documents. While Polysciences did receive

general allegations for the 24 documents that were originally identified in the November 16th Letter (though no reasoning that even approached the degree of specificity required by the Protective Order), Polysciences received absolutely **nothing** regarding the other 53 documents.

Before even downloading Polysciences' replacement production[2], counsel for Masrud complained that "few, if any, of the documents that Polysciences continues to designate AEO warrant such a designation."  *See* Email Correspondence between J. Lagarenne and J. Peck dated December 16, 2020 (**Exhibit F**).  Again, counsel just broadly stated that the documents generally did not meet the requirements of the AEO designation, without providing the specificity required by the Protective Order.  *See id.*  Counsel for Polysciences responded and stated that (1) Masrud had "not identified any specific document that [he] object[s] to the designation on so it is not possible to comment specifically;" (2) stating that under counsel for Masrud's reasoning, no documents, in a trade secret misappropriation case, could be designated AEO or even be a trade secret simply because Masrud had potential access to it; and (3) reminding counsel that the Protective Order allows Masrud and Griffin to see certain AEO documents per Paragraph 7.  *See* Exhibit F at p. 1.  To be clear, counsel for Polysciences then provided its precise and detailed reasoning for why disclosure of these AEO documents to Masrud is highly likely to cause significant harm:

> Masrud and Griffin have started and continue to operate a business that has targeted the most profitable products in PolySciences lab products business and have openly stated they plan to expand their business to target other Polysciences products, such as GMP PEI products.  They are competitors who have launched their competing business by theft of Polysciences secrets, and we are not so foolish as to allow them

---

[2] Counsel for Polysciences uses the service "Kiteworks" to serve its document productions. Through Kiteworks, counsel for Polysciences receive email notifications when someone downloads the production.  Counsel for Masrud only first downloaded the corrected production on December 29, 2020, almost two weeks after declaring that very production to be deficient. Download confirmation email attached hereto as **Exhibit E**.

> to see the highly sensitive information they may have forgotten or never bothered
> to look at when they had the chance at Polysciences.

*Id*. Counsel for Polysciences again invited counsel for Masrud to identify the specific documents believed to be improperly designated so a proper discussion could occur. *Id*. Counsel for Masrud never responded to this email, but rather filed the instant Motion.

Masrud seems set on creating a false narrative of oppression by Polysciences, the only apparent "defense" available when the facts and law regarding his misappropriation are stark. Tellingly, Masrud's Motion does not address the substance of counsel for Polysciences' December 16, 2020 email, because this does not support this narrative. Ignoring the plain letter of the Protective Order and legal precedent for this District, Masrud filed this Motion without any good faith attempt to meet and confer. To date, Polysciences has produced almost 4,400 documents and has only identified 77 as AEO. This is simply not an abuse of the designation, nor is it an attempt to prevent Masrud from defending himself in this litigation. Mr. Masrud has been, and continues to be, on notice of the information and trade secrets Polysciences alleges he misappropriated. Lacking access to the precise details of documents does not change his ability to defend his case. Further, the Protective Order explicitly allows Mr. Masrud to view AEO designated documents under certain circumstances. Polysciences is entitled to designate its truly highly confidential information and trade secrets as AEO to protect itself from significant harm. Accordingly, the Court should deny Masrud's Motion in its entirety.

## II.   ARGUMENT

### A.   Legal Standard

The Federal Rules of Civil Procedure allow for the entering of a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or

commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(G).   Polysciences' claims in this case include breach of contractual confidentiality obligations and misappropriation of trade secrets under  the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("DTSA") and the Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S. § 5301 *et seq.* ("PUTSA").  Both the DTSA and the PUTSA define trade secrets as including, among other things, information, formulas, methods, techniques, and processes that derive economic value by virtue of their secrecy and for which the party asserting trade secret protection makes reasonable efforts to maintain secrecy.  *See* 18 U.S.C. § 1839(3); 12 Pa. C.S.A. § 5302.

