# EXHIBIT B



JULIANNE PECK
PARTNER

215–868–6214
Jpeck@HomansPeck.com

November 16, 2020

<u>**Via Electronic Mail**</u>

Eric Reed
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA  19103-3222
EReed@foxrothschild.com

    Re:  **Polysciences, Inc. v. Joseph T. Masrud**
       **Civil Action No. 20-cv-03649**

Dear Eric,

   In follow up to our latest meet and confer, this letter is a formal objection to the blanket designation by Polysciences of the vast majority of its production as "Highly Confidential – Attorneys' Eyes Only."

   Pursuant to the Parties' Protective Order, any party may designate the production of trade secrets, competitively sensitive information, or other confidential information as "Confidential," which designation protects such information from public disclosure in connection with this litigation and limits exposure other than as necessary in this litigation.  By contrast, the designation of "Attorneys Eyes Only" ("AEO") is limited to the production of "highly sensitive business or personal information," the disclosure of which is "highly likely to cause significant harm to . . . the business or competitive position of the designation party."  Protective Order ¶ 2.

   Contrary to your suggestion during out meet and confer that all potential "trade secrets" should be designated as "AEO," the designation of information as "AEO" should only be used if it meets the requisite threshold given that such a designation carries significant burdens.  For example, it cannot be shown to parties or witnesses in the preparation of the defense or prosecution of claims unless the party or witness authored or otherwise reviewed the information during their tenure with Polysciences, and carries other burdens in connection with its use in this litigation (e.g. giving notice and obtaining consent prior to use at a deposition or hearing).

   Polysciences' blanket designation of documents as AEO significantly frustrates Masrud's ability to prepare his defense and prosecution of his Abuse of Process

Eric Reed
November 16, 2020
Page 2 of 5

counterclaim, and in and of itself is yet another example of Polysciences' bad faith in this matter.

The vast majority of the documents that Polysciences designated as AEO do not meet the Protective Order threshold of "highly likely to cause significant harm to an individual or to the business or competitive position of [Polysciences]," directly pertain to Masrud, were authored or otherwise communicated to Masrud, were accessible to Masrud during his tenure with Polysciences, and/or contain information that is stale and no longer competitive.

For all of the above reasons, the following documents should be redesignated as "Confidential," which designation adequately protects Polysciences from harm for the reasons set forth above.

- Masrud's personnel file/employment records whichdo not meet the AEO threshholde, directly pertain to Masrud, and/or were authored by Masrud. At a minimum please confirm that these documents can be shared with Masrud.
    - Polysciences 932-945
    - Polysciences 950-957
    - Polysciences 1095-1128
    - Polysciences 1131-1148
    - Polysciences 1153-1160
    - Polysciences 1164-1171

- Mathew Griffin's personnel file/employment records, none of which meet the threshold for an AEO designation and pertain directly to a key witness in this litigation.  Indeed, many do not meet the threshold for "Confidential." At a minimum please confirm that these documents can be shared with Mr. Griffin.
    - Polysciences 242-302
    - Polysciences 316-327
    - Polysciences 347-352

- The following documents that also clearly do not disclose information highly likely to cause significant harm and thus does not meet the threshold standard for an AEO designation:
    - Polysciences 2258-2261 ("PEI Trade Secret Log"), which merely identifies the name of files and discloses no confidential or competitive information.
    - Polysciences 1203 (Polysciences Annual Revenue Chart), which was accessible to (if not authored by) Masrud during his tenure.

Eric Reed
November 16, 2020
Page 3 of 5

- o Polysciences 2294 (email without attachment from Griffin to Griffin), which does not contain any confidential information whatsoever and was already disclosed by Polysciences in a pleading in this matter.
- o Polysciences 2262-2286 (Batch Master/SAP1 Basic Training/Handout) which also was likely accessible to both Masrud and Griffin during their tenures.
- o Polysciences 308-310 (Griffin summary of "R&D Priorities Thoughts") which also was authored by a key witness in this matter.
- o Polysciences 345-346 (Griffin "free unstructured throughs on Dopamine/Biotin monomers) which also was authored by a key witness in this matter.

