# Exhibit A



JULIANNE PECK
PARTNER

215-868-6214
Jpeck@HomansPeck.com

March 23, 2021

**Via Electronic Mail**

Eric Reed
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA  19103-3222
EReed@foxrothschild.com

   Re:  Polysciences, Inc. v. Joseph T. Masrud
       Civil Action No. 20-cv-03649

Dear Eric,

  This letter is in follow up to Polysciences' latest production.  To date, Polysciences has produced 36,000 pages of imaged documents (primarily consisting of emails) and has stated that it considers its production to be complete.  Masrud is in the process of reviewing this final production to identify remaining deficiencies. This process, however, has been greatly impeded by two significant issues.  First, Polysciences did not produce its ESI in the requested format, or any usable format.  Second, Polysciences has designated over one third of its production as "Attorneys' Eyes Only." This includes over 12,500 pages of imaged unsearchable files and over 115 native files separated from the emails to which they were attached.  Indeed, the vast majority of the documents necessary for Masrud's defense have been produced as AEO, precluding Masrud from preparing his own defense when he is uniquely qualified to interpret the documents produced.  Mr. Griffin (for whom a motion is pending to add him as a defendant) is unrepresented.  As such, if/when he becomes a party, he will be even more impacted by Polysciences' bad faith use of AEO designations.

  **ESI Production**.  Polysciences produced the emails and their non-native attachments in individual unsearchable pdf files.  In addition, the attachments (both imaged and native) are separated from the emails to which they are attached. No metadata was provided, and none of the email production can be searched by author/recipient (or otherwise), or sorted by author/recipient, date, or otherwise. Moreover, the emails were not produced in any discernable order.  In fact they appear to have been produced in an intentionally disorganized fashion.  Emails that belong to the same chain (with the same custodians) can be found in different parts of the production and some were even produced in different productions!  Based on the manner in which

Eric Reed
March 23, 2021
Page 2 of 8

the emails were produced, neither Masrud nor his counsel can sort, search, or organize the emails in preparation for litigation.

    Masrud requested that any ESI be produced:

"as single-page TIFF images, accompanied by load files for internal and external metadata in Concordance.dat file format, and for images in IPRO.lpt format, extracted or OCR'ed text in .txt files, and, as specified, native files."

See, Masrud's First and Second Requests for Production, Instruction No. 8.

    Masrud did not object to Polysciences' failure to produce its initial production in this format as Polysciences' initial email production was manageable. Its latest production (POLYSCIENCES 12,979 – 36,203), with almost 3,000 emails (consisting of over 12,500 pages) marked AEO, however, necessitates compliance with Masrud's initial request.

    Fox Rothschild is a sophisticated firm with a litigation support team that likely uses ediscovery software such as Relativity (an eDiscovery hosting platform) in-house, and likely used such a platform for its own review. Please confirm immediately that Fox Rothschild will be producing the email production as requested or in any other manner that can properly be loaded into ediscovery software (such as Relativity) with all appropriate metadata/load files, and please give me your best estimate as to when this can be accomplished. Please also ensure that AEO documents are properly coded or tagged, and keep in mind that to the extent that the Court orders the de-designation of any AEO documents the re-production of any de-designated documents should be produced in such a manner as to overlay the prior production and avoid deleting any previously made coding calls.

    **Over One Third of Polysciences' Production is AEO**

Polysciences produced the following documents on the following dates:

- POLYSCIENCES 1 – POLYSCIENCES 2296 on 9/17/20
    - 1,689 pages designated AEO in their entirety

- POLYSCIENCES 2297 – POLYSCIENCES 9343 on 12/4/20
    - Almost entirely designated AEO, including all emails that were produced

- POLYSCIENCES 1 – POLYSCIENCES 9343 de-designated production on 12/15/20
    - 77 documents continue to be designated as AEO, 15 of which are native files. While the number of pages in the native files cannot be

ascertained and appear quite voluminous, the imaged AEO documents total over 1,500 pages.

- POLYSCIENCES 9344 – POLYSCIENCES 12978 on 12/28/20

- POLYSCIENCES 12979 – POLYSCIENCES 36203 on 2/12/21
  - Over 2,838 documents as AEO, 103 of which are native files. While the number of pages in the native files cannot be ascertained and appear quite voluminous, the imaged AEO documents total over 11,000 pages.

