# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| POLYSCIENCES, INC. | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:20-cv-03649-PBT |
| | : | |
| v. | : | |
| | : | |
| JOSEPH T. MASRUD, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT JOSEPH T. MASRUD'S SECOND REQUEST FOR
PRODUCTION OF DOCUMENTS DIRECTED TO PLAINTIFF POLYSCIENCES, INC.**

Defendant Joseph T. Masrud ("Masrud") hereby requests that Plaintiff Polysciences, Inc.

("Polysciences") produce the following documents in accord with Rule 34 of the Federal Rules

of Civil Procedure to undersigned counsel within thirty (30) days of service.

**DEFINITIONS**

1.      "You" or "your" shall refer to Plaintiff as defined below.

2.      "Plaintiff" shall refer to Polysciences, and any and all of its and their parents,

subsidiaries, affiliates, joint ventures, predecessors and successors, as well as its and their

owners, partners, members, directors, officers, employees, past or present agents, and

representatives or other persons acting, or purporting to act, on behalf of it or any one of them.

3.      "Defendant" shall refer to Masrud and his attorneys, agents, and representatives.

4.      The terms "confidential information," "proprietary information," and/or "trade

secrets" are intended to broadly encompass any and all of the information and documents

relating to, referring to, alluding to, connected with, or otherwise associated with the

1

information, existing in whatever form, that you believe is protected or protectible and is the intended subject of the claims asserted by Plaintiff against Masrud in this action.

5.      The term "PEI Products" refers to all Polyethylenimine transfection reagents sold by Polysciences that Polysciences alleges are, or are related to or predecessors of, the products that Polysciences alleges Masrud has copied by using Polysciences' confidential information, proprietary information, and/or trade secrets.

6.      "Document" or "documents" are used herein in their broadest sense, and means all tangible items, all electronically stored information ("ESI" as further defined below), and all communications (defined below), writings, drawings, graphs, charts, photographs, sound recordings, images and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. This definition includes originals, copies, or any nonidentical copy or draft version, and includes native file formats without alteration or deletion of any associated information, e.g., metadata, regardless of origin or location.

7.      "Contact" or "communication" shall mean all modes of conveying meaning or information including, without limitation, ESI, telephone, facsimile, instant messaging, and written or spoken language between two persons.

8.      "Concerning," "relating to," "referring to," and "pertaining to" are intended to encompass any and all information and documents relating to, referring to, alluding to, responding to, connected with, commenting on, in respect of, about, regarding, discussing, summarizing, showing, describing, reflecting, analyzing, constituting, or in any way relevant to the underlying facts of the specified subject of the particular request.

9.     "Communications" shall mean all methods of conveying meaning or information including without limitation, ESI, telephone, facsimile, and written or spoken language between two persons.

9.     "ESI" shall mean all electronically stored information, including but not limited to computer files, electronic mail, text messages, instant messages, information on social media or other websites (e.g., Facebook, MySpace, Twitter, blogs), information stored on "smart" or other Internet-and-text-capable cellular phones or tablet devices (e.g., iPad), information stored on USB or "flash" drives, and any other discoverable Internet data. ESI includes native file formats without alteration or deletion of any associated information, like metadata.

10.     "This Action" shall mean the above-entitled and numbered case.

11.     The term "including" means "including without limitation."

12.     The term "date" shall mean the day, month and year, whenever reasonably ascertainable, or, if not, your best approximation of the date.

13.     The terms "all" and "each" shall both be construed as all and each.

14.     The terms "and" and "or" shall be both conjunctive and disjunctive as necessary to bring within the scope of the Request all responses that might otherwise be construed as outside its scope.

15.     Where the singular is used with reference to any person, document or item, it shall include the plural if, in fact, there are more than one, and vice versa. Similarly, where a gendered pronoun (e.g., "he") is used, all genders are intended to be encompassed within that pronoun.

## INSTRUCTIONS

1.     Each Request is to be answered separately and specifically and documents responsive to each request for production shall be identified and produced by reference to the

3

request number to which such documents are responsive. No answer is to be left blank. If the answer to a Request or subparagraph of a Request is "none" or "unknown," such statement must be written in the answer. If the answer to part of a question is not known, so state and answer the part known. If an exact date is not known, state the closest approximate date.

2.      In responding to these Requests, produce all documents that are available to you, including documents in the possession of your attorneys, investigators or experts, and not merely documents in your own personal possession. If you or any of your agents, including your attorney, are aware of the existence of any document within the scope of these Requests that is not within the custody, possession or control of you or your agents, please identify any such document in a written response to the request and provide information about who has possession, custody or control over the document.

