**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| POLYSCIENCES, INC. | : | |
| Plaintiff, | : | Civil Action No. 2:20-cv-03649-PBT |
| | : | |
| v. | : | |
| | : | |
| JOSEPH T. MASRUD, | : | |
| MATHEW GRIFIN, and | : | |
| SEROCHEM LLC, | : | |
| | : | |
| Defendants/Counter Claimants. | : | |
| | : | |
| MATHEW GRIFFIN, | : | |
| | : | |
| Counter-Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SCOTT A. KNORR, | : | |
| | : | |
| Counter-Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND FOR ATTORNEYS' FEES
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(b)**

## Table of Contents

*I.*      *INTRODUCTION* .......................................................................................... *1*

*II.*     *PROCEDURAL HISTORY/BACKGROUND* ................................................ *2*

   A.   **POLYSCIENCES FAILED TO SUFFICIENTLY IDENTIFY ITS ALLEGED MISSAPROPRIATED TRADE SECRETS IN RESPONSE TO MASRUD INTERROGATORY NO. 5.** ..................................................................... **3**

   B.   **POLYSCIENCES REFUSES TO COMPLY WITH THE COURT'S JULY 6, 2021 ORDER (ECF 47) COMPELLING IT TO IDENTIFY THE ALLEGED MISAPPROPRIATED TRADE SECRETS WITH "REASONABLE PARTICULARITY" IN RESPONSE TO MASRUD INTERROG NO. 5** ..................................................................... **6**

   C.   **POLYSCIENCES CONTINUES TO REFUSE TO IDENTIFY THE ALLEGED MISAPPROPRIATED TRADE SECRETS WITH "REASONABLE PARTICULARITY" IN RESPONSE TO SEROCHEM INTERROG NOS. 1-3.** ..................................................................... **8**

*III.*    *LEGAL REASONING* ............................................................................... *14*

   A.   **POLYSCIENCES HAS NOT COMPLIED WITH THE COURT'S ORDER** .................... **14**

   B.   **DUE TO ITS CONTEMPT POLYSCIENCES' AMENDED COMPLAINT SHOULD BE DISMISSED WITHOUT PREJUDICE PURSUANT TO RULE 37(b)** ................................ **21**

*IV.*     *CONCLUSION* .......................................................................................... *23*

i

## Table of Authorities

**CASES**

*Arconic, Inc. v. Novelis Inc.,* No. 17-1434, 2019 WL 10787764 ................................................. 15

*AutMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) ..................................... 16

*Hill v. Best Medical Int'l, Inc.*, Nos. 07-1709, 08-1404, 2010 WL 2546023, at *4 (W.D. Pa. June 24, 2010) ...................................................................................................................................... 15

*IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002).......................................... 20

*Mallet and Co. Inc. v. Lacayo et al.*, 16 F.4th 364, 393, n.22 (3d Cir. 2021).............................. 19

*Mextel, Inc. v. Air-Shields, Inc. et al.,* No. 01-CV-7308,  2005 WL 226112, * 42 (E.D. Pa. Jan. 31, 2005) ...................................................................................................................................... 18

*Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021) .................................................... 17

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, (3d Cir. 1984)........................................... 22

*Struthers Sci and Int'l Corp. v. General Foods Corp.*, 51 F.R.D. 149 (D. Del. 1970)................. 16

*Synygy, Inc. v. ZS Associates, Inc. et al.,* 2013 WL 3716518, *2 (July 15, 2013)................. 16, 19

*USSA v. Mitek Systems, Inc.*, 289 F.R.D. 244, 249 (W.D. Tex. 2013) ........................................ 15

*Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1155 (D. Or. 2015) ......................... 19

**Index of Exhibits (attached)**

Exhibit A:    Polysciences initial and supplemental answers to Masrud Interrog Nos. 4 and 5

Exhibit B:    ECF 47 - Court Order dated July 6, 2021 (ECF 47) ordering Polysciences to supplement its answer to Masrud Interrog No. 5

Exhibit C:    Masrud deficiency letter dated July 29, 2021 re: Polysciences failure to comply with Court Order

Exhibit D:    Polysciences August 6, 2021 letter response to deficiency letter

Exhibit E:    Masrud Letter to Judge Tucker dated August 30, 2021 requesting stay of discovery pending Polysciences compliance with Court Order

Exhibit F:    Polysciences August 31,2021 response letter to Judge Tucker

Exhibit G:    Polysciences December 3, 2021, Answers to Serochem trade secret Interrog Nos. 1-3 (***filed under seal***)

Exhibit H:    February 3, 2022 printout from Polysciences website showing link to abstract of Thomas and Longo papers at URL (https://www.polysciences.com/default/polyethylenimine-max-mw40000-high-potency-linear-pei#references)

Exhibit I:    February 3, 2022 printout from internet waybackmachine at of Polysciences PEI product page prior to July 22, 2020 at URL (https://web.archive.org/web/20181204151244/https://www.Polysciences.com/default/Poly2-ethyl-2-oxazoline-mw-5000)

Exhibit J:    Internal email from Leena Thuruthippallil dated July 22, 2020 requesting removal of information from Polysciences' PEI product page "ASAP" (POLYSCIENCES 23502) (***filed under seal***).