Further, courts in this District and Circuit have routinely found a broad array of confidential business information to qualify as trade secret information.  *See BIEC Int'l, Inc.*, F. Supp. 489 at 546; *see also Council for Educ. Travel, USA v. Czopek*, 2011 WL 3882474, at *4 (M.D. Pa. Sept. 2, 2011) (holding that "strategic business and marketing plans, computer programs and codes, client lists and information regarding client accounts, employee rosters and compensation terms," all qualified as "the type of information alleged to be confidential and proprietary [] within the scope of protectable trade interests."); *Youtie v. Macy's Retail Holding, Inc*., 653 F. Supp. 2d 612, 621 (E.D. Pa. 2009) (acknowledging that a "compilation of data that has independent economic value can be protected as a trade secret").  Therefore, pursuant to Federal Rule of Civil Procedure 26, courts recognize the need for producing parties to designate documents containing trade secret information as Attorneys' Eyes Only to protect the secrecy of same.  *See, e.g.*, *Deman Data Sys*., *LLC*, 2014 WL 204248, at *4 ("Protective orders that allow for 'attorneys' eyes only' designations have been utilized often in circumstances where the requesting party could use the information to the disadvantage of the disclosing party."); *see also C.A. Muer Corp. v. Big River Fish Co.*, No. CIV. A. 97-5402, 1998 WL 488007, at *3-4 (E.D. Pa. Aug. 10, 1998) (finding a "threshhold [*sic*]

showing of 'good cause' such that a narrow protective order should issue based on the fact that dissemination of" the producing party's "marketing and financial information to a competitor [] could lead to a competitive disadvantage" to the producing party).

**B.      Polysciences has Provided Good Cause for its "Attorneys' Eyes Only" Designations**

Masrud's basis for the Motion essentially stems from the assertion that Polysciences did not show "good cause" for designating 77 out of nearly 4,400 documents as AEO.[3]   The Motion makes blatantly false statements and feigns ignorance in an attempt to create his own narrative. As seen below, there is simply no merit to *any* of Masrud's arguments.   The Court should deny the Motion.

As a preliminary matter, the Motion cites a numerous cases for the proposition that Polysciences initially designated its documents in bad faith.  *See* Motion at p. 9.  As explained by counsel for Polysciences, after counsel for Masrud raised this issue at the Rule 16 Conference, Polysciences determined that "the [AEO] designation was applied too broadly by the attorney reviewing the production," and "completely reproduced [the] production [] with corrected designations."  *See* Email Correspondence between J. Lagarenne and J. Peck dated December 15, 2020, attached hereto as **Exhibit G**, at p. 1.  As explained to Masrud's counsel, this was a simple

---

[3] The Motion cites *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) as the test to determine whether "good cause" exists.  *See* Motion at p. 10.  However, the Motion's reliance on *Pansy* is misplaced.  The court in *Pansy* articulated a balancing test to use when determining "whether good cause exists for a protective order," not whether there was "good cause" in a party's confidentiality designation.  *Id*.  Here, the parties have already stipulated to the Protective Order, which clearly suggests there is "good cause" for one.  The true issue here is whether Polysciences had "good cause" in its AEO designations, which is determined by whether the information designated as AEO qualifies as trade secret.  As seen by the argument and case law cited in this section, the documents and information clearly qualify for AEO designation and protection.

misunderstanding by the reviewing attorney.  Acknowledging the error, Polysciences apologized, and undertook the laborious task of re-reviewing its ***entire*** production within a week to re-designate the documents.  Unlike the cases cited in the Motion where the producing parties stood by their over designated productions, Polysciences took full responsibility of the initial error and corrected the mistake in an expeditious manner.

Second, to further show its good faith on this issue, Polysciences took the extra step of producing a log specifying, on a document-by-document basis, the precise category that each of the remaining 77 documents fell into, to support the AEO designations.  *See* AEO Production Log, attached hereto as **Exhibit H**.  Unlike what the Motion suggests, these documents do not contain merely "stale business information."  Motion at p. 10.  Rather, the log provided by Polysciences included categories like "customer specific pricing," "formulation trade secret," "manufacturing and testing trade secret,"  "customer confidential information on product design or use," and "highly sensitive unpublished cost/profit information."  *See generally* AEO Production Log.  All of these identified categories have been recognized by courts in this District and Circuit as trade secret information, the disclosure of which would cause significant harm to the disclosing party. *See Scranton Prod., Inc. v. Bobrick Washroom Equip., Inc*., 190 F. Supp. 3d 419, 440 (M.D. Pa. 2016) (holding that the producing party "established 'good cause' to support its AEO designations," because "pricing information qualifies for trade secret protection," the disclosure of which could be used to gain a competitive advantage over the disclosing party); *Youtie v. Macy's Retail Holding, Inc*., 653 F. Supp. 2d 612, 621 (E.D. Pa. 2009) (acknowledging that "customer information, such as costing and price information, compiled by a business represents a material investment of time and money and constitutes a valuable asset"); *BIEC Int'l, Inc. v. Glob. Steel Servs., Ltd*., 791 F. Supp. 489, 547 (E.D. Pa. 1992) (finding "manuals and certain marketing