- The following documents that appear to have been authored/prepared by, exchanged by, or reviewed by Masrud during his tenure with Polysciences, none of which can be said to disclose information that is highly likely to cause significant harm to Polysciences given Masrud's prior familiarity with the information.  To the extent that Polysciences objects to redesignating these documents, please confirm, at a minimum, that Polysciences agrees that they can be shown to Masrud pursuant to Paragraph 4(e) of the Protective Order.
    - o Polysciences 228-238 (Development report MAXgene Transient Transfection Reagent Powder signed by both Masrud and Griffin)
    - o Polysciences 354-537 (PPT re: Feb. 2017 Sales Summary prepared by Masrud)
    - o Polysciences 930-931 (PPT re: Jan. 2018 Sales Summary prepared by Masrud)
    - o Polysciences 1174-1189 (Business Plan prepared by Masrud)
    - o Polysciences 1204-1234 (Polysciences Competitor PEI Products Chart prepared by Masrud and email correspondence re: same)
    - o Polysciences 1347-2242 (ISO Design File #61 (MAXGene Transient Transfection Reagent – Books 1 and 2; Masrud identified as part of design group and Griffin identified as one of two "Primary Persons Responsible").
    - o Polysciences 2287 (Cover email without attachment from Griffin to Masrud re shared sales data)

- The following documents that disclose customer names (which notably Polysciences freely disclosed to Masrud for purposes of a stipulated TRO), and/or stale sales information prior to and during Masrud's tenure, the disclosure of which is not highly likely to cause significant harm particularly given that most of this information was accessible to (if not prepared by) Masrud during his tenure.
    - o Polysciences 966-1025 (Customer list of PEI purchases)

Eric Reed
November 16, 2020
Page 4 of 5

- o Polysciences 2288-2293 (Sales and Shipping information 2013-March 2018)
- o Polysciences 2295 (Sales and shipping information April 2018-July 9, 2019)
- o Polysciences 2296 (sales forecasts)

Finally, Polysciences blanketly marked as AEO *all* pages of any PEI formula descriptions, design files etc., thereby preventing Masrud from access to the very information he needs to defend against Polysciences' claims and to establish his counterclaim. Most of the information on these documents does not meet the AEO threshold. A "Confidential" designation should suffice with any truly "highly confidential" information "likely to cause significant harm" redacted in a manner that demonstrates the type of information that was redacted and marked "highly confidential." Redacted information should not include information that is or formerly was available on Polysciences' website or otherwise in the public domain. In addition to some of the design files referenced above that name Masrud as having been an author and/or having access, the documents which need to be reproduced with only very narrow and appropriate redactions of AEO material include:

- Polysciences 43-57 (Formula desc: MAXgene Transient Tranfection Reagent Powder) Product No. HX26406
- Polysciences 80-87 (Formula desc: PE MAX (MW 40,000) Product No. 24765
- Polysciences 98-102 (Formula desc: PE Linear (MW 2500) Product No. 24313
- Polysciences 103-112 (Formula desc: PE Linear, Product No. 23966
- Polysciences 113-117 (Formula desc: PE Linear (MW 2500), Product No. 24314
- Polysciences 119-133 (Formula desc: MAXgene Transient Transfection Reagent Powder, Product No. HX26406
- Polysciences 134-138 (Formula desc: MAXgene Transient Transfection Reagent (Rev. 3 – Obsolete) Product No. 26406
- Polysciences 139-150 (BOM desc:  MAXgene GMP Transfection Reagent, Solution, Product No. 26406-1
- Polysciences 151-156 (Formula desc: PEI Max Hydrocholoride Salt, Product No. 24885
- Polysciences 157-163 (BOM desc: Transporter 5 Transfection Reagent, Product No. 26008-5
- Polysciences 164-169 (BOM desc: Transporter 5 Transfection Reagent, Product No. 26008-50
- Polysciences 1026-1092 (ISO Design File #66, MAXgene GMP Transfection Reagent, Powder, Product No. 26435
- Polysciences 1199-1202 (Process steps to make PEI solid, PEI solution, and package solution)

Eric Reed
November 16, 2020
Page 5 of 5

- Polysciences 1235-1343 (QC Specification worksheets for various PEI products)

I look forward to both a revised production and/or an explanation from you as to the basis for maintaining any of the challenged designations identified above.   To the extent that Masrud is forced to file a motion on this issue, he will be seeking attorneys fees and any other appropriate sanctions.

Respectfully yours,

HOMANS PECK, LLC

Julianne L. Peck

cc:     Cali Spota (via email)