As such, despite the fact that AEO designations should be used sparingly and only in the limited circumstances where they are warranted, Polysciences has designated for AEO approximately 3,000 documents (including over 115 native files and over 12,500 pages of "imaged" documents). Moreover, the AEO documents are interspersed throughout the production and Polysciences did not indicate in the individual file names which documents are AEO. As such, it has been time consuming to separate the AEO documents from the production that is available to Masrud for review. Also, while Polysciences has given Masrud the right to review those AEO documents that are to/from/created by him, culling these documents is likewise time consuming. ***These documents, however, never should have been designated AEO in the first place.*** Moreover, the subset of AEO documents that are to/from Masrud is a small fraction of the AEO documents (*e.g.* approximately 250 of the 3,000 documents). The subset of emails to/from Griffin is also small (*e.g.* approximately 445 documents of the 3000 documents).

**AEO designations require a good faith showing that the document contains "highly sensitive business or personal information, the disclosure of which is *highly likely to cause significant harm* to an individual or to the business or competitive position of the designating party."**

It is no coincidence that the vast majority of the emails that Polysciences did not designate AEO have little to no relevance to this action whereas the vast majority of the documents that Polysciences designated as AEO are highly relevant to this case. They have been designated AEO despite the fact that they do not meet the above standard based on the facts of this case. Given the blanket AEO designation of thousands of documents, Masrud cannot be expected to object specifically to each document. Polysciences' abusive overuse of AEO designations should deprive Polysciences of the right to use this designation at all, which is one of the sanctions that Masrud will be seeking if we cannot resolve this issue absent further involving the Court.

Masrud objects to Polysciences' AEO designations for all of the reasons set forth above and in his January 6, 2021 *Motion to Compel Polysciences to De-Designate its AEO Production* [ECF 38]. Without limitation, he objects to the AEO designation of all:

Eric Reed
March 23, 2021
Page 4 of 8

- Documents that Masrud allegedly stole. Such documents are not highly likely to cause significant harm and are necessary for Masrud's defense;
- Documents that are necessary for Masrud's defense to Polysciences' claims and/or his counterclaim of abuse of process;
- Documents that Masrud (or any other party to this action) authored or otherwise had access during his/their tenure at Polysciences; and
- Documents that do not meet the standard above as their production to Masrud is not "highly likely to cause significant harm."

The below chart is merely a sample of examples of the documents designated AEO to which Masrud objects. Masrud cannot be expected to itemize all the designations to which he objects when that number is in the thousands. The burden, at this point, is on Polysciences to explain the basis for any "highly likely significant harm" that would result from the disclosure of each and every one of its designations, including those identified in this chart, or to re-designate its production. Moreover, to aid in narrowing the issue for the Court should we be unable to resolve this dispute, please identify any documents that contain alleged trade secrets that are not at issue in this litigation.

| | |
|---|---|
| Polysciences 19231 | Not highly likely to cause significant harm. Merely states "documents not found." |
| Polysciences 19232-19235 | #24765 (PEI "Max" Mw40k Rev 01 "Operating Instructions Manufacturing" discloses trade secrets at issue in this litigation and is necessary to Masrud's defense.[1] |
| Polysciences 19236-19243 | #24765 (PEI "Max" Mw40k Rev 02 "Operating Instructions Manufacturing" discloses the trade secrets at issue in this litigation and is necessary to Masrud's defense. |
| Polysciences 19244-19251 | #24765 (PEI "Max" Mw40k Rev 03 "Operating Instructions Manufacturing" discloses trade secrets at issue in this litigation and is necessary to Masrud's defense. |
| Polysciences 19252-19263 | #24765 (PEI "Max" Mw40k Rev 04 "Operating Instructions Manufacturing" discloses trade secrets at issue in this litigation and is necessary to Masrud's defense. |
| Polysciences 19264 | Not highly likely to cause significant harm. Merely states "documents not found." |
| Polysciences 19265-19286 | #24765 (PEI "Max" Mw40k Rev 06 "Operating Instructions Manufacturing" disclosing trade secrets at issue in this litigation and is necessary to Masrud's defense. |
| Polysciences 19287-19307 | #24765 PEI "Max" Mw 40k ERP Rev 1 disclosing trade secrets at issue in this litigation and is necessary to Masrud's defense. |

---

[1] Any reference to trade secrets in this chart is a reference to *alleged* trade secrets as Masrud disputes Polysciences' trade secret allegations.