3.      When a document request calls for documents or facts that relate to a claim or contention, produce documents that are inconsistent with as well as those that support such claim or contention.

4.      If you object to any part of any Request, you must answer all parts of that Request to which you do not object, and state the specific bases for your objection to any part to which you do object, describe generally the document or information that is withheld and set forth the facts upon which you rely as the basis for each such objection.

5.      In the event that you claim that a document request is overly broad or unduly burdensome, you should respond to that portion of the document request which is unobjectionable and specifically identify the manner in which the document request is allegedly overly broad or burdensome.

6.      If you claim that an answer, in whole or in part, to any Request or part thereof is privileged or otherwise protected from discovery, you must identify such information by subject matter and state with particularity the nature and basis of its claim of privilege or other reason that the information is protected from discovery.

7.      These Requests are deemed continuing in nature and call for prompt supplemental production whenever you receive or discover additional information covered by these Requests. You are hereby notified of and referred to the Federal Rules of Civil Procedure regarding your ongoing duty to promptly supplement your responses to these Requests should you obtain information upon the basis of which you know a prior response was incorrect or incomplete when made, or that a response, though correct and complete when made, is no longer true and complete.

8.      In accordance with Rule 34 of the Federal Rules of Civil Procedure, you must produce documents, except ESI, as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request. Please produce ESI as single-page TIFF images, accompanied by load files for internal and external metadata in Concordance.dat file format, and for images in IPRO.lpt format, extracted or OCR'ed text in .txt files, and, as specified, native files. Please produce Microsoft Access  databases, Excel files, Word documents with comments or tracked changes, .CSV files, other similar databases and spreadsheet files, presentation (e.g., PowerPoint), and audio or video media files, in native format.

9.      No admission by Masrud is intended by and none should be inferred from any portion of these requests for documents.

**REQUESTS FOR PRODUCTION**

17.     All organizational chart's from the date the Polysciences' began the research and development of its PEI Products through September 2019, and/or documents sufficient to identify the names, titles, and reporting structures of all employees during this time period involved in the research, development, design and/or manufacture of the PEI Products.

18.     All documents concerning the "trade secrets/confidential information" that Polysciences alleges -- in the September 23, 2019 Fox Rothschild letter attached as Exhibit 5 to the Complaint -- that Masrud "gave permission to Mathew Griffin to authorize Polysciences's AsiaPacific to share . . . to a Taiwanese-based vaccine company without a CDA in place."  This request includes without limitation, all communications to or from Masrud, Griffin, or Polysciences AsiaPacific employees relating to this allegation, a copy of the alleged confidential information at issue in the letter, and communications to or from Andrew Ott or Scott Knorr regarding this incident.

19.     All documents and communications concerning the removal or de-linking of PEI related content from Polysciences' website at any time between September 6, 2019 and July 29, 2020.  This request includes without limitation (a) a copy of all documents or information removed; (b) any communications to or from Andrew Ott, Scott Knorr, or Leena Thuruthippallil, relating to such removal, de-linking or request for removal or de-linking.

20.     All communications to or from Andrew Ott, Scott Knorr, or Leena Thuruthippallil, between August 1, 2019 and present regarding Masrud, Serochem, Serochem's products, Mathew Griffin, this action, the relative ease or difficulty in researching, manufacturing, or developing a PEI transfection reagent, Polysciences' market share in the PEI transfection reagent market, or Polysciences' competitors in the transfection reagent market.

This request includes without limitation any communications that reference the impact that Serochem's PEI products could have on Polysciences' PEI sales, market share, pricing, and/or reputation.

21.     All documents and communications that reflect the purchase or acquisition by Polysciences either directly or through a third party of Serochem's PEI products.

22.     All documents concerning any analyses of Serochem's PEI products performed by Polysciences or any person or entity acting on its behalf.

23.     All documents concerning any comparison of Serochem's PEI products to Polysciences' PEI products.

24.     All documents concerning Polysciences' allegation in its Reply brief in support of its Motion for injunctive relief (ECF 15) that "time, temperature, and concentrations are among the critical manufacturing details that differentiate PEI products." This request includes without limitations any documents that demonstrate variations in either time, temperature, or concentration alter the performance of PEI products.

25.     All documents that support Polysciences' apparent contention that the wash solvent used in the manufacture of its PEI products affects performance.