Exhibit K:    Sunain Katoch et al., *Optimization of PET Glycolysis Process by Response Surface Methodological Approach: A Two-Component Modelling Using Glycolysis Time and Temperature*, 2012 ISRN Polymer Science 1–9 (2012)

Exhibit L:    Sonja Bauhuber et al., *A library of strictly linear poly(ethylene glycol)–poly(ethylene imine) diblock copolymers to perform structure–function relationship of non-viral gene carriers*, 162 JOURNAL OF CONTROLLED RELEASE 446–455 (2012)

Exhibit M:    Masrud deficiency letter dated January 21, 2022 re: Polysciences Answers to Serochem Interrog Nos. 1-3

Exhibit N:    Polysciences January 28, 2022 response letter

**Index of Additional Exhibits Referenced**

ECF 14; Masrud Decl., Ex. C

Polyplus Patent Application "*Method for manufacturing linear polyethylenimine (pei) for transfection purpose and linear pei obtained with such method*," No. US20100197888A1 2010)

ECF 14; Masrud Decl., Ex. D

Blandine Brissault et al., *Synthesis of Linear Polyethylenimine Derivatives for DNA Transfection*, 14 BIOCONJUGATE CHEM. 581–587 (2003)

ECF 14; Masrud Decl., Ex. E

Ji Jeong et al., *DNA transfection using linear poly(ethylenimine) prepared by controlled acid hydrolysis of poly(2-ethyl-2-oxazoline)*, 73 JOURNAL OF CONTROLLED RELEASE 391–399 (2001)

ECF 14, Masrud Decl., Ex. F

M. Thomas et al., *Full deacylation of polyethylenimine dramatically boosts its gene delivery efficiency and specificity to mouse lung*, 102 PROCEEDINGS OF THE NATIONAL ACADEMY OF SCIENCES 5679–5684 (2005)

ECF 14, Masrud Decl., Ex. G

Huub P. C. Van Kuringen et al., *Partial Hydrolysis of Poly(2-ethyl-2-oxazoline) and Potential Implications for Biomedical Applications?: Partial Hydrolysis of Poly(2-ethyl-2-oxazoline) and Potential Implications ...*, 12 MACROMOL. BIOSCI. 1114–1123 (2012)

ECF 14, Masrud Decl., Ex. H

Ren-Hua Jin & Jian-Jun Yuan, *Hierarchically Structured Silica from Mediation of Linear Poly(ethyleneimine) Incorporated with Acidic/Basic Additives*, 39 POLYM J 464–470 (2007)

ECF 14, Masrud Decl., Ex. N

Patti A. Longo et al., *Transient Mammalian Cell Transfection with Polyethylenimine (PEI)*, 529 *in* Methods in Enzymology 227–240 (2013)

ECF 14, Masrud Decl., Ex. P

Yong Hong Chen, Megan S. Keiser & Beverly L. Davidson, *Adeno-Associated Virus Production, Purification, and Titering*, 8 CURRENT PROTOCOLS IN MOUSE BIOLOGY e56 (2018)

## I.      INTRODUCTION

This action involves claims by Polysciences that Masrud and Griffin (former employees of Polysciences), misappropriated Polysciences' alleged trade secrets in connection with the development and manufacture of competing PEI transfection reagent products through their company, Serochem.[1]  Polysciences filed this action knowing that all information necessary to develop and manufacture a competing PEI transfection reagent is publicly available and/or based on industry know-how.  As such, over a year and a half after Polysciences filed this action, it has yet to identify its alleged trade secrets with particularity despite the Court's July 6, 2021 Order (ECF 47) requiring it to do so.

Instead, it has continuously and broadly claimed that *everything* about its PEI transfection reagent products is a trade secret.  It claims specificity merely because it identified catch-all categories of alleged trade secrets and directed Defendants to over a thousand pages of documents containing this catch-all information.  Moreover, while Polysciences cited 6 alleged similarities in the "workflow" used by both Polysciences and Serochem in its latest response to trade secret discovery, all of the "similarities" are based on publicly available information and/or industry know-how.  Polysciences refused to clarify whether it considers these alleged similarities trade secrets – even when directly asked.  As such, and not surprisingly, on December 3, 2021, and *for the first time in this action*, Polysciences claims that its trade secret consists of a "unique combination or compilation" of information.  It refuses, however, to identify any such combination or compilation with "sufficient particularity" as ordered by the Court.  Moreover, its states that additional similarities will be identified through experts when

---

[1] Serochem manufactures and sells two competing products: (1)  PEI Prime Powder, Transfection Grade Linear Polyethylenimine and (2) PEI Prime AQ 1 mg/mL Liquid Transfection Reagent.

such reports are due.  In other words, it reserved the right to provide further particularity in its expert reports, which will not be due until at or after the close of discovery.  This delay is in direct violation of the Court's July 20, 2021 Order.

No excuse exists for Polysciences' failure to comply with the Court's Order.  This case has been pending for almost 1.5 years and Polysciences has been in possession of documents and information produced by Defendants sufficient to identify any alleged misappropriated trade secretes for over a year.  It is no coincidence that while Polysciences either cannot or will not properly identify the alleged misappropriated trade secrets, Defendants have been subject to a stipulated Consent TRO since July 2020 that precludes them from fairly competing with Polysciences, and have incurred significant litigation costs that have forced Serochem (a very small start-up company) to operate at a loss.

Federal Rule of Civil Procedure 37(b)(2)(A)(v) gives the Court authority to dismiss an action in whole or in part -- with or without prejudice -- if it fails to obey a discovery order.  Given that Polysciences' failure and/or refusal to identify its alleged misappropriated trade secrets with "sufficient particularity" will be fatal to its claims, and given that Polysciences has not complied with the Court Order requiring it to do so, and has ignored multiple demands by Defendants' that it do so, Defendants Masrud and Serochem seek sanctions pursuant to Rule 37(b) dismissing Polysciences' claims (Counts I – IV) without prejudice and subject to renewal if Polysciences identifies the alleged misappropriated trade secrets with the requisite particularity, and for attorneys' fees.

## II.   PROCEDURAL HISTORY/BACKGROUND

Polysciences filed its Complaint and Motion for a Temporary Restraining Order and Preliminary Injunction on July 28, 2020, against Defendant Masrud (ECF 1 and 3).  On August

2

18, 2020, the Court executed the parties' Stipulated Consent TRO, pursuant to which Masrud (who is ***not*** subject to a non-compete agreement or non-solicit) agreed that he (together with those in active concert with him) would refrain from selling Serochem's PEI products to a list of over 100 customers  (ECF 9).   Masrud agreed to this Order with the understanding that it would be temporary and that he would be permitted to fairly defend this action.  Instead, Polysciences has consistently evaded relevant discovery, refused to adequately identify the alleged trade secrets at issue, and through its AEO designations, deprived Defendants access to key information relevant to their defense and counterclaims.