information including [plaintiff's] mailing lists, license agreements, business plans, financial projections, and marketing strategies are legally protected trade secrets.").  This information also qualifies as "highly sensitive business" information, which squarely fits within the precise definition of "Attorneys' Eyes Only" information, documents, or things within the four corners of the Protective Order.  *See* Protective Order at ¶ 2.  Thus, the remaining 77 documents undoubtedly qualify for AEO designation.  *See Rotex Glob., LLC v. Gerard Daniel Worldwide, Inc.*, No. 1:17-CV-2118, 2019 WL 5102165, at *7 (M.D. Pa. Oct. 11, 2019) (holding re-designation improper where when "applying familiar principles of contract interpretation . . . the plain language of the protective order agreed to by [the] parties" stated that "Highly Confidential" information included competitively sensitive information).

Further, Polysciences has now limited its AEO designations to less than 2% of its entire current production.  And although perhaps not as specific as Masrud would like, the AEO Production Log adequately describes Polysciences' good faith belief in maintaining the AEO designations.  *See, e.g.*, *Paradigm All., Inc. v. Celeritas Techs., LLC*, 248 F.R.D. 598, 605 (D. Kan. 2008) (ordering the producing party to create "a log explaining its justification for designating a document as AEO."); *see also MSC.Software Corp. v. Altair Eng'g, Inc*., 2009 WL 275722, at *3 (E.D. Mich. Feb. 5, 2009) (holding that a producing party's use of a template to "identify with reasonable particularity the trade secrets it claims [d]efendants misappropriated . . . provide[d] [the defendants with] an adequate idea of the trade secrets [they] allegedly misappropriated.").  Therefore, Polysciences showed "good faith" for its AEO designations by producing this log.

Third, unlike what the Motion asserts, Polysciences has repeatedly made clear the specific basis as to what significant harm would occur should *any* of the 77 documents be inappropriately disclosed.  At the outset, the Complaint (and proposed Amended Complaint) alleges that Masrud

11

(as well as Serochem and Griffin) unlawfully stole Polysciences' trade secret information relating to its PEI business in order to start a directly competing business.  *See generally*, ECF Nos. 1 and 24.  The allegations contained in these pleadings alone "are adequate to establish a reason for not sharing AEO-designated materials" with Masrud or Griffin as Polysciences "alleges real harm that could come from [any of these individuals] being privy to its sensitive business information." *Brand Energy & Infrastructure Servs., Inc. v. Irex Corp.*, No. CV 16-2499, 2017 WL 9512135, at *3 (E.D. Pa. May 4, 2017), *report and recommendation adopted sub nom. Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, No. CV 16-2499, 2017 WL 2889066 (E.D. Pa. July 7, 2017).

Despite already adequately providing its basis, counsel for Polysciences again reiterated this to counsel for Masrud in response to counsel's continued complaints.  *See* Exhibit F at p. 1. As explicitly stated by counsel for Polysciences, "Masrud and Griffin have started and continue to operate a business that has targeted the most profitable products in PolySciences lab products business and have openly stated they plan to expand their business to target other Polysciences products, such as GMP PEI products."  *Id.* This is the precise type of harm regularly recognized as warranting AEO protection to prevent said harm.  *See, e.g.*, *Bobrick Washroom Equip., Inc. v. Scranton Prod., Inc.*, No. 3:14-CV-00853, 2017 WL 841286, at *1-2 (M.D. Pa. Mar. 3, 2017) (finding the demonstration of "good cause" to uphold AEO designations where the harm articulated was that the dissemination of confidential business information to a competitor would create a "substantial risk of harm" to plaintiff's business.); *Rotex Glob., LLC v. Gerard Daniel Worldwide, Inc.*, No. 1:17-CV-2118, 2019 WL 5102165, at *6 (M.D. Pa. Oct. 11, 2019) ("In general, courts utilize 'attorneys' eyes only' protective orders when especially sensitive information is at issue or the information is to be provided to a competitor.") (quoting *Westbrook*

*v. Charlie Sciara & Son Produce Co., Inc.*, 2008 WL 839745, at *4 (W.D. Tenn. Mar. 27, 2008));

*India v. Deccan Foods LLC*, 2017 WL 11476220, at *2 (D.N.J. July 26, 2017) (holding the

disclosure of "confidential, nonpublic commercial and financial aspects" of plaintiff's business

posed "a risk of serious injury to [p]laintiff."). Masrud's citation to one unpublished case from the

United States District Court for the District of Nebraska is unavailing as there is a plethora of case

law contradicting the notion that AEO designations must be used in "very limited situations" and

"must be used sparingly." Motion at p. 10; *see also Deman Data Sys., LLC v. Schessel*, No. 4:13-

MC-00520, 2014 WL 204248, at *4-5 (M.D. Pa. Jan. 16, 2014) ("The Plaintiffs' reliance on a

single opinion by a magistrate judge in the United States District Court for the District of North

Dakota that an 'attorneys eyes only' provision is disfavored as a 'drastic remedy' is unpersuasive

in the face of both the wide use of those provisions in this jurisdiction and the broad discretion of

district courts in this matter."). This is just another attempt by Masrud to twist legal precedent to

suit his own needs. Thus, Polysciences has undoubtedly shown good faith in its AEO designations.