Eric Reed
March 23, 2021
Page 5 of 8

| Polysciences 19308-19325 | #24765 PEI "Max" Mw 40k ERP Rev 2 disclosing trade secrets at issue in this litigation and is necessary to Masrud's defense. |
|---|---|
| Polysciences 21179 | Not highly likely to cause significant harm. |
| Polysciences 21229 | Not highly likely to cause significant harm. While it identifies Pfizer as a customer, Polysciences identified Pfizer as a customer in the stipulated TRO and its document production establishes that Masrud was aware during his tenure that Pfizer was a customer. |
| Polysciences 21231 | Not highly likely to cause significant harm. |
| Polysciences 21236 | Not highly likely to cause significant harm. While it identifies Pfizer as a customer, Polysciences identified Pfizer as a customer in the stipulated TRO and its document production establishes that Masrud was aware during his tenure that Pfizer was a customer. |
| Polysciences 21263 | Chart of questions dated August 29, 2019 for Joe Masrud, including questions regarding his discussions with Pfizer. Not highly likely to cause significant harm. |
| Polysciences 21835 | Email correspondence re: lots being sent to Kemp for testing. Not highly likely to cause significant harm. |
| Polysciences 21674-21701 | "PEI Info" sent to Scott Knorr by Michael Wagaman on 7/10/20 in anticipation of this litigation, including: Formula Revision 5 for Part No. HX26406 (MAXgene Transient Transfection Reagent Powder); Formula Revision 3 for Part No. 26406 (MAXgene Transfection Reagent); HX26406 (MAXgene Transient Transfection Reagent Powder Development Report ). This information discloses trade secrets at issue in this litigation, was used to support the allegations in the 7/27/20 Complaint, and is necessary to Masrud's defense. |
| Polysciences 21710-21711 | Not highly likely to cause significant harm. |
| Polysciences 21835 | Email correspondence regarding anticipated testing of lots of PEI Max 40k R&D (and forwarding the batch records below). Not highly likely to cause significant harm. |
| Polysciences 21836-21854 | Batch record re: 24765 (PEI Max) disclosing trade secrets at issue in this case and is necessary to Masrud's defense. |
| Polysciences 21855-21872 | Batch record re: 24765 (PEI Max) disclosing trade secrets at issue in this case and is necessary to Masrud's defense. |
| Polysciences 21873-21894 | Batch record re: 24765 (PEI Max) disclosing trade secrets at issue in this case and is necessary to Masrud's defense. |
| Polysciences 21949-21982 | "PEI Info-2" sent to Scott Knorr by Michael Wagaman on 7/11/20 in anticipation of this litigation, including: Formula Revision 3 for Part No. 26008 (Transporter 5); Formula Revision 2 for Part No. 24765 (PEI Max); Formula Revision 5 for Part No. 23966 (PEI Linear); Formula Revision 1 for Part No. 24314 (PEI Linear MW 250k); Formula Revision 1 for Part No. 24313 (PEI Linear MW 2,500). |

Eric Reed
March 23, 2021
Page 6 of 8

| | |
|---|---|
| | This information discloses trade secrets at issue in this litigation, was used to support the allegations in the 7/27/20 Complaint, and is necessary for Masrud's defense. |
| Polysciences 21984-21987 | "PEI Info" sent to Scott Knorr by Michael Wagaman on 7/11/20 in anticipation of this litigation, including: BM specs for HX26406 (MAXgene Transient Transfection Reagent Powder). This information discloses trade secrets at issue in this litigation, was used to support the allegations in the 7/27/20 Complaint, and is necessary for Masrud's defense. |
| Polysciences 21990-21991 | Not highly likely to cause significant harm. |
| Polysciences 21992-21994; 28763-28765 | MAXgene GMP Sales Guide prepared by Masrud and forwarded by Wagaman to Knorr on 7/13/20 as information that Masrud put together. Not highly likely to cause significant harm when it was prepared by Masrud. Moreover, to the extent it contains trade secrets alleged to have been stolen by Masrud, it is necessary to Masrud's defense. |
| Polysciences 22006 | "PEI Info" sent to Scott Knorr by Michael Wagaman on 7/11/20 in anticipation of this litigation re: "BM for Transporter – P/N 26008" disclosing the appearance and PH of Transporter 5. This information discloses trade secrets at issue in this litigation, was used to support the allegations in the 7/27/20 Complaint, and is necessary for Masrud's defense. No information in this document is highly likely to cause significant harm. |
| Polysciences 22014-22015 | 7/15/20 email correspondence to Knorr re: summary of costs re: production of MAXgene GMP transfection Reagent productions. This information was used to support the allegations in the 7/27/20 Complaint in this action and is necessary for Masrud's defense. Moreover, no information in this document is highly likely to cause significant harm. |
| Polysciences 22016 | Native production of spreadsheet re: costs re: production of MAXgene GMP transfection Reagent productions sent as an attachment to the preceding email. This information was used to support the allegations in the 7/27/20 Complaint in this action and is necessary for Masrud's defense. Moreover, no information in this document is highly likely to cause significant harm. |
| Polysciences 22017 | Native production of estimate of hours spend validating PEI MAXgene sent to Knorr on 7/15/20. This information was used to support the allegations in the 7/27/20 Complaint in this action and is necessary for Masrud's defense. Moreover, no information in this document is highly likely to cause significant harm. |
| Polysciences 22022-22034 | PEI Info sent to Scott Knorr by Michael Wagaman on 7/15/20 in anticipation of this litigation re: "Transporter 5 Assay; Transporter 5 RD BR" disclosing operating/manufacturing instructions for Transporter 5. This information discloses trade secrets at issue in this |