26.     All documents that support Polysciences' apparent contention that pH and pH neutralization methods for its PEI transfection reagents affects performance. This request includes without limitation documents sufficient to show the development and optimization efforts for selecting the pH and pH neutralization method for its liquid PEI transfection reagents (including Transporter 5) and whether pH influences storage, shelf life, and/or performance.

27.     All documents concerning any comparison between Polysciences' PEI Max and/or Transporter 5 products and its GMP PEI products.  This request includes without limitation any documents their compare their respective performance.

28.     All documents that support the claim that "the PEI Max and Transporter 5 products were themselves based upon earlier Polysciences PEI products."  This request includes without limitation any communications, lab notes, technical files, design files, batch records, or analytical testing that supports the claim that PEI Max was developed from or related to any predecessor products, including without limitation Polysciences' Linear PEI Product (Part No. 23966).

29.     All versions of design files and/or batch records for PEI Max from inception through September 2019.

30.     All documents that identify: (a) the individuals involved in the research and development of PEI Max; (b) the date that PEI Max was first developed; (c) the date of all revisions to the methods and/or procedures for manufacturing PEI Max; (d) the individuals involved in the decision to make and/or implement all such changes; and (e) any analyses of product performance based on any such changes.

31.     All documents that evidence the development costs for Polysciences' Linear PEI Product (Part No. 23966).

32.     All documents that evidence the development costs and/or development timeline for any predecessor product (other than No. 23966) of PEI Max.

33.     All documents that evidence the development costs and/or development timeline for Polysciences' PEI MAX (MW 40,000) (Part No. 24765) product.  This request does not include any costs associated with any predecessor products.

34.     All documents that evidence the development costs and/or development timeline for the Transformer 5 products.  This request does not include any costs associate with PEI Max or any predecessor products.

35.     All documents, including without limitation communications to or from Andrew Ott, Scott Knorr, or Leena Thuruthippallil, referencing the transfection reagent market and/or Polysciences' actual or potential projected market share within that market.

36.     All expense reports and related approvals submitted by Mathew Griffin for Dropbox related expenses incurred between September 1, 2018 and August 31, 2019.

37.     All email communications between Masrud and Griffin regarding requests for sales data, reporting, or analysis from August 10, 2018 through October 10, 2018.

38.     A native copy of the July 10, 2019, email communication from Mathew Griffin to Mathew Griffin attached as Exhibit "B' to Polysciences Reply brief (ECF 15) or in the alternative a copy that evidences the complete email addresses (including domain) of both the sender and receiver.

39.     All email communications to or from Mathew Griffin and Leena Thuruthippallil between June 10, 2019 and August 30, 2019, regarding requests for or production of sales data, reporting, or analysis.  This request includes without limitation any communications regarding requests relating to the information attached to the July 10, 2019 email referenced above and any automated responses to that email.

40.     All documents and communications regarding presentations given to and/or files shared by Masrud with Polysciences during his July 2019 trip to Philadelphia.  This includes all emails to or from Masrud, Andrew Ott, Scott Knorr, or Leena Thuruthippallil.

9

41.     A copy of any documents that Polysciences alleges in Paragraphs 4-7 of the

Declaration of David Collins attached to Polysciences' Reply brief (ECF 15) that Masrud

accessed or interacted with that Polysciences contends contain confidential information and/or

trade secrets that Serochem used in the research, development, or manufacture of its PEI

products.

Dated:  October 12, 2020                          HOMANS PECK LLC

                                                  /s/ Julianne L. Peck
                                                  Julianne L. Peck, Esquire
                                                  43 Paoli Plaza #426
                                                  Paoli, PA 19301
                                                  Telephone: (215) 868-6214
                                                  jpeck@homanspeck.com

                                                  *Attorneys for Defendant*
                                                  *Joseph T. Masrud*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| POLYSCIENCES, INC. | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:20-cv-03649-PBT |
| | : | |
| v. | : | |
| | : | |
| JOSEPH T. MASRUD, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Defendant Joseph T.

Masrud's First Request for Production of Documents Directed to Plaintiff Polysciences, Inc. was

served this day via e-mail and first-class mail, postage pre-paid, as follows:

> Eric E. Reed
> Fox Rothschild LLP
> 2000 Market Street, 20th Floor
> Philadelphia, PA  19103-3291
> (215) 299-2741 (telephone)
> (215) 299-2150 (facsimile)
> EReed@foxrothschild.com

*/s/ Julianne L. Peck*
Julianne L. Peck, Esq.

Dated: October 12, 2020

11