In the meantime, the parties have exchanged extensive written discovery and Masrud has produced all information necessary for Polysciences to identify whether Defendants' are using any of Polysciences' alleged trade secrets.  As such, Polysciences cannot blame its failure to comply with the Court's Order on the need for additional discovery from Defendants.

### A.   POLYSCIENCES FAILED TO SUFFICIENTLY IDENTIFY ITS ALLEGED MISAPPROPRIATED TRADE SECRETS IN RESPONSE TO MASRUD INTERROGATORY NO. 5.

On August 24, 2020, Masrud (the sole defendant at the time) asked Polysciences to identify the trade secrets at issue.

> **Masrud Interrog No. 5**: Describe Plaintiff's alleged confidential information, including trade secrets, proprietary recipes, production procedures, quality control procedures, manufacturing processes, pricing strategies, and any other "Trade Secrets" referenced in the Complaint that Plaintiff contends Defendant used in the manufacture and/or sale of Serochem's "PEI Prime Powder, Transfection Grade Linear Polyethylenimine" and/or "PEI Prime AQ 1 mg/mL Liquid Transfection Reagent" products.

Subject to various objections, Polysciences responded:

> **Answer to Interrogatory No. 5 (September 17, 2020)**: Polysciences believes Masrud has misappropriated at least the Polysciences Trade Secrets identified in response to Interrogatory No. 4. Pursuant to Fed. R. Civ. P. 33(d), Polysciences further directs Masrud to the Verified Complaint, the Cease and Desist letter sent to Masrud c/o Serochem LLC on July 8, 2020, and Polysciences'

forthcoming documents produced in response to Request for Production Nos. 1, 2, 3, 4, 7, and 8. Discovery is ongoing. Polysciences reserves the right to amend and/or supplement this response, if appropriate, in view of further fact and expert discovery, investigation and research regarding the issues raised in this Interrogatory.

See **Exhibit "A"** (Polysciences' Answer to Masrud's Interrogatories, Answer to Interrog No. 5 dated September 17, 2020).

Interrogatory No. 4 asked Polysciences to describe the trade secrets generally referenced in the Complaint.  *Id.* at Interrog No. 4.  Subject to various objections, Polysciences responded:

> **Answer to Interrogatory No. 4 (September 17, 2020)**: Polysciences' Trade Secrets include at least the following: step-by-step, detailed manufacturing instructions outlining raw materials, process parameters, and other procedures to synthesize the PEI products, prepare the solution, and package the materials; design of the PEI chemistry, including molecular weight, molecular structure, product form , and process and compounds used to create the desired pH of the solution; key raw material supplier data and specifications; sourcing of novel and rare supply materials; internal test procedures and methods to determine key material characteristics; identification and selection of third party laboratories for testing of sterility, mycoplasma, heavy metals and endotoxin; identification and selection of third party testing partners to determine transfection efficiency, expression, and cell viability; selection of specific sterile filtering process parameters to avoid techniques that could adversely impact polymer properties; strategy to pursue development for improved solubility; the neutralization process and compounds used to produce the desired pH; customer lists including customer specific pricing and product specifications, customer contacts, product pricing and cost details and strategy, margins, competitive strategy and product positioning, and sales history for top PEI products and future forecasts; and receipt of confidential information from customers for specific product-related projects. Further, Polysciences directs Masrud to the document produced as Attorneys' Eyes Only to Masrud on August 27, 2020.  Pursuant to Fed. R. Civ. P. 33(d), Polysciences also refers Masrud to Polysciences' forthcoming documents produced in response to Request for Production Nos. 3, 6, 8, 10, 13, and 14, which documents set forth in detail the Polysciences Trade Secrets and speak for themselves and are produced subject to the confidentiality order and the understanding that the order's terms will be honored even before the order's entry. Discovery is ongoing. Polysciences reserves the right to amend and/or supplement this response, if appropriate, in view of further fact and expert discovery, investigation and research regarding the issues raised in this Interrogatory.

*Id.*

4

Polysciences did nothing other than parrot the catch-all categories of trade-secret information it alleged in its Complaint. By letter dated October 12, 2020, Masrud outlined Polysciences' discovery deficiencies.  With respect to Polysciences' Answer to Interrogatory No. 5 he noted:

> Despite the fact that Masrud has produced with specificity Serochem's research and development and manufacturing methods and procedures, Polysciences has not identified with any specificity whatsoever the confidential or trade secret information that it alleges Masrud disclosed and/or used in the manufacture of Serochem's competing products. Such specificity is required prior to any hearing in this matter, and will be required to avoid dismissal of this action.

Exhibit C to Masrud's Motion to Compel Trade Secret Discovery (ECF 22).  The parties held a meet and confer telephone conference on October 23, 2020, and by letter dated October 30, 2020, Polysciences responded to Masrud's deficiency letter in writing.  ECF 22, Ex. D.  With respect to Interrogatory No. 5, Polysciences responded:

> Polysciences objects to your mischaracterization of Polysciences' response to this Interrogatory. Polysciences correctly referred Masrud to its answer to Interrogatory No. 4, where it provided a detailed list of what it considers its confidential information and trade secrets that Mr. Masrud misappropriated. Polysciences also referred Mr. Masrud to documents produced in response to Mr. Masrud's Request for Production Nos. 1, 2, 3, 4, 7, and 8. Again, this exceeds Polysciences' obligations under the Rules, but please see:
>
> [*List of over 1,582 pages of documents*].

*Id.*

On November 24, 2020, Masrud filed a Motion to Compel Trade Secret Discovery (ECF 22).  In its opposition to the motion (ECF 31) at pp. 10-11, Polysciences took the position that its citation to a Trade Secret Log (POLYSCIENCES 2258-2260), which is filed under seal at Exhibit C to ECF 31, adequately identified the trade secrets at issue.  This Log, however, is nothing more than a list of document names with a brief description of the documents listed.  For

example, it references various sales presentations, batch records, and QC Worksheets, but in no

way identified with particularity any alleged trade secrets.