### C.   Polysciences' AEO Designations do not Prevent Masrud from Defending Himself in this Action

The Motion spends about three pages citing non-binding and mostly irrelevant case law,

alleging that Masrud needs access to all of the AEO documents to properly defend himself or prove

his case. *See* Motion at pp. 11-14. Yet again, no matter how much Masrud tries to suggest

otherwise, this is simply not the case.

First, Polysciences has on multiple occasions, provided summaries and descriptions of the

precise documents it asserts contain the trade secrets Masrud misappropriated. *See* Exhibit C at

pp. 2-3; *see also* POLYSCIENCES0002258- POLYSCIENCES0002261 (Trade Secret Log,

**Exhibit I**).[4]  Unlike in *Core Labs. LP v. AmSpec, LLC*, Polysciences **is not** using the trade secret

designation as a "sword" rather than a "shield."   2017 WL 11444430, at *3 (S.D. Ala. June 16,

2017), *order clarified*, 2017 WL 6945580 (S.D. Ala. July 12, 2017), *aff'd sub nom. Core Labs. LP

v. AmSpec*, 2017 WL 3585420 (S.D. Ala. Aug. 18, 2017).  In *Core Labs. LP*, a non-binding case,

the plaintiff designated an expert report in its entirety as AEO, so defendants could not confer with

counsel in formulating a response, and did not properly put defendants on notice as to the trade

secrets claimed to have been misappropriated.  *Id*.  This is clearly different from the case before

the Court here.  The specific descriptions provided by Polysciences to Masrud, especially in the

Trade Secret Log, adequately put him on notice as to the information and documents Polysciences

alleges he misappropriated to start his competing company; he does not need access to the ***actual***

documents to understand and defend his case.  *Gentex Corp. v. Sutter*, No. 3:CV-1269, 2009 WL

959832, at *1 (M.D. Pa. Apr. 6, 2009) (stating that it was unnecessary for defendants to review

discovery responses to form a defense as the plaintiff had previously provided an adequate

description of the alleged misappropriated trade secrets); *DeRubeis v. Witten Techs., Inc.*, 244

F.R.D. 676, 682 (N.D. Ga. 2007) (stating that "limiting confidential information to attorneys' eyes

only" was appropriate because the asserted trade secrets can still be reasonably identified, which

will allow one to "mount a defense to the misappropriation charges"); *see also Brand Energy &

Infrastructure Servs., Inc. v. Irex Corp.*, No. CV 16-2499, 2017 WL 9512135, at *5 (E.D. Pa. May

---

[4] The Motion complains that Polysciences is "suggesting that Masrud's counsel muddle through the documents without assistance from Masrud or anyone else with the requisite knowledge and expertise to decipher the information at issue."  Motion at pp. 12-13.  However, as seen from the Trade Secret Log and the December 4th Letter, Polysciences has provided descriptions of the documents it asserts contain its trade secrets and directly links these descriptions to the corresponding documents by Bates Numbers.  Therefore, there is absolutely no need to "muddle" around, since counsel for Masrud has pinpoint locations as to where to find the documents and the contents contained therein.

4, 2017), *report and recommendation adopted sub nom. Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, No. CV 16-2499, 2017 WL 2889066 (E.D. Pa. July 7, 2017) (acknowledging that legal precedent has not established "a due process basis to deny the 'highly confidential' designation to any discovery material"). The Motion seems to imply that absolutely no documents or information could be marked as AEO in ***any*** trade secret case, but clearly, the legal precedent dictates otherwise.