Eric Reed
March 23, 2021
Page 7 of 8

|  | litigation, was used to support the allegations in the 7/27/20 Complaint, and is necessary for Masrud's defense. |
|---|---|
| Polysciences 22035-22036 | 7/31/20 email to Knorr re: new product sales numbers. This document is not highly likely to cause significant harm and is necessary to Masrud's defense. |
| Polysciences 22038-22039 | Wagaman response to email above praising result and thanking team. Same objection as above. |
| Polysciences 22122-22126 | 7/23/19 PPT re: "MAXgene production and status." References that Masrud and Griffin were responsible. This information contains trade secrets at issue in this litigation, was available to Masrud/Griffin during their respective tenures, and is necessary to Masrud's defense. |
| Polysciences 22145 | Email correspondence regarding potential additional testing, including stability study protocol. Not highly likely to cause significant harm. |
| Polysciences 22156 | Native file re: sales pipeline attached to 8/27/19 email that is about Masrud and suggests the attachment will be sent to Masrud. Field for prospective customers is blank. Not highly likely to cause significant harm. |
| Polysciences 22167 | Same objections as above. Similar or same attachment to same email chain. |
| Polysciences 22172-22173 | 9/3/19 Email exchange (initially with Masrud) re: pricing strategy for GMP PEI products. Portion of chain on which Masrud is not copied contains no potential trade secrets or harmful information. |
| Polysciences 22476-22478 | Email exchange showing historical and projected revenue for relevant PEI products. Not highly likely to cause significant harm and necessary for Masrud's defense. |
| Polysciences 22907-22910 | LogicBIO audit. Not highly likely to cause significant harm. |
| Polysciences 23502 and 28235 | July 2020 correspondence between Leena Thuruthippallil and Kathy Kilbride regarding removing information from Polysciences website. Not highly likely to cause significant harm and necessary for Masrud's defenses and counterclaim in this action. |
| Polysciences 24812-24813 | Not highly likely to cause significant harm. |
| Polysciences 24814-24822 | MAXgene Transfection Reagent (Part No. SX26406) Formula Rev. 2. Discloses the trade secrets at issue in this litigation and is necessary to Masrud's defense. |
| Polysciences 25344-25345 | Email from customer re: question about stability and 3x increase in price of PEI Max. Contains information (including potential alleged trade secrets) that are relevant to Masrud's defense of this action. |
| Polysciences 25914-25915 | Not highly likely to cause significant harm. |
| Polysciences 28962 | MAXgene Marketing document created by Mathew Griffin, discloses a price recommended by Masrud, which if alleged to be a trade secret |

| | |
|---|---|
| | is relevant this litigation and Masrud's defense. Not highly likely to cause significant harm. |
| Polysciences 29625-29626 | Email correspondence with a Japanese distributor (likely known to Masrud). Not highly likely to cause significant harm. |
| Polysciences 24792-2479; 25273;25590-25591 | Multiple technical inquiries/"contact us forms" from customers that are not likely to cause significant harm. These are only a few of many examples. |

Notably, Polysciences appears to have designated AEO every email from a customer. However, emails that disclose the identity of a single customer are not highly likely to cause significant harm in this case given that: (1) in Masrud's role at Polysciences he had access to customer identities; (2) Polysciences provided Masrud with a list of over 200 of its PEI customers when negotiating the stipulated TRO and cannot now credibly claim "significant harm"; and (3) the parties have signed a confidentiality agreement that prevents Masrud from using any information obtained during litigation for any purpose other than litigation. Under these circumstances a CONFIDENTIALITY designation clearly suffices.

Unless Polysciences re-designates its production (together with the proper production of its ESI), Masrud will be forced to file yet another Motion to Compel and will seek sanctions, including the costs associated with having to bring yet another motion.

I look forward to hearing from you shortly and am happy to set up a conference call to discuss.

                                                Sincerely yours,

                                                HOMANS PECK, LLC

                                                Julianne L. Peck

cc:      Cali Spota (via email)