**B.    POLYSCIENCES REFUSES TO COMPLY WITH THE COURT'S JULY 6, 2021 ORDER (ECF 47) COMPELLING IT TO IDENTIFY THE ALLEGED MISAPPROPRIATED TRADE SECRETS WITH "REASONABLE PARTICULARITY" IN RESPONSE TO MASRUD INTERROG NO. 5**

By Order dated July 6, 2021 (ECF 47) and attached hereto as **Exhibit "B"**, the Court

granted Masrud's Motion to Compel Trade Secret Discovery and ordered Polysciences to

supplement its answer to Masrud's Interrogatory No. 5 "setting forth with ***reasonable***

***particularity*** the trade secrets that Polysciences claims were misappropriated." (Emphasis

added).  In response, Polysciences supplemented its answer to Interrogatory No. 5, in relevant

part, as follows:

> **Supplemental Answer to Interrogatory No. 5 (July 20, 2021)**: . . . The key
> trade secrets relied and used by Serochem, Masrud and Griffin fall into the
> following categories: (1) the identity of Polysciences' customers for its PEI
> Products, particularly the customer specific volumes and product specific
> technical requirements (and sales strategy relating to said customers); (2)
> Polysciences' revenue and profits of its PEI Products, including, without
> limitation, customer specific pricing arrangements not publicly disclosed; and (3)
> the PEI product manufacturing details including key raw material requirements,
> product formulation, product batch records and testing of Polysciences' PEI
> Products. Serochem, Masrud, and Griffin used their knowledge of these secrets to
> manufacture and/or sell Serochem's PEI Prime Powder, Transfection Grade
> Linear Polyethylenimine and/or "PEI Prime AQ 1 mg/mL Liquid Transfection
> Reagent" products, which are essentially knock offs of the Polysciences' PEI Max
> and PEI Transporter 5 products.
>
> By way of further answer, Polysciences asserts that the specific Polysciences
> Trade Secrets used by Serochem, Masrud and Griffin are contained in documents
> previously identified on September 17, 2020, Polysciences' Trade Secret Log
> (POLYSCIENCES0002258-2260), which documents identified in the log
> describe in detail the Polysciences trade secrets.  Polysciences then directed
> Masrud to these specific trade secret documents by providing Bates numbers in a
> letter to counsel, dated October 30, 2020. However, Polysciences now further
> reiterates that these documents contain the Polysciences Trade Secrets and
> specifically identifies the following documents that contain Polysciences Trade
> Secrets used by the Defendants to launch the Serochem PEI Products:

Batch Records from PEI Max (M.W. 40,000):
    [*listing 171 pages of batch records (i.e. manufacturing instructions)*]

Batch Records from Transporter 5:
    [*listing 109 pages of batch records*]

Polysciences' Customer List and Financial Information Relating to Polysciences'
PEI Products:
    [*listing 303 pages of information*]

Formulation Considerations (e.g., considerations of using acetone v.
tetrahydrofuran; considerations in hydrolysis reaction time):
    [*listing 463 pages of information*]

It further obfuscated by stating that:

> While not an exhaustive list, these documents contain information relating to
> Polysciences' sales and profitability of its PEI Products, formulation of its PEI
> Products, manufacturing and testing of its PEI Products, marketing and pricing
> strategies of its PEI Products, and customers it sells its PEI Products to. Thus,
> these documents help define Polysciences' Trade Secrets.  Masrud had access to
> all of the aforementioned documents during his tenure at Polysciences. Therefore,
> these documents show the specific type of information Polysciences believes
> Masrud misappropriated and used in the manufacture and/or sale of Serochem's
> PEI Prime Powder, Transfection Grade Linear Polyethyleneimine and/or "PEI
> Prime AQ 1 mg/mL Liquid Transfection Reagent" products.

Exhibit "A" (Polysciences' Second Supplemental Answer to Interrogatories,

Supplemental Answer to Interrog No. 5 dated July 20, 2021).

In short, Polysciences continued to rely on catch-all categories of information and its

citation to over 1,000 pages of documents designated AEO.  Once again, it provided no

indication as to precisely what information within those documents it alleges constitutes a

misappropriated trade secret.

By letter dated July 29, 2021, Masrud informed Polysciences that it had not complied

with the Court's Order.  **Exhibit "C,"** pp. 2-4.  He warned Polysciences that he would be filing a

motion seeking any and all sanctions available under the rules (including dismissal of

Polysciences' claims) if Polysciences did not cure the deficiency.  *Id.* pp. 1, 4.  **P***olysciences*

***responded by letter dated August 6, 2021, taking the position that it sufficiently identified the alleged misappropriated trade secrets by "categorizing" the trade secrets*** (e.g. identity of customers, customer specific volumes, Polysciences PEI revenue and profits, customer specific pricing arrangements, and product manufacturing details etc.) a***nd by providing "examples" of documents that fall into these categories*** (emphasis added).  **Exhibit "D,"** p. 6.  It argued that Masrud should somehow be "able to readily identify the alleged misappropriate trade secrets," based upon the categories of information it identified.  *Id.*

By letter dated August 30, 2021, Masrud requested an immediate stay of any further discovery by Polysciences pending its compliance with the Court Order.  **Exhibit "E."**  By letter response dated August 31, 2021, Polysciences again took the inexplicable position that "[b]etween the specific description provided by Polysciences' [i.e. the catch-all categories] and the specific documents listed [consisting of over 1,000 pages of information], Defendants' counsel can readily identify the misappropriated trade secrets."  **Exhibit "F,"** p. 2.  Masrud's letter request is still pending.

### C.   POLYSCIENCES CONTINUES TO REFUSE TO IDENTIFY THE ALLEGED MISAPPROPRIATED TRADE SECRETS WITH "REASONABLE PARTICULARITY" IN RESPONSE TO SEROCHEM INTERROG NOS. 1-3.