Further, *Mitchell Int'l, Inc. v. HealthLift Pharmacy Servs., LLC*, another non-binding case relied upon Masrud in the Motion, actually cuts against his argument. 2020 WL 2736094, at *2 (D. Utah May 26, 2020), *aff'd*, 2020 WL 5645321 (D. Utah Sept. 22, 2020). In *Mitchell Int'l, Inc.*, the plaintiff was trying to prevent defendants from seeing "categories of information and processes" that plaintiff claimed were misappropriated, not the "underlying data or documents." *Id*. Polysciences has provided this "generalized information" to Masrud and does not assert that such information is AEO. As stated by the court, defendants "must **<u>know broadly</u>** what trade secrets are at issue in order to address whether they had access to that information while employed at [plaintiff], whether that information was treated as confidential, and whether their knowledge of that information came from [plaintiff] or some other source." *Id.* at *3 (emphasis added). This is exactly what Polysciences has done here. Polysciences has provided adequate descriptions and information to Masrud for him to "know broadly what trade secrets are at issue," removing the need for him to see the actual documents themselves.

Second, the terms of the Protective Order actually provide Masrud an opportunity to view some AEO designated documents. As stated in Paragraphs 4(e) and 7 of the Protective Order, Masrud may view even AEO documents if he "authored or received the Confidential material sought to be disclosed to [him]; or is mentioned, discussed or referred to in the material, but only

15

as to the specific material in which [he] is mentioned, discussed or referred to." Thus, although the Motion requests to de-designate any AEO "documents authored by, directed to, or reviewed by Masrud," there is simply no need for this as the Protective Order already **allows** for Masrud to see such documents. *See* Motion at p. 14. Masrud's apparently misunderstands the Protective Order and refuses to listen to Polysciences' repeated explanations, but this is not a basis for the relief requested in the Motion. *See* the December 4th Letter at p. 4 and Exhibit F at p. 1 ("As to documents authored by Masrud and or Griffin, the protective order allows those to be marked AEO if they contain highly sensitive information but Masrud and Griffin can see them per paragraph 7."). Instead of running to the Court, counsel for Masrud could have continued the dialogue with counsel for Polysciences and perhaps would have understood that this Motion was unnecessary and a waste of the parties' and the Court's time and resources.

> ### D.   <u>Sanctions are Unwarranted</u>

This motion lacks any basis, and results from Masrud's refusal to meaningfully meet and confer regarding the AEO issue despite Polysciences' significant efforts to address the stated concerns. Sanctions are certainly unwarranted given this, and considering Masrud's actions demonstrate more of an effort to compensate for an unenviable position on the facts and law with an unwarranted attack on the process. Counsel for Masrud never properly served "a written objection to such designation[s], which [] describe[d] with particularity the documents or information in question," as required by the Protective Order. *See* Protective Order at Paragraph 8a. While the November 16th Letter did attempt the dialogue, Masrud only addressed a fraction of the documents that are the subject to this Motion and any allegations were broad and conclusory. *See, e.g.*, Exhibit F at p. 3 (stating vaguely that "Masrud objects to ***all*** of Polysciences' AEO designations" without providing any further reasoning). After re-reviewing its entire production and providing a complete replacement production, counsel for Masrud continued to complain,

without even downloading the replacement production first.  And, when invited to provide the required identification and description (as counsel for Polysciences could not ascertain which documents Masrud still objected to), instead of obliging, counsel for Masrud filed this instant Motion.  Therefore, the expense incurred in filing the Motion was of Masrud's own doing, not Polysciences.

Finally, as detailed above, a proper basis exits for Polysciences' AEO designations. Polysciences is not trying to "frustrate Masrud's defense of this action," nor was Masrud "forced" to file this Motion.  Motion at p. 15.  Polysciences has repeatedly provided its good faith basis for its designations and has tried to meet and confer with counsel regarding same.  And, at the end of the day, Masrud is still able to see some of these AEO documents by the very terms of the Protective Order.  Thus, Masrud's complaints are for naught and sanctions improper.  Masrud should not be rewarded for filing an unnecessary motion and wasting the parties' and the Court's time and resources.

## III.   <u>CONCLUSION</u>

For at least the forgoing reasons, Plaintiff respectfully requests that the Defendant's Motion to Compel to De-Designate its Attorneys Eyes Only Production and for Sanctions be denied.


Dated:  January 20, 2021                    Respectfully submitted,

                                            */s/ Eric E. Reed*
                                            Eric E. Reed
                                            Fox Rothschild LLP
                                            2000 Market Street, 20th Floor
                                            Philadelphia, PA 19103
                                            (215) 299-2741 - direct
                                            (215) 299-2150 - fax
                                            EReed@foxrothschild.com
                                            *Attorneys for Plaintiff Polysciences, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on the below date, he filed the foregoing with the

Court using the ECF system, which will provide notice and a copy to counsel of record.


Date: January 20, 2021                          */s/ Eric E. Reed*
                                                Eric E. Reed