In an effort to avoid continued motions on this issue, Serochem (which was added as a defendant on June 15, 2021), served its First Set of Interrogatories directed to Polysciences on October 20, 2021.  It served additional trade secret interrogatories in an effort to discover the particularity ordered by the Court. For example, it asked Polysciences for the following:

> **Serochem Interrogatory No. 1**:  Identify with specificity each Serochem raw material requirement, product formulation, manufacturing method, production protocol, equipment used, equipment parameters, production specification, or testing procedure that Plaintiff contends constitutes use by Serochem of Polysciences' trade secrets and/or confidential information.

**Serochem Interrogatory No. 2**: To the extent Plaintiff contends that Serochem is using a particular combination or compilation of known raw material requirements, product formulations, manufacturing methods, production protocols, equipment, equipment parameters, product specification, and/or testing procedures that it contends constitutes a unique combination that embodies a trade secret belonging to Polysciences, identify with specificity the unique combination.

**Exhibit "G"** (Polysciences Answers to Serochem Interrogatories at Interrog Nos. 1 and 2) (unredacted version to be filed under Seal).

By asking Polysciences to identify the alleged misappropriated information by reference to Serochem's (as opposed to Polysciences') information, Defendants hoped to avoid receiving a response that consisted only of catch-all categories and citation to Polysciences' document production – access to which Defendants have been denied due to AEO designations.  However, that is precisely what they got.  Polysciences' designated its responses to Interrogatory Nos. 1 and 2 AEO, and referred Defendants to AEO documents in response to Interrogatory No. 3, despite the fact that no substantial harm can come from identifying to a competitor the information it allegedly stole![2]

In response to Interrogatory No. 1 Polysciences referenced (without specificity) the same catch-all categories (e.g. raw material, product formulation, production protocol, equipment, equipment parameters, product specifications, and testing procedures) that it identified before Masrud's motion to compel was granted and stated ***"there is evidence of Serochem's reliance on Polysciences' trade secrets which will be addressed more fully in Polysciences' expert report(s) at the appropriate time."***  It then stated that ***a comparison of Polysciences' and Serochem's respective batch records show "workflow" similarities, that will be "detailed" in***

---

[2] Masrud's Motion to De-Designate Polysciences' AEO Production and for Sanctions is currently pending.  ECF 38, 43.

***Polysciences' expert report(s) that will be provided at the appropriate time***.  Experts reports are generally due at or after the close of discovery.  ***This answer is in direct violation of the Court's Order requiring Polysciences to identify the trade secrets at issue with "reasonable particularity" on or before July 10, 2021,*** and defies Polysciences' obligation during discovery and prior to any expert report deadlines to identify its alleged misappropriated trade secrets with reasonable particularity so that defendants can adequately prepare their defense and the Court can adequately fashion any injunctive relief.

While Polysciences did provide an "example" of 6 alleged workflow similarities,  ***each of the examples provided are based on either public information or industry know how.***  For example, according to Polysciences:

REDACTED

REDACTED

.

REDACTED

Because none of these similarities are secret, Polysciences asserted -- *for the first time in this litigation* – that Defendants misappropriated a  "unique combination or compilation" of "raw material requirements, product formulations, manufacturing methods, production protocols, equipment, equipment parameters, product specifications, and testing procedures."  Exhibit "G" (December 3, 2021 Answer to Serochem Interrog No. 2).  Notably, Polysciences made no "compilation" allegation in its Complaint, its Amended Complaint, its initial answer to Masrud Interrogatory No. 5, or in its July 29, 2021 supplemental answer to Masrud Interrogatory No. 5 compelled by the Court.  Once again, however, Polysciences did not identify *at all* any specific combination or compilation that it contends is a trade secret, much less identify one with

"reasonable particularity."  Rather, it claimed that all of its catch-all categories are a compilation and referred Serochem to dozens of Polysciences batch records and quality control/quality assurance documents (all of which are designated AEO), expecting Defendants' counsel and/or expert to parse through 579 pages (containing ample information that is no secret) and figure out precisely what Polysciences contends is the proprietary compilation or combination.

Finally, in further avoidance of its discovery obligations and the Court's Order, Polysciences made no attempt to provide an explanation as to why each alleged similarity (or other alleged trade secret) is unique, distinct and qualified for protection or to differentiate them from matters of general knowledge in the trade, special knowledge of persons skilled in the trade, or publicly available information.  This information was required by the Court Order as it is part of identifying a trade secret with "reasonable particularity," and Serochem Interrogatory No. 3 specifically asks for this information.

> **Serochem Interrogatory No. 3**:  For each trade secret identified in response to
> Interrogatory Nos. 1 and 2 provide all facts that support Polysciences trade secret claim,
> including without limitation by, identifying: . . . (b) the specific nature and functionality
> of each alleged trade secret which makes it a trade secret, and (c) what makes the alleged
> trade secret unique and not commonly known in the industry or the general public.

In response, Polysciences did not provide any facts to explain the specific nature and functionality of any alleged trade secret, much less of each alleged trade secret, and it simply responded that "the trade secrets are unique because they are not generally known in the industry" (i.e. they are unique because we say so).  It provided no other specifics or support for this allegation other than to claim that Polysciences has few competitors, makes lots of money selling its products, which it self-servingly claims are "renowned for high quality," and maintains the confidentiality of its alleged trade secrets.  *Id.*  While these facts (assuming they

are true) may be relevant in a trade secret action – they do not identify the trade secrets with "reasonable particularity."

By letter dated January 21, 2022, Defendants asked, in light of the Court's Order, that Polysciences: (a) supplement its responses to Masrud Interrogatory No. 5 and Serochem Interrogatory Nos. 1-3; (b) clarify whether it is alleging that the similarities identified in response to Serochem Interrogatory No. 1 are alleged trade secrets; and (c) clarify whether its Answers to Serochem Interrogatory Nos. 1-3 are also responsive to Masrud Interrogatory No. 5.  **Exhibit "M."**  Defendants also pointed out that Polysciences cannot wait until its expert report deadline to identify with "reasonable particularity" the alleged misappropriated trade secrets.

By letter dated January 28, 2022, Polysciences refused to supplement its responses, claiming that it has put Defendants sufficiently "on notice" of its claims.  **Exhibit "N."**  *It refused to answer whether it considers each of the alleged 6 similarities to be trade secrets*. Instead – without admitting or denying that the alleged similarities are "known" -- it stated that a compilation of information can constitute a trade secret, but refused to provide any particularity with respect to the alleged proprietary compilation(s).  And, although it did not clarify whether its answers to Serochem Interrogatories 1-3 are also responsive to Masrud Interrogatory No. 5, it cited to these answers in support of its position that it has complied with the Court's Order.  At the same time, however, it *admitted that it intends to wait until its expert report deadline to disclose "how defendant's misappropriated [its] Trade Secrets."*

### III.    LEGAL REASONING

### A.    POLYSCIENCES HAS NOT COMPLIED WITH THE COURT'S ORDER

By Order dated July 6, 2021, the Court Ordered Polysciences to supplement its answer to Masrud's Interrogatory No. 5 by setting forth with "***reasonably particularity***" the trade secrets that Polysciences claims were misappropriated.  (ECF 47) (emphasis added).  Despite this Order,

Polysciences continues to identify its alleged trade secrets by catch-all categories and by general citation to over 1,000 pages of documents, asserting that virtually everything about its PEI products is a trade secret.  And, while it now alleges that its trade secrets are derived from a "combination" or "compilation" of information, it has not identified any alleged compilation with particularity.  Rather it continues to rely on catch-all categories and citation to its document production without any further specificity and without pointing defendants to any specific information within the documents.  This does not comply with the Court's Order requiring it to identify its trade secrets with "reasonable particularity."

"Reasonable particularity" requires a specific list and description of the alleged trade secrets and confidential information and <u>not</u> 'general allegations or general reference' to categories or processes."  *Arconic, Inc. v. Novelis Inc.,* No. 17-1434, 2019 WL 10787764, at *1 (quoting *Hill v. Best Medical Int'l, Inc.*, Nos. 07-1709, 08-1404, 2010 WL 2546023, at *4 (W.D. Pa. June 24, 2010)) (emphasis added).  It requires the plaintiff to identify each trade secret or item of confidential information with "sufficient particularity" so that the reader understands how each claim differs from public domain information, including public patent filings.  *Id.* citing *USSA v. Mitek Systems, Inc.*, 289 F.R.D. 244, 249 (W.D. Tex. 2013).  See also, *Arconic, Inc. v. Novelis Inc.*, No. 17-1434, 2020 WL 7247112, *11 (W.D. Pa. Dec. 9, 2020) (quotations omitted) ("[p]laintiff must identify the specific characteristics of each trade secret, such as a particular drawing, process, procedure or cost/pricing data."  Such "specificity is required so that defendant can defend himself adequately against claims of trade secret misappropriation, and can divine the line between secret and non-secret information, and so that the jury can render a verdict based on a *discriminating* analysis of the evidence of disclosure and misappropriation.").

Where an asserted trade secret or item of confidential information is an alleged

"combination of known components," plaintiff must specifically describe what the particular combination of components is, how these components are combined a secret process, and how they operate in such combination to meet the legal requisites of a trade secret. *Arconic*, 2019 WL 10787764 at *1 (quoting *Hill*, 2010 WL 2546023 at *4,n. 8 (citing *Struthers Sci and Int'l Corp. v. General Foods Corp.*, 51 F.R.D. 149 (D. Del. 1970)). ***Unspecified trade secret combinations and catch-all categories do not meet the "reasonable particularity" standard***. *Id.* at *2. See also, *Synygy, Inc. v. ZS Associates, Inc. et al.*, 2013 WL 3716518, *2 (July 15, 2013) (general allegations and generic references to products or information is insufficient to satisfy the reasonable particularity standard); *AutMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) (same).

    In *Mallet*, the Third Circuit vacated a preliminary injunction order because neither the District Court nor the plaintiff identified the alleged trade secrets with sufficient particularity. 16 F.4th 364 (3d Cir. 2021). The court reasoned that a trade secret misappropriation claim cannot be evaluated until the plaintiff has sufficiently described the trade secrets, which requires, at a minimum, that "the subject matter of the trade secret . . . be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit defendant to ascertain at least the boundaries within which the secret lies." *Id.* at 381-3 (*quotations omitted*).[10] It noted the ability to make this distinction was especially important where -- as here -- those boundaries may not be clear. *Id.* at 383.

    These boundaries were unclear in *Mallet* given that some of the formulas at issue were

---

[10] *See also*, *Merck Sharp & Dohme Corp. v. Pfizer Inc. et al.*, 2021 WL 264693, * 2 (E.D. Pa. June 28, 2021) (reasonable particularity in a trade secret action requires a description that is particular enough to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade).

publicly disclosed, and one cannot distinguish between what is generally known or available information and what the plaintiff contends to be a protectable trade secret, when, "with a wave of the hand, the plaintiff declares everything to be secret know-how." *Id.* Similarly, much of the information that Polysciences alleges is a secret is either industry know-how, publicly available, or within Defendants' knowledge as both Masrud and Griffin are skilled in the trade. Likewise, Polysciences has declared everything to be secret know-how. Just as Mallet's broadly stated categories of information (such as formulas, pricing information, strategies, and marking information) was not specific enough, nor are the categories of information provided by Polysciences (such as identity of customers, customer specific volumes, revenue and profits, manufacturing details, etc). *Id.* at 384.

> [Mallet] did not identify which formulas it referred to, nor did it describe any characteristics or properties contributing specific competitive value to Mallet that could serve as a marker for separating Mallet's formulas from publicly available information of generally known formulas in the industry. . . [Categories such as] 'pricing and volume data' and 'Mallet's training materials showing how it markets and sells its products' . . . fare no better than . . . 'pricing information, strategies, and marketing information. . . . Specific examples are needed [to support an injunction].

*Id.*

Citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021), Polysciences has taken the position that it has sufficiently put Defendants on notice of its claim because it identified trade secrets by category and generally cited bates numbered documents that relate to these general categories of information. Exhibit "M," p. 1 (J. Lagarenne letter dated January 28, 2022). As stated above, this is not enough. Moreover, in *Oakwood*, the Third Circuit held that the Plaintiff met the "sufficient particularity" standard because it "gave a very precise example" of the alleged trade secrets by pointing to a Memo, specifying the contents of the memo that contained the trade secrets, and attaching other documents that specified "in detail" the secrets it

accused Defendants of stealing. *Oakwood,* 999 F.3d at 907.  Polysciences has not done so here.
Rather – just as it did before the Court granted Masrud's Motion to Compel – it continues to
generally cite over 1,000 pages of documents in their entirety, without reference to any specific
information contained in those documents.

Merely citing to a list of bates-numbered documents does not identify trade secrets with
"sufficient particularity." *Mallet* 16 F.4ᵗʰ at 393, n. 23 (noting that the range of bates-numbered
documents, exhibits, and deposition testimony to which Mallet cited did not identify any trade
secrets with "sufficient particularity"); *See also*, *Mextel, Inc. v. Air-Shields, Inc. et al.,* No. 01-
CV-7308,  2005 WL 226112, * 42 (E.D. Pa. Jan. 31, 2005) (granting summary judgment on
trade secret claim for defendant in part because plaintiff's reliance on its document production
did not indicate ownership of the information and did not identify what information in the
documents is a trade secret).

Equally important, *Oakwood*, involved a 12(b)(6) motion to dismiss on the pleadings.
The Third Circuit held that the plaintiff's complaint sufficiently identified the trade secrets at
issue.  In so doing, it noted that at the pleading stage, "a plaintiff need not 'spell out the details of
the trade secret to avoid' dismissal," given that requiring such precision at the pleadings stage
ignores the challenges faced when only discovery will reveal exactly what the defendants are up
to.  *Id.* at 906, 907.  *Such details, however, are required during discovery.* [11]  Polysciences has

---

[11] "[D]eciding whether a plaintiff has sufficiently disclosed its trade secrets is a 'fact-specific
question to be decided on a case-by-case basis.'" *Id*. at 906 (internal quotation marks omitted)
(quoting *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1155 (D. Or. 2015).  District
courts must engage with the specific facts of the case and consider the degree of specificity
necessary in light of the particular industry-based context and the stage of litigation – whether
that be a motion to dismiss, a discovery dispute, a motion to preliminarily enjoin a defendant
from competing with the trade secret plaintiff, or a summary judgment motion. *Mallet and Co.
Inc. v. Lacayo et al.*, 16 F.4ᵗʰ 364, 393, n.22 (3d Cir. 2021) (citing *Vesta Corp.*, 147 F. Supp. at

had the benefit of over a year of discovery from Defendants and third-parties and the production by Defendants of all information necessary to determinate what they have been up to.  At this stage in the litigation, Defendants should not be expected to guess at what specific trade secrets may exist.  *See, e.g.*, *Synygy, Inc. v. ZS Associates, Inc. et al.*, No. 07-3536, 2013 WL 371658, *5 (E.D. Pa. July 15, 2013) (granting defendants' motion to compel identification of the trade secrets as defendant should not have to guess at what they are).

Unlike *Oakwood*, *Mallet* is directly on point.  And, as reasoned by the Court in *Mallet* when it vacated the preliminary injunction, ***where the breadth of a trade secret is so far-reaching that it includes publicly available information (like patent and other public disclosures) and industry knowledge, that information is not specific enough to be accorded trade secret status***.  16 F.4th at 384.  Where the list is too general, it will encompass material that the defendant will be able to show cannot be secret.  *Id.* citing *Oakwood*, 999 F.3d at 907.  As such, "care must be taken to not allow a plaintiff in a trade secret misappropriation case to make generalized claims that leave a defendant wondering what the secrets at issue might be." *Id.* *(quoting Oakwood*, 999 F.3d at 907).

*Arconic* is also on point.  2020 WL 7247112.  In *Arconic*, the Court dismissed plaintiff's claims with prejudice after it repeatedly failed during discovery to disclose its alleged misappropriated trade secrets with sufficient particularity.  In finding that the plaintiff had failed to identify the trade secrets with "reasonable particularity" it noted that the Plaintiff did not identify each and every claimed trade secrets with "clear explanations about why each was unique." *Id.* *15.  It also noted that the plaintiff continued to claim every permutation of the

---

1153).  Now that Defendants have disclosed all information necessary for Polysciences to determine whether and how Defendants misappropriated its trade secrets, nothing prevents it from disclosing the alleged misappropriated trade secrets with detailed particularity.

combination of 16 parameters as a trade secret without "explaining how portions of a combination of steps created each separate, specific trade secret." *Id.*

> For combinations, Arconic was required to describe specifically not only what the particular combination of components was, but also how those components were combined in a secret process, how the combination operated to meet the legal requisites of a trade secret, and how each claimed trade secret combination differed from every other claimed trade secret. . . . Arconic never explained the difference between its trade secrets and the general skill in the art or [defendants'] pre-existing knowledge. Arconic never explained how any of the 288 claimed trade secrets was distinct and qualified for protection.

*Id.* As the court concluded: "***[c]laiming that everything was a trade secret – without identifying anything with specificity – meant that nothing was protected***." *Id.* at \*16 quoting *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002). (Emphasis added). A party cannot bring a misappropriation claim without adequately describing what was stolen, and it is not the court (or the defendants') job to parse out the trade secrets from the public-facing functions. *Id.*

Like *Arconic* and *Mallet*, Polysciences continues – even after all relevant discovery – to sweepingly allege that everything is a trade secret, which is tantamount to admitting that nothing is a trade secret. It has also made no effort to identify each and every claimed trade secret with "clear explanations about why each was unique," distinct and qualified for protection. Nor has it explained the difference between its alleged trade secrets and the general skill in the art, defendants' pre-existing knowledge, or information that is otherwise publicly available. Moreover, while it now alleges its trade secrets are derived from a "combination" or "compilation" of information, it has made no effort to specifically describe the particular combination of components, how the components are combined in a secret process, how the combination operates to meet the legal requisites of a trade secret, and how each claimed trade secret combination differs from every other claimed trade secret. Not only is Polysciences therefor in contempt of court, its inability and/or willful refusal to provide these particularities is

fatal to its claims.

**B.     DUE TO ITS CONTEMPT POLYSCIENCES' AMENDED COMPLAINT SHOULD BE DISMISSED WITHOUT PREJUDICE PURSUANT TO RULE 37(b)**

Federal Rule of Civil Procedure 37(b)(2)(A)(v) provides in relevant part that if a party

fails to obey an order to provide or permit discovery, the court may issue further just orders

including dismissing the action or proceedings in whole or in part.  All of Polysciences' claims

are contingent upon its ability to prove the existence and misappropriation of its confidential

and/or trade secret information.  Its repeated refusal to identify its misappropriated confidential

information and/or trade secrets with sufficient particularity warrants dismissal of its claims.

In *Arconic*, the plaintiff repeatedly failed during discovery to precisely describe what

trade secret or confidential information defendant allegedly misappropriated.  Noting that this

failure constituted a substantive flaw that may be fatal to the merits of its claims, the Court

initially dismissed its misappropriation and breach of confidentiality claims without prejudice,

with the right to seek reinstatement if Arconic made an identification with reasonable

particularity.  *Id.* *9-10, 13-14.  When Arconic failed -- after a full opportunity to show the court

where, in its submissions, it had identified any trade secrets or confidential information with

"reasonable particularity" -- the Court dismissed Plaintiffs claims with prejudice reasoning that

both summary judgment and dismissal as a sanction were warranted.  *Id.* at *13-18.  This Court

should do the same here and dismiss Polysciences' claims (Counts I – IV) without prejudice and

subject to renewal if Polysciences identifies the alleged misappropriated trade secrets with the

requisite particularity.  If Polysciences does not or cannot do so, the Court should then dismiss

Plaintiff's claims with prejudice.

While dismissal *with* prejudice is a drastic sanction that must be used as a last resort,

Defendants seek dismissal *without* prejudice to provide Polysciences one last opportunity to

comply with the Court's Order.  It should be noted, however, that while Defendants do not seek dismissal with prejudice at this time, all but one of the factors warranting dismissal with prejudice exist.

Dismissal with prejudice is an appropriate sanction when the "*Poulis* factors" are met. These factors are: (1) the extent of the party's personal responsibility; (2) the prejudice of the adversary caused by the failure to respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, and (6) the meritoriousness of the claims.  *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, (3d Cir. 1984).  As to factor number (5), Defendants concede that the alternative sanction of dismissal without prejudice may be effective.  Every other Poulis factor warranting dismissal with prejudice exists.

(1) Polysciences' personal responsibility.  Polysciences bears primary responsibility for its failure to identify any trade secrets with particularity as it filed this action knowing that all information necessary to make a competing PEI transfection reagent is available publicly and/or based on industry knowledge/skill in the trade.  It knowingly brought this action for the sole purpose of preventing fair competition.

(2) Prejudice to Defendants.  Serochem is a small start-up company with limited funds.  It has been forced to incur substantial litigation costs, which have been exacerbated by the necessity to file continuous deficiency letters and motions that should be unnecessary and by the lingering of a case that lacks merit.  In addition, Defendants have been subject to a stipulated TRO that has been in place since August 7, 2020 (ECF 8), which prevents them from fairly competing with Polysciences.

(3) History of dilatoriness.  Polysciences has continuously evaded proper identification of the alleged misappropriated trade secrets since the inception of this case despite Masrud's initial deficiency letters, the Court's July 6, 2021 Order, Masrud's July 29, 2021 letter warning Polysciences that he would seek dismissal of Polysciences' claims (Exhibit "C"), Defendants' August 30, 2021 letter to the Court (Exhibit "E"), Serochem's supplemental trade secret interrogatories (Exhibit "G"), and Defendants' final deficiency letter (Exhibit "M" dated January 21, 2022).

(4) Polysciences' refusal to comply with the Court's Order is willful and in bad faith. Again, the fact that it has sweepingly alleged that everything about its products (even information that is in the public domain and based on industry knowledge) is a trade secret suggests otherwise.  As in *Arconic*, there is no other reasonable explanation for its continued efforts to "hide to the ball."

(6) Meritoriousness of the claims.  A party cannot succeed on a trade secrets claim if the party cannot identify with "reasonable particularity" what its trade secrets are, and its failure and/or refusal to goes to the heart of the lack of substantive merit.  *Arconic*, 2020 WL 7247112 at *18 (citations omitted).

## IV.   CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court grant this motion and enter an order in the form attached hereto dismissing Polysciences' claims (Counts I – IV) without prejudice and subject to renewal if it identifies the alleged misappropriated trade secrets with the "requisite particularity" identified in the proposed Order without reference to catch-all "categories" of trade secrets (see *Arconic*, 2019 WL 10787764 at *2 requiring plaintiff to identify its claimed "combination" without reference to catch-all categories) and without

reference to documents unless it specifies the contents of the document that contain the trade

secrets.  In addition, because Defendants incurred significant and unnecessary attorneys' fees in

connection with having to file this motion relating to Polysciences' contempt, Masrud and

Serochem also seek an award of attorney's fees and costs pursuant to Federal Rule of Civil

Procedure 37(b)(2)(C) which requires the party that fails to comply with a Court Order to pay the

reasonable expenses (including attorneys' fees) caused by that failure.


Dated:  February 4, 2022                    HOMANS PECK LLC

                                            /s/ Julianne L. Peck
                                            Julianne L. Peck, Esquire
                                            43 Paoli Plaza #426
                                            Paoli, PA 19301
                                            Telephone: (215) 868-6214
                                            jpeck@homanspeck.com

                                            *Attorney for Defendants/Counter-Claimants*
                                            *Joseph T. Masrud, Serochem LLC*